IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

Vs.                                                             No.  04-40141-01/02-SAC

ARLAN DEAN KAUFMAN, and
LINDA JOYCE KAUFMAN,

           Defendants.

MEMORANDUM AND ORDER

The case comes before the court on the government's motion to disqualify defense counsel (Dk. 74) and the government's unopposed motion for complex case designation (Dk. 81). On January 18, 2005, the court heard arguments and suggestions from the parties, granted the unopposed motion for complex case designation, and took the motion to disqualify counsel under advisement. Having reviewed the matters submitted and researched the governing law, the court rules as follows.

**MOTION TO DISQUALIFY (Dk. 74)**.

The government seeks to disqualify the law firm of Wyrsch, Hobbs & Mirakian, P.C. ("Wyrsch firm") which currently represents both defendants from representing either defendant. The government argues two grounds: first, that

good cause exists for believing the joint representation creates a conflict of interest, and second, that an attorney associated with the Wyrsch firm is likely to be a witness at trial. In opposing the motion, the defendants deny that the argued conflict of interest is anything more than speculation, but should the court find an actual or potential conflict then the defendants offer an alternative remedy short of disqualification, namely, the defendants' written waivers of conflict-free counsel and the retention of independent trial counsel for Linda Kaufman. The defendants dispute that James Fletcher's involvement and activities in this case make him a necessary witness at trial.

**GOVERNING LAW**

The Sixth Amendment to the United States Constitution guarantees the right of counsel to a defendant in a criminal prosecution. This "right to effective assistance of counsel contemplates the right to conflict-free representation." *Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir.) (citing *Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978)), *cert. denied*, 540 U.S. 973 (2003). The right to conflict-free counsel extends to plea negotiations and proceedings, trial, and sentencing. *See Holloway*, 435 U.S. at 490-91. Because the focus of this right is with insuring a fair adversarial process and not with securing a particular relationship between a defendant and his chosen counsel, the Supreme Court has

observed:

> [W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Wheat v. United States*, 486 U.S. 153, 159 (1988). Thus, a defendant's right to choose his own counsel is subject to different limitations, including the one relevant here, that is, when the defendant's chosen counsel represents co-defendants and a conflict of interest exists. *Id*. at 159-163.

"Although multiple representation of co-defendants is not a per se violation of the Sixth Amendment, it does contain great potential for conflicts of interest." *United States v. Martin*, 965 F.2d 839, 842 (10th Cir. 1992) (quoting *United States v. Burney*, 756 F.2d 787, 790 (10th Cir. 1985)). "[M]ultiple representation of criminal defendants engenders special dangers of which a court must be aware." *Wheat*, 486 U.S. at 159. A court must be alert to possible conflicts of interest and determine if the conflicts require separate counsel. *Id*. at 160. Regardless of its ruling, a trial court may be "whipsawed" by subsequent challenges of error in that the multiple representation resulted in ineffective assistance of counsel or that the denial of multiple representation resulted in the defendant losing his right to choose his own counsel. *Id*. at 161. For these

reasons, it is important for the trial court to fulfill its duty to investigate cases of joint representation and afford the parties an opportunity to create a complete record on the relevant issues. Rule 44(c) of the Federal Rules of Criminal Procedure[1] lays out the trial judge's duty to investigate, and the court here has conducted a Rule 44(c) hearing with both sides having the chance to submit all of their respective arguments and evidence.

As provided by Rule 44(c), a court must act to protect each defendant's right to counsel, "[u]nless there is good cause to believe that no conflict of interest is likely to arise." In cases of joint representation, a conflict occurs when the defendants' interests "'diverge with respect to a material factual or legal issue or to a course of action,'" *United States v. Martin*, 965 F.2d at 842

---

[1] Rule 44(c) provides:
"(c) **Inquiry Into Joint Representation.**
  (1) **Joint Representation**. Joint representation occurs when:
    (A) two or more defendants have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13; and
    (B) the defendants are represented by the same counsel, or counsel who are associated in law practice.
  (2) **Court's Responsibilities in Cases of Joint Representation.** The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel."

(quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356 n.3 (1980); "when counsel cannot use his best efforts to exonerate one defendant for fear of implicating the other,'" *Dokes v. Lockhart*, 992 F.2d 833, 836 (8th Cir. 1993) (quoting *Hayes v. Lockhart*, 766 F.2d 1247, 1250 (8th Cir.), *cert. denied*, 474 U.S. 922 (1985)), *cert. denied*, 513 U.S. 968 (1994); and "whenever one defendant stands to gain significantly by advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing," *United States v. McCaskey*, 9 F.3d 368, 381 (5th Cir. 1993) (citations omitted), *cert. denied*, 511 U.S. 1042 (1994).  When "the available evidence points to significantly different levels of culpability" between the jointly represented defendants, a conflict can develop.  *United States v. Stantini*, 85 F.3d 9, 19 (2nd Cir.), *cert. denied*, 519 U.S. 1000 (1996).  As explained in *Holloway*, the "[j]oint representation of conflicting interests is suspect because of what it tends to prevent an attorney from doing," as in "from challenging the admission of evidence prejudicial to one client but perhaps favorable to another or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another." 435 U.S. at 489-90.  Conflicts from joint representation arise not only in those cases going to trial but may occur in plea negotiations and proceedings as well as in sentencing hearings.  *See Moore v. United States*, 950 F.2d 656, 660 (10th Cir.

1991).

As reflected in the advisory committee's notes to Rule 44(c), a contemplated remedy in the event of a conflict is a "knowing, intelligent and voluntary waiver of the right to separate representation." The Supreme Court in *Wheat*, however, rejected the argument that as a corollary to "the Sixth Amendment presumption in favor of counsel of choice" a waiver can cure any and all conflicts arising from joint representation. 486 U.S. at 160-64. In fact, a waiver does not allay a court's independent concerns with "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." 486 U.S. at 160. Additionally, the trial court has "an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." 486 U.S. at 161. A trial court conducts its proceedings with a legitimate concern for its final judgment "remain[ing] intact on appeal." *Id.* These independent interests may justify a trial court's refusal of a proffered waiver upon a finding of a conflict of interest. 486 U.S. at 162.

The Supreme Court in *Wheat* observed that the trial court must evaluate the appropriateness of a conflict waiver under some difficult circumstances:

6

>Unfortunately for all concerned, a district court must pass on the issue of whether or not to allow a waiver of conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are through a glass, darkly.  The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.  It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand.  A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants.  These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics.  Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

486 U.S. at 162-63.  These described circumstances persuaded the Court to afford district courts "substantial latitude in refusing waivers of conflicts of interests not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id*. at 163.  In sum, the district court must acknowledge the presumption in favor of chosen counsel but understand that the "presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." 486 U.S. at 164.  **ANALYSIS AND HOLDING**

>The court's task here is to consider whether a conflict of interest or a

serious potential for a conflict of interest exists and whether the defendants' waiver of conflict-free counsel is an adequate remedy under the circumstances.   The government argues that not only is there a serious potential for a conflict of interest to exist but that there is an actual conflict of interest and that the defendants' waiver would be inadequate remedy considering the facts and charges alleged here.  The government represents that based on available evidence it appears the defendants have different levels of culpability and could rely on divergent defense strategies which would inculpate each other.  The defendants discount the government's arguments as mere speculation and lacking in facts to establish any actual or potential conflicts of interest.

Just from what the government represents to be some of the evidence in this case, convincing proof is offered for finding a serious potential for, if not an actual, conflict of interest.  In its brief, the government references evidence that only Arlan Kaufman was present on November 8, 1999, when certain residents of the Kaufman House were allegedly subjected to involuntary servitude.  The government also asserts there will be evidence the involuntary servitude resulted from a climate of fear existing at the Kaufman House that was created in part by Arlan Kaufman's purported therapy which entailed sexual exploitation, physical punishment, and psychological manipulation.  The government suggests a likely

defense for Linda Kaufman may be to distance herself from happenings on November 8th and from the alleged therapeutic activities administered by her husband.

