IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No.  04-40141-01, 02 |
| ) | |
| ARLAN DEAN KAUFMAN and ) | |
| LINDA JOYCE KAUFMAN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendants' joint motion to dismiss the indictment or, alternatively, for recusal of prosecutors based on their alleged knowledge of privileged material. (Doc. 130.) Defendants incorporated a brief in their motion, the government filed a response, and defendants' filed a reply. (Docs. 162, 180.) Defendants' motion is DENIED for reasons set forth herein.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Defendants are charged in a thirty-four count second superceding indictment with, among other things, health care fraud, civil rights violations, and subjecting victims to involuntary servitude, all in violation of various provisions of Title 18 of the United States Code. (Doc. 121.)  They claim that pursuant to search warrants executed on June 13, 2001 (2001 search) and October 25, 2004 (2004 search), the government seized documents and other items protected by the attorney-client privilege or the work product doctrine.  (Doc. 130 at 2-5.) Defendants allege that members of the prosecution team have reviewed those documents, thereby violating defendants' Fifth and Sixth

Amendment rights. <u>Id.</u> at 6-7, 8. Accordingly, they argue, the only appropriate remedy is for the court to dismiss the indictment or, in the alternative, to order recusal of all prosecutors who have reviewed the privileged materials. <u>Id.</u> at 8.

The government counters that its attorneys and law enforcement personnel have adhered to the highest ethical standards while reviewing seized documents. (Doc. 162 at 3-4, 9.) While conceding that it has segregated some documents as being potentially privileged, the government argues that no member of the prosecution team has reviewed the contents of any potentially privileged documents. (Doc. 162 at 4-5, 6.) Moreover, the government asserts that any privilege has been waived. <u>Id.</u> at 1. Specifically, the government alleges that the defense team was invited to review all potentially privileged documents in the government's possession and to take any such documents that defendants felt were in fact privileged. In response to that invitation, one member of the defense team reviewed the segregated documents, but failed to assert any privilege or otherwise take possession of privileged documents. <u>Id.</u> at 7-8.

The court's understanding of the facts has been rendered difficult, primarily because defendants' motion, while lengthy and repetitious, lacks specificity regarding the documents which are claimed to be privileged. Defendants repeatedly refer to "some documents," "some materials," "certain materials," and "certain documents," leaving the court to speculate what the documents are and how they are privileged. None of the parties submitted any evidence

with their briefs.[1] Furthermore, no party requested an evidentiary hearing on this matter. Indeed, sensing that a hearing might be necessary to provide an evidentiary basis to decide this motion, the court twice invited the parties to request a hearing. (Docs. 196, 205.) In fact, in its second letter to the parties on this matter, the court expressly directed their attention to this motion and gave an additional opportunity to request a hearing. (Doc. 205.) Despite those invitations, neither party requested such a hearing. Accordingly, the court is left to sort out facts based on concessions in the briefs. Any other assertions that are contested, or otherwise lack necessary evidentiary support, must be disregarded and the party bearing the burden of proof on that point will fail.

As relevant here, the government executed three search warrants on defendants' property: the 2001 search of their residence; the 2004 search of their residence; and a search of defendants' computer. The computer was seized during the 2004 search, but was itself searched pursuant to a warrant issued in January 2005. (Doc. 162 at 6.) The government denies that any privileged material was seized in the 2001 search. <u>Id.</u> at 4. Conversely, the government concedes that some potentially privileged materials (apparently letters between defendants and their counsel) were seized in the 2004 search, <u>id.</u>, and potentially privileged materials were also discovered on defendants'

---

[1] In their reply, defendants did include copies of two letters exchanged between Thomas Haney, counsel for defendant Arlan Kaufman, and AUSA Tanya Treadway; however, these letters were exchanged after the government filed its response. (Doc. 180 exhs. 1, 2.) Moreover, these letters have nothing to do with the events surrounding the search of defendants' home or the government's review, if any, of privileged documents.

-3-

computer.  Id. at 6.  However, a careful review of the government's brief shows that the United States never concedes that any of these materials are in fact privileged.[2]

With respect to the 2004 search, the parties agree that some potentially privileged documents were segregated at the residence by investigators and placed in a sealed box.  (Docs. 162 at 4; 180 at 3.) Defendants concede that no prosecutor has looked at those documents. (Doc. 180 at 3.)  On the other hand, defendants assert that other privileged documents remain unsegregated in the government's general evidence files.  (Docs. 130 at 4; 180 at 6.)  The government essentially denies any knowledge of those documents, alleging instead that this motion represents the first time defendants have asserted any claim of privilege to those documents.  (Doc. 162 at 8-9.) Conversely, the government concedes that, in addition to the potentially privileged documents segregated during the 2004 search, prosecutors Krigsten and Parker discovered additional potentially privileged documents during their review of the seized items.  (Doc. 162 at 4-5.)  The government claims that "[w]hen a member of the prosecution team came across a document that appeared as though it might be privileged, the prosecutor or agent closed the box in which the document was contained, and labeled the box."  Id. at 5.

Turning to the computer search, the government alleges this

---

[2] Although defendants assert that items segregated from the 2004 search were placed in a box which the government labeled "Attorney-Client Privileged Information" (Doc. 180 at 3), in their initial brief defendants quoted the label on this material as reading "Potential Attorney-Client (A-C)."  (Doc. 130 at 4.)  Since defendants have repeatedly refused to put forth any evidence to support this motion, it remains a mystery as to what label, if any, was ever attached to these segregated items.

-4-

search was performed by the Regional Forensics Computer Lab, which reduced the contents of the computer's hard drive to a CD. Id. at 6. This disk was provided to a Department of Justice attorney who is not associated with the prosecution team. Id. at 6. That "taint attorney" apparently created a DVD of the computer's contents with potentially privileged materials redacted. Id. The taint attorney also printed off hard copies of the potentially privileged material, which have allegedly been turned over to defense counsel. Id. Nonetheless, defendants assert that prosecutors are now in possession of unredacted copies of the DVD, thereby giving them unfettered access to this potentially privileged information. (Doc. 130 at 7.) The government implicitly concedes possessing these unredacted DVDs, but maintains its position that the disk includes only potentially privileged materials, none of which have been reviewed by the prosecution team. (Doc. 162 at 6.)

## II. ANALYSIS

### A. REMEDIES SOUGHT BY DEFENDANTS

Although these types of analyses usually begin by determining whether defendants' rights have been violated, the remedies requested in this motion are so out of proportion with the conduct alleged that it seems appropriate to address that disparity first. Defendants ask the court to dismiss the indictment returned against them by a duly constituted federal grand jury.[3] Dismissal of an indictment is an

---

[3] Defendants do not claim that any allegedly privileged materials were presented to the grand jury. Moreover, with the exception of Shillinger v. Haworth, defendants have failed to cite, much less distinguish, the clearly applicable and easily-found Tenth Circuit cases which discuss and reject dismissal of the indictment as an appropriate remedy. This failure has impaired the court's willingness

-5-

extraordinary remedy, which the Supreme Court has characterized as "drastic," United States v. Morrison, 449 U.S. 361, 367, 101 S. Ct. 665, 669, 66 L. Ed. 2d 564 (1981), and the Tenth Circuit has described as "draconian." United States v. Gonzalez, 248 F.3d 1201, 1205 (10th Cir. 2001). In tailoring relief for infractions of the attorney-client privilege that amount to constitutional violations, the proper approach is "to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." Shillinger v. Haworth, 70 F.3d 1132, 1143 (10th Cir. 1995) (quoting Morrison, 449 U.S. at 365, 101 S. Ct. at 668).

Dismissing an indictment without considering less drastic remedies is an abuse of discretion, United States v. Lin Lyn Trading, Ltd., 149 F.3d 1112, 1118 (10th Cir. 1998). The Tenth Circuit has consistently affirmed where district courts have declined to impose this ultimate sanction, even in circumstances far more egregious than those alleged here. See, e.g., United States v. Kennedy, 225 F.3d 1187, 1194-96 (10th Cir. 2000) (finding no Fifth or Sixth Amendment violation where prosecution interviewed defendant's former attorney, both before and after indictment returned); United States v. Kingston, 971 F.2d 481, 491 (10th Cir. 1992) (finding that even if the defendant's Fifth and Sixth Amendment rights had been violated by forcing his attorneys to testify before a grand jury, dismissal of the indictment was not warranted). By contrast, the circuit reversed in the only federal prosecution in the Tenth Circuit the court could find

---

to accept the validity of defendants' factual assertions and other legal arguments.

in which a district court granted a motion to dismiss an indictment for Fifth and Sixth Amendment violations based on a breach of the attorney-client privilege. Lin Lyn, 149 F.3d at 1118.

In Lin Lyn, the government intentionally seized a notepad from the defendant, even though the defendant informed the agent that it contained privileged communications between himself and his attorney. Id. at 1113. The incriminating statements and defense strategies contained in the notebook were shared among government investigators and became "common knowledge" in the relevant United States Customs office. Id. at 1114-15. The district court dismissed the indictment, finding both Fifth and Sixth Amendment violations. Id. at 1115. The Tenth Circuit reversed as to the Sixth Amendment violation, id. at 1117, and, although it upheld the finding of a Fifth Amendment violation, reversed and remanded for imposition of an appropriate remedy. Id. at 1118. The circuit concluded that the proper remedy was suppression of the tainted evidence, not dismissal of the indictment. Id.

The Tenth Circuit has almost categorically rejected dismissal of the indictment as a proper remedy in federal prosecutions involving breach of the attorney-client privilege. Shillinger is the exception, but it involved a motion pursuant to 28 U.S.C. § 2254. In that case, the defendant was arrested and charged with aggravated assault and battery in state court. He was incarcerated and unable to make bail. Defense counsel arranged to spend some time with the defendant doing trial preparations in the court room. Since the defendant was still in custody, local authorities required that a deputy sheriff be present with defendant during these preparatory sessions. Unbeknownst

to defense counsel, the prosecutor questioned the deputy sheriff, who then revealed the substance of the defendant's trial preparations. The prosecutor then modified his own trial strategy to take advantage of this information, as well as to impeach the defendant. Shillinger, 70 F.3d at 1134-36.

The jury convicted the defendant, and the state supreme court affirmed. The defendant then brought a petition for relief under 28 U.S.C. § 2254. The district court granted the petition on the basis of a Sixth Amendment violation and ordered a new trial, but stayed the retrial pending appeal. Id. at 1136. The Tenth Circuit affirmed the grant of habeas relief, but remanded for reconsideration of an appropriate remedy. Id. at 1143. In so doing, the circuit indicated that a new trial might be an appropriate remedy; however, because the state court fact-finding procedures were inadequate, the Shillinger court was unable to determine whether a new trial would necessarily be enough to purge the taint acquired from the prosecutor's invasion of the defense camp. Id. at 1142-43. Shillinger intimated that, depending on the severity of the taint, more drastic remedies might be necessary. Id. at 1143. Recusal of the prosecutor might be one such option; and, "in extreme circumstances," dismissal of the indictment might be appropriate. Id. Accordingly, the circuit remanded for the district court to conduct additional fact-finding and fashion an appropriate remedy.

The court finds that Shillinger represents an extreme case of prosecutorial misconduct, and is inapposite under even the most liberal reading of the accusations in defendants' briefs. There is no suggestion that the government purposely seized privileged

-8-

materials with the intent of using them in support of the prosecution's case. Instead, it is uncontested that government agents were executing facially valid search warrants that specifically directed them to seize documents from defendants' residence.[4] Defendants simply object, without supporting case law, that the procedures employed for the seizure of those documents and subsequent handling failed to afford adequate protection to potentially privileged documents. (Doc. 130 at 10-13.) From that point, they speculate that members of the prosecution team must have read the contents of at least some privileged documents. (Docs. 130 at 13; 180 at 2-3.) Even if proved, that is a far cry from the type of conduct at issue in Shillinger.

As an alternative remedy, defendants seek recusal of all prosecutors who have read privileged material. Assuming that any prosecutors were exposed to privileged material, the facts of this case do not warrant such a remedy. Shillinger appears to be the only Tenth Circuit case suggesting or even recognizing that recusal of prosecutors might be an appropriate remedy for the conduct alleged here. Shillinger relied on United States v. Horn, 811 F. Supp. 739, 752 (D.N.H. 1992), for this proposition. Shillinger, 70 F.3d at 1143. In Horn, as in Shillinger, the prosecutor engaged in extraordinary misconduct for the specific purpose of obtaining privileged information. The First Circuit's summary of the prosecutor's conduct speaks for itself:

---

[4] While defendants challenge the constitutionality of those searches in two separate motions (Docs. 132, 134), defendants never argue that the warrants were invalid on their face.

-9-

During pretrial proceedings, the government made more than 10,000 documents available for inspection at the Boston office of Aspen Systems, an independent document management firm retained by the Task Force. On November 9, 1992, an attorney representing defendants . . . visited the document repository to search for papers that might prove helpful in cross-examination. A government paralegal volunteered to have a member of Aspen's clerical staff photocopy any document that caught the lawyer's eye. The attorney accepted the offer. When the paralegal mentioned this undertaking to the lead prosecutor, she was instructed to have the Aspen employee make an extra copy of each defense-selected document for the government's edification. Defense counsel was not informed of this added flourish.

 To paraphrase the Scottish poet, the best-laid schemes of mice and prosecutors often go awry. Cf. Robert Burns, To a Mouse (1785). When the photocopying of desired documents took longer than seemed reasonable, the defense attorney smelled a rat. A cursory investigation uncovered the prosecution's experiment in duplicitous duplication. The lawyer promptly demanded that the government return its copies of the papers culled by the defense. When his demand fell on deaf ears, he immediately drafted a motion to seal, filed the motion with the district court, and served it before the close of business that day.

 At this delicate juncture, the lead prosecutor poured kerosene on a raging fire. She did not passively await the court's ruling on the motion, but, instead, during the three days that elapsed before the district court took up the motion, the prosecutor reviewed the surreptitiously duplicated documents, discussed them with two of her subalterns, and used them to prepare a key prosecution witness (in the presence of a second possible witness). Thus, by November 13, 1992, when the court granted the motion to seal and explicitly instructed the lead prosecutor not to make further use of the papers singled out by the defense or take further advantage of the situation, appreciable damage already had been done.

 The lead prosecutor then made a bad situation worse. Two pages mysteriously disappeared from the lead prosecutor's cache of ill-gotten documents before the set was submitted to the district court for sealing. And in direct defiance of the court's order, the lead

> prosecutor prepared a complete new set for her own use. Adding insult to injury, she next signed an affidavit of somewhat questionable veracity. Finally, when she appeared before the district court to discuss the bizarre game she had been playing, she made a series of inconsistent statements evincing what the court charitably called a "lack of candor."

United States v. Horn, 29 F.3d 754, 757-58 (1st Cir. 1994). The district court concluded that this prosecutorial misconduct amounted to a violation of the defendants' Fifth and Sixth Amendment rights. Id. at 758. The district court also found prejudice, "but not a stain so indelible as to justify dismissing the indictment." Id. at 758-59. Thus, despite conduct that the First Circuit rightly characterized as "egregious", id. at 770, the district court found no basis for dismissing the indictment. Instead, the district court imposed a combination of remedies, which included recusal of the lead prosecutor, as well as her referral to various disciplinary authorities. Id. at 759. On appeal, the First Circuit approved whole-heartedly of the specified remedies, reversing only on an award of attorneys' fees and costs against the government, which the court of appeals found barred by sovereign immunity. Id. at 770. Even a casual reading of defendants' briefs shows that the allegations, if proved, would rise nowhere near the level of culpability and misconduct addressed in Horn.

In sum, even assuming that defendants could prove what they allege in their briefs (and their failure to request an evidentiary hearing raises the inference that they cannot), the circumstances of this case do not even begin to rise to the level of severity necessary to support dismissal of the indictment or recusal of the prosecutors.

-11-

Unlike the cases previously discussed, the government has made no effort to purposely invade the defense camp. Rather, government agents simply executed facially valid search warrants and seized a large number of documents. Even if some of those documents were privileged, and even if the prosecutors had read some of them, neither the "draconian" remedy of dismissal, nor the slightly less drastic remedy of recusing the prosecutors, would be appropriate under the facts of this case. Since that is the only relief that defendants request, this motion could be denied on that basis alone.

B.  BREACH OF THE ATTORNEY-CLIENT RELATIONSHIP

Under Federal Rule of Evidence 501, privileges in a federal criminal case are governed by federal common law. United States v. Gillock, 445 U.S. 360, 368, 100 S. Ct. 1185, 1191 (1980). Under that law, the attorney client privilege has the following elements:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

United States v. Kovel, 296 F.2d 918, 921 (2d Cir. 1961) (quoting 8 Wigmore, Evidence, § 2292); see also United States v. Ruedlinger, 1997 WL 161960, *2-3 (D. Kan. Mar. 7, 1997). Similarly, in order to invoke the work product doctrine, the proponent must prove "that the materials sought to be protected (1) are documents or tangible things, (2) were prepared in anticipation of litigation or for trial, and (3) were prepared by or for a party or a representative of that party." Raytheon Aircraft Co. v. U.S. Army Corps of Engineers, 183 F. Supp.

2d 1280, 1287-88 (D. Kan. 2001). "The burden of proving a communication is privileged is upon the person asserting the privilege." United States v. Bump, 605 F.2d 548, 551 (10th Cir. 1979).

Defendants put forth no proof that the government seized any privileged documents. As previously noted, the government is fairly candid in admitting that it seized potentially privileged documents in the various searches. Nonetheless, none of the government's statements go so far as to relieve defendants of their burden to prove that any documents are privileged in fact. Despite repeated opportunities afforded by the court, defendants have declined the invitation to put on evidence time and time, again.[5] Accordingly, the court finds that defendants have failed to meet their burden to prove that the government seized any privileged documents. Having so concluded, there is no need to reach the issues of whether any violation of defendants' Fifth or Sixth Amendment rights occurred.

Finally, the government argues that any privilege defendants might assert to the disputed documents has been waived. (Doc. 162 at

---

[5] In a footnote to their brief, defendants state that the court is free to conduct an in camera inspection of the disputed documents. (Doc. 130 at 5 n.1.) The court declines that invitation. While defendants specifically address only three documents in their brief, the surrounding narrative makes clear that they consider that numerous other documents are privileged. Id. at 5-6. In particular, defendants state that "at least ten documents prepared by Dr. Kaufman" are at issue; however, they go on to state that "[a]dditional documents contain numerous attorney-client matters." Id. at 4-5. The government asserts that potentially privileged materials are contained in "five boxes and one sack," as well as in a number of envelopes. (Doc. 162 at 7.) The court will not enter into an open-ended review of an unspecified number of documents, combing through them in an attempt to determine whether they contain any privileged material. That is the job of defendants and their counsel.

-13-

18-21.)  Since defendants failed to meet their burden to prove that any documents were privileged in the first instance, and also failed to meet their burden to show that any privilege has not otherwise been waived, Bump, 605 F.2d at 551; Kovel, 296 F.2d at 921, final disposition of these documents has become a real issue.  Although the government may have a meritorious claim to the disputed documents, the court will not decide the waiver issue.  Even if it found a waiver, the court would not "poison the well" by authorizing the government to review any potentially privileged materials in this case.  If defendants are convicted, the government's use of materials that might have been privileged would almost certainly yield a petition for relief under 28 U.S.C. § 2255 based on ineffective assistance of counsel surrounding the waiver issue.  The court has no desire to try this case twice, and neither should the government.  If, as it claims, the government has such a compelling case against these defendants, the prosecutors should know better than to jeopardize it by seeking to review potentially privileged material.  (Doc. 162 at 19 n.33.)

In an effort to determine whether there is a need to investigate whether some lesser sanction would be appropriate and, if so, what the sanction should be, Lin Lyn, 149 F.2d at 1118, the court orders that the parties proceed as follows:

1.  On or before September 2, 2005, the government shall grant defendants one more opportunity to review the evidence previously mentioned in search of privileged material.

2.  Defendants shall take possession of any material that they honestly and ethically believe is protected by the attorney-client privilege or the work product doctrine.

    3.  On or before September 9, 2005, defendants shall complete a privilege log, in a format similar to that specified in Federal Rule of Civil Procedure 26(b)(5), describing each document to which they lay a claim of privilege.  The log shall be in sufficient detail to afford meaningful review without compromising the privileged information allegedly contained therein.

    4.  Defendants shall then immediately file the allegedly privileged documents under seal with the Clerk of the Court. Defendants shall also immediately provide copies of the privilege log to the government and the court.

    5.  On or before September 16, 2005, the government shall identify any document noted in the privilege log which it believes is not privileged, which the government asserts will be admissible at trial, and the basis for admissibility (including relevance). If the court believes there is any merit to the government's position, it will schedule a conference.  If no conference is scheduled, the parties may consider that the court has determined that the interests of justice will not be served by a further expenditure of time on the subject of privileged documents.

    6.  All parties shall cooperate to see that defendants have an opportunity to review the government's evidence in time to meet the aforesaid deadlines.

    7.  The attorney-client and work product privileges will be deemed waived as to any materials not identified and handled in accordance with this order, including meeting the deadlines specified herein.

IT IS SO ORDERED.

Dated this   25th    day of August 2005, at Wichita, Kansas.

                                              s/  Monti Belot
                                              Monti L. Belot
                                              UNITED STATES DISTRICT JUDGE