IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No. 04-40141-MLB |
| ) | |
| ARLAN KAUFMAN and LINDA KAUFMAN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendants' joint motion to dismiss for preindictment delay. (Doc. 131). The motion has been fully briefed and is ripe for decision (Docs. 131, 156, 183). The court conducted an evidentiary hearing on this matter on August 30, 2005. Defendants' motion is denied, for the reasons herein.

**I.   FACTS**

On June 18, 2001, federal agents executed a search warrant on defendants' home. During the search, the agents seized items from the home. This search is the subject of two separate motions to suppress. (Docs. 132, 134). An indictment was not returned following the search.

At the time the search warrant was executed, defendants were represented by Jim Wyrsch. In February 2002, David Kelly, an attorney from Mr. Wyrsch's office, contacted Alan Metzger, an Assistant United States Attorney, to inquire about the status of any criminal investigation pertaining to defendants. Metzger informed Kelly that he was planning to indict defendants in the near future.

In March 2002, Mr. Wyrsch and defendants met with Metzger.[1] During the meeting, Metzger stated that he planned to indict defendants on mail fraud and medicare fraud in the near future. Metzger did not offer a formal plea agreement to defendants at that time.[2] Metzger told Mr. Wyrsch that he would not indict until he had outlined the case and understood all of the facts.

In June 2002, Metzger and Mr. Wyrsch had a subsequent conversation about a possible indictment. Mr. Wyrsch had contacted Metzger to check the status of the investigation because defendants were involved in proceedings before the Behavioral Sciences Regulatory Board (BSRB). Metzger authorized Mr. Wyrsch to inform the BSRB that a criminal indictment would occur in the near future.

Ryan Filson, a special agent for Health and Human Services (HHS), started investigating defendants in 2000. Agent Filson closed the criminal investigation against defendants in May 2003 in favor of a civil monetary action. As part of the civil action, Agent Filson and two attorneys from HHS deposed defendants in June 2004. During the deposition, defendants invoked their Fifth Amendment rights and did not respond to any questions. Stephen Godek, counsel for HHS, told defendants during the deposition that there were no pending criminal investigations. This was a true statement.

---

[1] During his testimony, Mr. Wyrsch repeatedly stated that his memory was not great or that he did not remember in response to questions by both defense and government counsel. Mr. Wyrsch was not trying to avoid answering counsels' questions. He simply could not recall particulars, which is hardly surprising.

[2] Mr. Wyrsch testified that a formal offer was not made because it is his practice to memorialize any formal offer and present it to his client.

In September 2004, Assistant United States Attorney Tanya Treadway phoned Agent Filson to ask him to reopen his criminal investigation. Treadway informed Filson that the Civil Rights Division of the Department of Justice would be joining the investigation. Filson then reopened the criminal investigation. The government filed an indictment in November 2004.

## II. APPLICABLE LAW

Claims for preindictment delay receive limited protection under the Due Process Clause of the Fifth Amendment. United States v. Johnson, 120 F.3d 1107, 1110 (10th Cir. 1997). "Preindictment delay is not a violation of the Due Process Clause unless the defendant shows both that the delay caused actual prejudice and that the government delayed purposefully to gain a tactical advantage." Id. "The burden of proof of making this showing is on the defendant." United States v. Engstrom, 965 F.2d 836, 839 (10th Cir. 1992); Perez v. Sullivan, 793 F.2d 249 (10th Cir. 1986). "Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice. Defendant[s] must show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided the defense." United States v. Trammell, 133 F.3d 1343, 1351 (10th Cir. 1998); see also United States v. Beszborn, 21 F.3d 62, 66 (5th Cir. 1994)(quoting United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)("There is no need to … guard against mere possibility that … delays will prejudice the defense … since statutes of limitation already perform that function."))

The Due Process Clause does not permit courts to abort

>     criminal prosecutions simply because they disagree with a
>     prosecutor's judgment as to when to seek an indictment.
>     Judges are not free, in defining due process, to impose on
>     law enforcement officials our personal and private notions
>     of fairness and to disregard the limits that bind judges in
>     their judicial function. [The court's] task is more
>     circumscribed. [The court is] to determine only whether the
>     actions complained of here, compelling [defendants] to
>     stand trial after the Government delayed indictment to
>     investigate further violates those fundamental conceptions
>     of justice which lie at the base of our civil and political
>     institutions and which define the community's sense of fair
>     play and decency.

United States v. Revada, 574 F.2d 1047, 1048-1049 (10th Cir. 1978)(internal citations omitted).

### III. ANALYSIS

Defendants assert that due to the delay they have lost three witness who would have testified favorably to the defense. One witness, M.O., is living in Oregon and two of the witnesses, G.C. and H.H., are deceased. Defendants have proffered an affidavit from M.O.'s guardian that states M.O. is in a weak health condition and would be unable to travel to Kansas for a trial. Defendants suggest that M.O. would testify that the residents at Kaufman house were working in the nude voluntarily and could leave the house freely. Defendants, however, have failed to assert that this testimony would be unique. Mr. Wyrsch testified that he interviewed residents who are still living who will testify favorably to the defense. "Cumulative testimony cannot, as a matter of law, result in actual prejudice." United States v. Comosona, 848 F.2d 1110, 1114 (10th Cir. 1988). Moreover, defendants have been free to make a Fed. R. Crim. P. 15 motion and, as defense counsel has pointed out, "have the right to have compulsory process for obtaining witnesses in their favor." (Doc. 183 at 20). Absent a showing that the evidence would not be

cumulative, that the witness is unavailable and that a deposition is impossible, the court finds that defendants have not demonstrated actual prejudice from the perceived "loss" of M.O.'s testimony.

Defendants allege the death of G.C. has caused actual prejudice since "[o]nly GC would have been able to testify that he was allowed to stop and that he was never forced to work." (Doc. 131 at 12). However, on the previous page of their motion, defendants assert that M.O. would testify that the "residents were free to come and go" and she "would have refuted any allegation of forced labor or involuntary servitude." (Doc. 131 at 10-11). The court fails to see how G.C.'s testimony is not cumulative. Moreover, the government has asserted that none of the evidence seized shows G.C. working at the Kaufman home and, in fact, G.C. appears to be too physically weak to work at all. Defendants have failed to rebut the government's assertion.

Defendants assert the death of H.H. has caused them actual prejudice since H.H. would testify that the residents voluntarily engaged in nude activities, "many group sessions occurred at which no one was nude" and "Arlan Kaufman was an equal opportunity derider and abuser" during group therapy. (Docs. 131 at 12, 183 at 24). Again, the court fails to see how H.H.'s testimony is not cumulative. M.O. will testify that the residents actions were voluntary and the other living members of the group can testify as to whether they were wearing clothes and to Arlan Kaufman's demeanor during therapy. Defendants argue that H.H. is unique in that he was not a resident of the Kaufman house and can refute the government's claim that defendants controlled the residents. However, defendants have failed to assert how H.H. would rebut this claim. "Defendant[s] must be able

-5-

to show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided his defense." Comosona, 848 F.2d at 1114.

Defendants have failed to meet their burden to make the required showing of actual prejudice to their defenses. "The mere allegation that the deceased [G.C. and H.H.] could have testified for [defendants] does not establish that [they] would have so testified or that [their] testimony would have been helpful." United States v. McManaman, 606 F.2d 919, 923 (10th Cir. 1979). Defendants have only speculated as to what the deceased residents' statements would have been, based on what appears to be Arlan Kaufman's treatment notes.[3] According to the government, H.H. thought Arlan Kaufman's therapy was a waste of time and that Arlan Kaufman was a "know it all." (Doc. 156 at 15). The government also asserts that G.C. would not have been a competent witness since he was "mentally ill and had difficulty staying focused." (Doc. 156 at 11). Defendants have not refuted these statements. Moreover, defendants have failed to show that the government had any information that G.C. and H.H.'s deaths were imminent. McManaman, 606 F.2d at 923.

Even if defendants could meet their burden to show actual prejudice, they have completely failed to demonstrate that the

---

[3] Defense counsel have failed to identify what the documents are that they are referring to and who created them. (Doc. 131 at 11). "Documentary evidence introduced in federal courts must be authenticated under the provisions of Rules 901 or 902 of the Federal Rules of Evidence. Specifically, the proponent of such evidence must produce evidence sufficient to support a finding that the matter in question is what its proponent claims." Amoco Production Co. v. United States, 619 F.2d 1383, 1391 (10th Cir. 1980). Defendants have not complied with this rule for many of the voluminous exhibits they have attached to their numerous motions.

-6-

government purposefully delayed to gain a tactical advantage. Defendants' motion has asserted the following:

> The delay in bringing the indictment was more than negligent. State and federal prosecutors declined to file charges. Agents became frustrated and began pursuing civil remedies. With Agent Filson present in the room, a government lawyer actually and falsely told the Kaufmans and their counsel during a deposition that there was no basis for the Kaufmans asserting their Fifth Amendment privilege against self-incrimination because there was no criminal investigation. Then, suddenly, with no apparent change in circumstances since the deposition, the government filed a complaint days before the statute of limitations ran. A one-count indictment followed and then a superseding indictment with 35 counts. This is more than ordinary negligence on the part of government representatives. It is unacceptable prosecutorial conduct that amount to a due process violation.

(Doc. 131 at 13-14)(internal citations omitted). Defendants' reply brief asserts that the false statement during the depositions was made to trick defendants into making a statement and gain a tactical advantage in the case. (Doc. 183 at 2).

During the hearing, however, Agent Filson testified that the statement was not false. Agent Filson had closed the criminal investigation in 2003 in favor of the civil action. Agent Filson did not reopen the criminal investigation until he was contacted by AUSA Treadway in September 2004. Moreover, Agent Filson testified that he was never frustrated with the United States Attorney's office for not filing an indictment.

Defendants have not presented any evidence that contradicts Agent Filson's testimony nor did they present any additional evidence during the hearing to support a finding of purposeful delay by the government. Defendants could have subpoenaed AUSA Metzger, whose office is in a building across the street from the courthouse, to try

-7-

to support their claims. Their failure to do so raises the inference that Metzger's testimony would not be favorable to them. Mr. Wyrsch testified that AUSA Metzger was not going to indict until he fully understood the facts of the case. "Uncertainty as to the validity or strength of the prosecution's case is a legitimate reason for delay in obtaining an indictment as is the availability and likelihood of prosecution by another jurisdiction." United States v. Pino, 708 F.2d 523, 528-29 (10th Cir. 1983)(quoting United States v. Revada, 574 F.2d 1047, 1050 (10th Cir. 1978); see also United States v. Lovasco, 431 U.S. 783, 794 n. 15, 97 S.Ct. 2044, 2051 n. 15, 52 L.Ed.2d 752 (1977). Moreover, Mr. Wyrsch also testified that complex fraud cases can take long periods of time to investigate and can frequently have different agencies involved. "Investigative delay is fundamentally unlike delay undertaken by the Government solely to gain tactical advantage over the accused," United States v. Revada, 574 F.2d 1047, 1050 (10th Cir. 1978), and an extensive period of time is not unreasonable in a complex fraud case. United States v. MacClain, 501 F.2d 1006, 1010 (10th Cir. 1974). The government has asserted that during its investigation tens of thousands of documents have been reviewed and numerous witnesses have been interviewed. Defendants have failed to introduce evidence to rebut this assertion by the government and based on the voluminous submissions by defendants, the court doubts that such rebuttal evidence exists.

**IV. CONCLUSION**

Defendants have the burden to establish actual prejudice and purposeful delay. Since defendants have failed to meet their burden, defendants' motion to dismiss for preindictment delay is DENIED.

IT IS SO ORDERED.

Dated this   2nd   day of September 2005, at Wichita, Kansas.

                                        s/ Monti Belot
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE