**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No. 04-40141-01, 02 |
| ) | |
| ARLAN DEAN KAUFMAN and ) | |
| LINDA JOYCE KAUFMAN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM AND ORDER**

Before the court are the following:

1. Defendants' joint motion to suppress evidence due to misrepresentations in search warrant affidavit (Doc. 134);

2. Government's response (Doc. 161); and

3. Defendants' joint reply (Doc. 184).

Pursuant to defendants' request, this matter was set for a Franks hearing.[1] However, on August 30, 2005, at the outset of the hearing, defendants made the surprise announcement that they would present no evidence in support of their motion and instead would rely on their written submissions. This astounding change of position occurred even though the author of the bitterly-criticized affidavit was sitting in the courtroom.

For the following reasons, defendants' joint motion is denied.

<u>The Law Applicable to Franks Hearings</u>

The standards pertaining to the Franks hearing are well known.

---

[1] Franks v. Delaware, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).

In <u>United States v. Artez</u>, 389 F.3d 1106 (10th Cir. 2004), the court provided the following summary:

> Under <u>Franks v. Delaware</u>, a defendant may request an evidentiary hearing regarding the veracity of a search warrant affidavit. 438 U.S. 154, 171-72, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Before the defendant will be entitled to such a hearing, however, the defendant must allege deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. <u>Id.</u> at 171, 98 S. Ct. 2674. Affidavits of witnesses should be provided to the court or their absence satisfactorily explained. <u>Id.</u> Allegations of negligence or innocent mistake are insufficient. <u>Id.</u> If these requirements are met, then the defendant must show that the remaining content of the warrant affidavit is insufficient to support a finding of probable cause. <u>Id.</u> at 171-72, 98 S. Ct. 2674. "The standards of deliberate falsehood and reckless disregard set forth in <u>Franks</u> apply to material omissions, as well as affirmative falsehoods." [<u>United States v.</u>] <u>Avery</u>, 295 F.3d [1158,] 1166 [(10th Cir. 2002)].

<u>Id.</u> at 1111.

### Discussion

Defendants' joint motion and reply total over fifty pages. They make no identifiable allegations of deliberate falsehood. However, the submissions are well-larded with allegations of material omissions and misrepresentations (Doc. 134 at 10-16). Nevertheless, notwithstanding the Tenth Circuit's clear requirements, the motion contains no identifiable offer of proof. This failure, standing alone, would have justified a decision not to hold a <u>Franks</u> hearing. Defendants' motion is supported by numerous exhibits, but only three (Nos. 9, 10, and 11) are affidavits. Defendants' motion makes no effort to authenticate the remaining exhibits in the manner contemplated by Fed. R. Evid. 901, even though authentication would have been easily accomplished. For example, one of the exhibits purports to be an undated letter

prepared by defendant Arlan Kaufman entitled "Warning: Nude People at Work-Don't Look Give 'Em a Break." Defendant Arlan Kaufman was present at the hearing and was available to authenticate the document without exposing himself to cross examination regarding its contents or any other aspect of the case. The court informed both defendants of their right to testify. Both declined to do so. Even in those situations where the government has the burden of proof, the absence of any refutation or contradiction by a criminal defendant allows the persuasive force of the government's evidence to go undiminished. United States v. Conley, 131 F.3d 1387, 1391 n.2 (10th Cir. 1997). Of course, when a defendant has the burden, his or her failure to present evidence does not help a defendant's case.

Defendants' failures to produce evidence and authenticate documents are significant because it was their burden to demonstrate the veracity of their accusations of misrepresentation and material omissions. For example, defendants contend that Special Agent Filson made a misrepresentation when he averred: "there is circumstantial evidence to suggest, primarily through the statement of the victims, that benefit money is inuring [sic] directly to Arlen [sic] and Linda Kaufman and that it is not being used appropriately." Defendants now assert that "this statement is contradicted by the victim's statments [sic]." (Doc. 134 at 11-12.) There are no actual "victim statements" attached to defendants' motion. Defendants presumably are referring to the unauthenticated written summaries of interviews of "victims" by Captain Craig Murphy of the Butler County Sheriffs Department (Doc.

134, Ex. 2). One of the "victims," JM, told Captain Murphy that in response to a question regarding whether defendant Kaufman paid him for working at the farm, "Dr. Kaufman does not pay me, he gets my social security." Another "victim," MH, is reported to have told Captain Murphy that "her dad pays the Kaufmans as well as a social security disability paying for her to live at this residence." In other words, Special Agent Filson's statement is not contradicted and is not a misrepresentation.

Defendants also cite as "material omissions" from Special Agent Filson's affidavit his failure to cite defendant Arlan Kaufman's unauthenticated and undated letter "explaining the nudity." It is true Agent Filson's June 13, 2001 affidavit does not mention the letter. However, because the letter is undated and otherwise unauthenticated, it is impossible to tell whether the letter was written before or after the affidavit was prepared. Agent Filson was available to be called as a witness to determine whether he was aware of the letter when he prepared and swore to the affidavit. Defendants' failure to do so raises an inference that the letter was written after the date of the affidavit. Even if the letter was written before Agent Filson prepared the affidavit, its omission from the affidavit was not material. This court can say with certainty that Chief Magistrate Judge Karen Humphreys' decision to issue the 2001 search warrant would not have been changed by a letter which states, among other things, that "more recently public surveys reveal that approximately twenty-five percent of adults in this country have participated in clothing-optional recreational activities where total nudity of both sexes

-4-

is experienced" and that Pope John Paul II has "written extensively" on the subject of public nudity.

Finally, defendants allege misrepresentations by two individuals mentioned in Agent Filson's affidavit. Filson averred:

> KBSRB had their Primary Consulting Board Member, Charles Frankenfeld, LSCSW, review the facts of their case. Mr. Frankenfeld found probable cause to believe a violation of the Board's rules and regulations was committed as to the nature of the clinical social work provided. Furthermore, KBSRB consulted with a psychologist, Larry Hays, Ph.D., concerning the standard or usual number of therapeutic sessions for a therapist-client relationship. This was sought because of what seemed an excessive amount of Medicare billing. Dr. Hays "expressed that even in consideration of external environmental payor expectations and the individual's treatment needs, [this case] fell far outside the bounds of normal standards of care. Dr [sic] Hays further stated that it is typical for many "folks (to be) seen once a week" and that the national data suggested that most patients are seen for therapy 10 sessions or less." Another Licensed Clinical Social Worker, John Presley, was consulted. Mr. Presley works for the Central Kansas Mental Health Center and is a Social Work Advisory Committee Member for KBSRB. "Mr. Presley offered that if the LSCSW were practicing psychoanalysis, it would be possible the client would be seen several times in a week for an extended period of time. Mr. Presley added that this instance was extremely unusual but under those circumstances 100 individual sessions per year would not be unreasonable but would require extensive documentation by the LSCSW. "The 300 hours of group therapy seems excessive since the intensive work that I've mentioned is always done individually[,"] is what Mr. Presley commented. In this case, Mr. Kaufman has in some cases billed for over 600 hours of group therapy in a year for one patient.

(Doc. 134, Ex. 1 at 11-12 (footnotes omitted).)

Defendants claim that Agent Filson falsely represented that Hays "believed that Dr. Kaufman's frequent group therapy sessions 'fell far outside of the bounds of normal standard of care.' He went so far as to alter the one report of Dr. Hays' opinion from 'this example' to 'this case.'" In support of this claim of

-5-

misrepresentation, defendants have presented Hays' affidavit which states, in pertinent part:

> 3. I have been told that a search warrant affidavit included an opinion that I gave in response to some unknown hypothetical. I do not remember the hypothetical or giving a response. This does not mean that it did not happen, just that I do not remember it.
>
> 4. The hypothetical might have been given to me informally, such as over a coffee break. I certainly did not review any materials related to Dr. Kaufman's case before giving an opinion.
>
> 5. Daily therapy for chronic schizophrenics can be appropriate in hospitals. An example would be daily psychosocial groups. In psychosocial groups, social workers work with patients with the goal of helping them function successfully outside of a hospital setting. It is appropriate and fairly common for such groups to meet almost daily. What is appropriate outside of hospitals is not my area of expertise.

(Doc. 134, Ex. 9.)

Hays' affidavit does not demonstrate a misrepresentation. On the contrary, Hays does not remember the hypothetical presented to him. There is, however, a misrepresentation: <u>defendants'</u> statement that "Dr. Hays agrees that daily group therapy is proper for patients like Dr. Kaufmans'." Nothing in Hays' affidavit supports this statement. Whatever therapy was being provided to the "victims" was <u>not</u> given in a hospital.

Defendants also allege that Agent Filson misrepresented statements made by John Presley. Defendants contend that Presley was not consulted about Kaufman's case and that his opinion "at best was an opinion about some unknown hypothetical. That hypothetical is highly suspect. Mr. Presley agrees that daily psychosocial group work is proper for patients like Dr. Kaufman's. It is provided four days per week at his community mental health

-6-

center, with sessions lasting between thirty minutes and two hours." Mr. Presley's affidavit states, in pertinent part:

> 3. In this capacity, it was not uncommon for a BSRB investigator or board member to present a hypothetical to the committee and I would express an opinion about the hypothetical. In such situations, names were not mentioned.
>
> 4. I was not a member of the group who would review investigatory materials or case files. I have no memory of the Kaufman's case or of giving a response to a specific hypothetical about their case. That does not mean that I did not give a response to a hypothetical, that I just don't remember it.
>
> 5. In the early 1990's, the Central Kansas Mental Health Center conducted group therapy sessions with schizophrenic patients. That model was replaced in the early 1990's with psychosocial groups. The large psychosocial group with the Center currently meets four days per week. Some meetings are one hour, others are longer. Not every group member attends each meeting.

(Doc. 134, Ex. 10.)

Presley obviously does not state that "daily psychosocial group is proper for patients like Dr. Kaufman's." Presley recalls nothing regarding Kaufman's case.

No justifiable purpose will be served by further discussion of defendants' allegations regarding Agent Filson's affidavit. The court generally agrees with the government's response (Doc. 161).

The standards for this court's review of Chief Magistrate Judge Humphreys' decision to issue a search warrant are set forth in United States v. Artez, 389 F.3d at 111:

> 1. Standards of Review
>
> A magistrate judge's task in determining whether probable cause exists to support a search warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information,

> there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). "Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision." Id. at 235, 103 S. Ct. 2317.
> A magistrate judge's decision to issue a warrant is entitled to "great deference." Id. at 236, 103 S. Ct. 2317; United States v. Tuter, 240 F.3d 1292, 1295 (10th Cir. 2001). Accordingly, we need only ask whether, under the totality of the circumstances presented in the affidavit, the magistrate judge had a "substantial basis" for determining that probable cause existed. Gates, 462 U.S. at 238-39, 103 S. Ct. 2317; Tuter, 240 F.3d at 1295.

The court also discussed the Franks standard in United States v. Avery, 295 F.3d 1158:

> "Under Franks, a hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." United States v. Kennedy, 131 F. 3d 1371, 1376 (10th Cir. 1997) (citing Franks, 438 U.S. at 155-56, 98 S. Ct. 2674). "The standards of deliberate falsehood and reckless disregard set forth in Franks apply to material omissions, as well as affirmative falsehoods." United States v. McKissick, 204 F.3d 1282, 1297 (10th Cir. 2000). If, after considering the evidence presented at a Franks hearing, the district court concludes by a preponderance of the evidence that the affidavit contains "intentional or reckless false statements," Kennedy, 131 F.3d at 1376, or "material omissions," McKissick, 204 F.3d at 1297, "then the district court must suppress the evidence obtained pursuant to the warrant." Id. If, however, the district court concludes that the omitted information would not have altered the magistrate judge's decision to authorize the search, then the fruits of the challenged search need not be suppressed. Id. at 1297-98; Kennedy, 131 F.3d at 1376.

Id. at 1166-67.

Judged by these standards, the court finds that it was entirely appropriate for Chief Magistrate Judge Humphreys to issue a search warrant based upon Agent Filson's affidavit. The court

is not impressed by defendants' attempt to "nit-pick" selected portions of the affidavit, especially when defendants' allegations of misrepresentation and omission are neither properly supported nor, to the minimal extent that they are supported, are refuted by the supporting affidavits themselves.

## Conclusion

Accordingly, defendants' joint motion (Doc. 134) is denied.

IT IS SO ORDERED.

Dated this __6th__ day of September 2005, at Wichita, Kansas.

> s/ Monti Belot
> Monti L. Belot
> UNITED STATES DISTRICT JUDGE