The subsequent filing of the first superseding indictment includes additional allegations that also support the likelihood of differing levels of culpability. Paragraph eleven distinguishes between the nursing services (dispensing medication and transportation) provided by Linda Kaufman and the therapy services provided by Arlan Kaufman. Paragraph fourteen alleges Arlan Kaufman was the representative payee for some residents' social security disability benefits and the guardian for one resident. As part of the conspiracy, it is alleged the defendants took the residents' disability benefits and wrote checks from the residents' checking accounts. The different counts alleging criminal misconduct with regards to Medicare claims appear largely concerned with the billing for Arlan Kaufman's therapy services and sessions that were not provided and not documented. Arlan Kaufman submitted the provider applications to Medicare. The indictment further alleges that the residents "as part of the purported 'therapy' [were] forced and coerced . . . to perform sexually explicit acts," and the indictment lists some of the sexually explicit labor and services provided. The indictment charges that the defendants recorded these "purported 'therapy'

9

sessions" and lists some of the actions of nude residents captured on these video tapes. In both listings of sexual activities, the indictment names Arlan Kaufman, but not Linda Kaufman, as directly participating in those activities. The indictment alleges the defendants falsely billed residents and their families for medical management services which consisted of Linda Kaufman simply making the medications available to residents to self-administer. Finally, the varying levels of culpability and the different areas of individual involvement and responsibility are most convincingly shown through the overt acts laid out in paragraph fifty-one of the first superseding indictment which appear to summarize some of the government's more important evidence. The court believes the above evidence and allegations point to significantly different levels of culpability and involvement between the Kaufmans that establish the serious potential for conflicts of interest.

Considering the complexity and breadth of the charges here as well as the obvious distinctions in culpability and involvement, the court easily foresees times when the defendants' interests could diverge on material factual or legal issues or on the proper course of action. As reflected in the indictment, the government's evidence regarding the alleged therapy services is central to many of the charges, and Arlan Kaufman appears to have been the principal provider of those alleged services. It seems plausible that defense counsel for Linda Kaufman

10

would want to minimize Linda's involvement in or knowledge of those alleged therapy services and to emphasize her co-defendant's primary or exclusive responsibility over the same. Thus, joint counsel could not use best efforts to exonerate Linda Kaufman without advancing a position that at the same time could prove damaging to the defense of Arlan Kaufman. The court further understands that an actual conflict may already exist, because the government has sent correspondence asking for plea discussions with Linda Kaufman which place the Wyrsch firm in the difficult position of negotiating a plea agreement that would compromise its ethical obligation to Arlan Kaufman. *See United States v. Hall*, 200 F.3d 962, 966 (6th Cir. 2000) ("Foregoing plea negotiations is proof of an actual conflict of interest." (citations omitted)).

      The likelihood, the number and the seriousness of potential conflicts here are such that in this court's opinion the waivers would not provide an effective remedy for the court's independent interests in ensuring that ethical standards are met, that legal proceedings appear fair to observers, that a fair trial for both defendants occurs, and that the resulting judgments "'be free from future attacks over the adequacy of the waiver or the fairness of the proceedings . . . and the subtle problems implicating the defendant's comprehension of the waiver.'" *Wheat*, 486 U.S. at 162 (quoting *United States v. Dolan*, 570 F.2d 1177, 1184 (3rd

Cir. 1978)).  The complexity and breadth of the charges as well as the number and extent of plausible defenses significantly complicate any meaningful attempt at obtaining an intelligent and knowing waiver.  Indeed, the court even questions whether it is in a position to make the defendants sufficiently aware of all the foreseeable prejudices from multiple representation in this case.  In the court's estimation, the defendants' proposed written waivers do not provide sufficient details on what the defendants have been told about the foreseeable prejudices and dangers from joint representation under the uniquely complex circumstances of this case and the likely consequences flowing from those prejudices.   The effectiveness and adequacy of any waivers here are open to critical questioning.

The court has given due weight to the presumption in favor of the defendants' chosen counsel and appreciates the significant burdens and hardships placed on the defendants with the retention of new counsel.  These very reasons were behind the court's initial reluctance to grant the government's motion.  From what appears in the superseding indictment, there is not any reason to believe that the government manufactured the reasons or circumstances argued in its motion. Nor is the court without the means to mitigate the hardships and burdens should the defendants show their need.

Finally, the court rejects the defendants' alternative proposed remedy

of securing independent counsel for Linda Kaufman and having the Wyrsch firm continue its representation of Arlan Kaufman. As the Supreme Court in *Holloway* reiterated, the evil from joint representation of conflicting interests is "what the advocate finds himself compelled to refrain from doing." 435 U.S. at 490. If with separate counsel Linda Kaufman chooses to testify as part of her defense or pursuant to a plea agreement, it is likely that counsel for Arlan Kaufman would need to cross-examine her vigorously, but the Wyrsch firm's prior representation of Linda Kaufman would ethically prevent the firm from providing this cross-examination. *Wheat*, 486 U.S. at 164. The Wyrsch firm necessarily gained substantial knowledge about confidential matters from Linda Kaufman having represented her and her husband for a number of years in both civil and administrative matters arising out of the same transactions or occurrences that are at issue in or factually related to the events charged in the superseding indictment. Thus, the inherent danger of divided loyalties from successive representation is particularly great here, not only in conducting cross-examinations, but in objecting to evidence and in pursuing different trial strategies.

       Having weighed the presumption afforded the defendants' choice of counsel with and against all of the factors discussed above and argued in the parties' briefs, the court finds for the reasons stated above that the conflicts of

13

interest here warrant separate counsel and that the Wyrsch firm shall not represent either defendant.  The court directs the defendants to secure new counsel and/or request appointed counsel and further directs the Wyrsch firm to assist the defendants in this regard should the defendants ask for the firm's help.  For now, the court will not set a deadline for entry or appointment of new defense counsel, but it expects each defendant will act promptly in obtaining new counsel.

**MOTION FOR COMPLEX CASE DESIGNATION (Dk. 81)**

The government's motion for complex case designation under the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(B)(ii), is not opposed by any written filing.  At the hearing, the defendants represented that they joined the government's motion, and that they waived their rights to a speedy trial.  The government describes the discovery to be made available to the defendants includes seventy-five boxes of materials and documents, two hundred videotapes, one hundred audiotapes, and other information yet to be recovered from computers and other equipment.  The court finds that a complex case designation will give the defendants and their counsel the reasonable time necessary for effective preparation of a defense, including the review of this voluminous discovery.  *See* 18 U.S.C. § 3161(h)(8)(B)(iv). The parties and the court agree that this case is a complex one, such that it is unreasonable to expect defense counsel to be adequately prepared

14

for pretrial proceedings and for the trial to commence within the seventy-day time limits established by the Speedy Trial Act.  See 18 U.S.C. § 3161(h)(8)(B)(ii).  A complex case designation will allow the government the reasonable time necessary for effective preparation of its numerous exhibits and witnesses for a multi-week trial.  See 18 U.S.C. § 3161(h)(8)(B)(iv).  The court finds no lack of due diligence on the part of government counsel or counsel for the defense.

The court grants the government's motion and finds that designating this case as a complex one will benefit the defendants, and the resulting delay in setting the trial of this matter will serve the ends of justice.  The ends of justice served by the granting of the government's motion outweigh the best interests of the public and the defendants in a speedy trial.  Any delay resulting from this requested designation is excludable under the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, specifically § 3161(h)(8)(A), as it serves the ends of justice and outweighs the best interest of the public and the defendants in a speedy trial.

IT IS THEREFORE ORDERED that the government's motion to disqualify defense counsel (Dk. 74) is granted;

IT IS FURTHER ORDERED that this case is designated as a complex case in accordance with 18 U.S.C. § 3161(h)(8)(B)(ii), and that the time from January 4, 2005, until the trial setting is excludable under the Speedy Trial Act,

18 U.S.C. § 3161, *et seq.*, specifically § 3161(h)(8)(A).

IT IS FURTHER ORDERED that all pretrial motions with the exception of limine motions are due by March 31, 2005, all responses to the motions are due on April 14, 2005, any necessary hearing on the motions will be held on May 3, 2005, at 10:00 a.m., the status conference will be conducted on August 31, 2005, at 10:00 a.m., and the jury trial is scheduled to commence on October 5, 2005, at 10:00 a.m. following a meeting in chambers at 9:30.

Dated this 26th day of January, 2005, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge