**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | No.  04-40141-01, 02 |
| | ) | |
| ARLAN DEAN KAUFMAN and | ) | |
| LINDA JOYCE KAUFMAN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Before the court are the following:

1.  Government's motion for reconsideration of
    court's ruling regarding time for trial and
    exclusion or limitation of evidence (Doc. 223);
    and

2.  Defendants' joint motion for change of
    designation of place of trial (Doc. 222).

The court denied both motions by minute order (Doc. 224).  The
purpose of this order is to memorialize the court's reasons for
denial of the motions.

Background Facts Pertaining to the Motions

On October 26, 2004, counsel from the Civil Division of the
Department of Justice filed, in Wichita, a complaint charging
defendants with a violation of 18 U.S.C. § 1584 and 2.  U.S.
Magistrate Judge Donald W. Bostwick drew the case.  (Judge Bostwick
previously had authorized a search warrant which is the subject of
a motion to suppress.)  Defendants were arrested and appeared
before Judge Bostwick for a Rule 5 and detention hearing on October
27, 2004.  James Wyrsch, a prominent and respected lawyer from

Kansas City entered his appearance for both defendants and the case was set for a preliminary hearing on November 10, 2004.  Mr Wyrsch filed a number of motions.

On November 3, 2004, the Topeka grand jury returned an indictment also charging a violation of 18 U.S.C. § 1584.  The case was assigned to Senior U.S. District Judge Sam A. Crow, whose chambers are in Topeka.  During November 2004, Judge Bostwick, who sits in Wichita, conducted several lengthy hearings relating to defendants' bonds and other matters, ultimately issuing several written orders.  James Wyrsch and members of his firm represented defendants before Judge Bostwick.  Justice Department counsel appeared at the hearings, accompanied by different Assistant U.S. Attorneys.

On December 29, 2004, a superseding indictment was returned by the Topeka grand jury, charging several more counts.  In the meantime, the government challenged Mr. Wyrsch and his firm's representation on several bases.  Eventually, on January 26, 2005, Senior Judge Crow disqualified Mr. Wyrsch and his firm (Doc. 98). He also set the trial date for October 5, 2005.  Thereafter, defendant Arlan Kaufman hired Tom Haney, a Topeka attorney, who entered his appearance on February 23, 2005 (Doc. 100).  Linda Kaufman hired Steve Joseph, a Wichita attorney, who also has an office in Topeka manned by his son, Chris Joseph.  The Josephs entered their appearances on March 4, 2005 (Doc. 104).

The case moved forward in Topeka and at some point in the process, counsel were able to agree that the case would require 25-

30 trial days.[1]  On July 29, 2005, Senior Judge Crow exercised his right as a senior judge to decline further work on the case and the case was transferred back to Wichita (Doc. 191).  The case was randomly assigned to Senior Judge Wesley E. Brown who, at age 98, wisely exercised his right to have the case reassigned to an active judge.  The case was then randomly assigned to the undersigned (Doc. 192). Following reassignment, Magistrate Judge Bostwick held more hearings on various motions.  In the addition, at least seven motions were pending which required ruling by this court.  The court has had neither the time nor the inclination to count the number of pages in the parties' submissions relating to these motions.  A rough estimate of the motions and their accompanying exhibits would be well over 1,000 pages.

The undersigned and his staff immediately started work on the motions with a view towards meeting the October 5 trial date.[2]  The court entered several orders regarding disclosure of evidence and further pretrial motions, the obvious purpose of which was to have the case in some reasonable shape to start trial on the date set by Senior Judge Crow and never objected to (until now) by counsel for the parties.  Pursuant to a defense request, the court held an evidentiary hearing on August 30, 2005, during which the court made additional rulings regarding pretrial and trial scheduling. Among other things, the court informed counsel that it could and would

---

[1]This is one of the few things on which counsel have been able to agree.  Counsel have disagreed on virtually every other aspect of the case.

[2]As this order is written, all but one of these motions has been decided.

-3-

adhere to the trial date but that it was not in a position to give the parties five to six weeks for a trial.  The court explained that this would present a considerable sacrifice for jurors and that the court presently was assigned a death penalty case which would begin "heating up" in November pursuant to a previously-issued scheduling order.  The court informed the parties' counsel that they must reevaluate their 25-30 trial day estimate.  Given the volume of pretrial motions and counsels' inability to work together, the court was and remains convinced that the parties' estimate of trial time was too low.  The court directed counsel to submit a revised trial schedule and informed counsel that if a more realistic schedule could not be agreed upon, the court would set a schedule.  Rather than comply with the court's direction, the parties now have filed the motions which are discussed infra.

### Government's Motion

The government contends that because the court would not accept the parties' estimated schedule for the trial, it is forcing the government to elect among charges on which it will proceed. The government cites United States v. Zabawa, 39 F.3d 279 (10th Cir. 1994).  In Zabawa, the district court entered an order limiting the government to prosecuting twenty counts of a seventy count indictment charging thirteen defendants with mail and wire fraud.  Some of the defendants sought severance of counts; some did not join the severance motions and some asserted that the counts were duplicitous.  These  concerns raised the specter of double jeopardy claims.  The Tenth Circuit observed:

> Certainly a district court has reasonable discretion

-4-

in appropriate cases to manage its docket by granting particular defendants separate trials or disallowing cumulative testimony on a particular charge. But the order appealed here neither separates defendants for trial nor limits testimony relevant to a single charged crime. It limits the prosecution to the testimony of ten victims of a telemarketing scheme, to prove only ten of seventy charged crimes against thirteen individual defendants (fourteen, including the defendant corporation).

Because the district court's ruling forces the government to abandon, at least temporarily, the prosecution of separate crimes it has charged against defendants who are scheduled to be tried, we believe the ruling goes beyond those subject to the court's discretionary control and impinges upon the separation of powers. Prosecutorial discretion is a function of the executive branch, not the judiciary.

Id. at 284.

In this case, there are only two defendants, neither of whom who has sought severance of counts, nor have they asserted that any counts are duplicitous. But more to the point, this court has not directed, the government to elect the counts on which it will proceed. Indeed, the court has not even mentioned the subject.[3] All the court has done, up to this point, is to inform the parties that it considers their 25-30 trial day estimate to be unreasonable. The way motion practice has been handled, the unnecessary length of motions, the acrimony between counsel and various other factors have convinced the court that it cannot abdicate to the parties' counsel its responsibility to control its docket which, by the way, includes more cases than this one.

The government also claims that it must introduce videotape

---

[3]The government may, or may not, be reconsidering its charging decisions. The nature and number of charges is the government's prerogative, as well as its problem.

evidence to support the charges that the defendants forced "victims" to perform labor for defendants' personal gain. The government says "if the court were to prevent the government from playing these tapes, it would be suppressing the best –and in some situations the only– evidence available to establish the conspiracy, forced labor and involuntary servitude counts." Once again, the court has never stated that it will prevent the government (or defendants) from showing at least portions of the videotapes. But it is well within the court's discretion to establish ground rules, including time limits, for the presentation of any type of evidence. The court has not seen any of the videotapes and the government has not, as yet, designated the portions of the tapes which it believes it must show. At one time, there was some suggestion that the parties would require up to two weeks to show portions of the tapes. Clearly this would work a hardship on the jury. Two weeks, or anything even approaching two weeks, is facially unreasonable. The court still awaits the parties' <u>reasonable</u> and description of the portions of the tapes they will offer and a <u>reasonable</u> and <u>rational</u> estimate of the time needed to show the tapes.

The government predictably asks that the case be transferred to Topeka to a judge who can accommodate the 25-30 days supposedly needed to try the case. There are three judges in Topeka. Senior Judge Crow has already recused. Senior Judge Richard Rogers is in his 80s. The court has no reason to believe he will be willing to take on this case, nor should he have to. Finally, District Judge Julie Robinson is just finishing a difficult ten week trial which

-6-

undoubtedly has caused considerable disruption in the handling of other cases on her docket.  Transferring this case back to Topeka is an unacceptable alternative.  If Topeka was the appropriate venue, the case would not have been transferred to Wichita.

Finally, the government states that while it will object to a continuance, it would "rather suffer a short continuance than be denied the ability to present adequately to the jury this complex case."  The government does not state the length of the "short continuance" to which it would deign to agree.  But more important, the government is operating from the assumption that another judge to whom this case would be assigned would not place restrictions on the time allotted for a trial, or that another judge even has room on his or her docket for a 25-30 day trial.  As government counsel is aware, Senior Judge Tom Van Bebber recently passed away, and his case load has been divided among the other judges.  Judge Carlos Murguia is getting ready to try a death penalty case.  Chief Judge Lungstrum and Judge Vratil are busy.  What makes government counsel believe that there is some judge in this district who has so little to do that he or she can accommodate a 25-30 day trial (at minimum), even if there would be a "short continuance" of the trial's present setting, which was established in January 2005 and never objected to until this court made orders which were, and are, intended to make the parties work towards getting this case ready for trial, as opposed to collateral motion practice.

## Defendants' Joint Motion

Defendants seek reassignment of the case to Topeka "for the convenience of counsel," because unidentified expert witnesses

-7-

"were selected in part based on the designation of trial" in Topeka, because expert witness expenses will increase if they are required to travel to Wichita (which is 125 miles from Topeka) and because the defendants have "limited financial means to fund their defenses in this case." Defendants threaten that a depletion of their finances will result in them having to obtain appointed counsel.

The court is amazed by defendants' chutzpah. Although defendants use the terms "Topeka division" and "Wichita division" as though Topeka and Wichita were in different districts (like Oklahoma), the fact is that Kansas is one district. There are no rules, local or otherwise, which predetermine or require that any criminal case be tried in Wichita, Topeka or Kansas City. This case started in Wichita and was transferred to Topeka. At most, defendants can claim some expectation that the case was going to go to trial in Topeka but that is all. The allegation that it would be more convenient for defendant Arlan Kaufman to confer with his unidentified consulting expert witness if the case is tried in Topeka is unpersuasive. The Kaufmans live in Newton, some twenty miles from Wichita. Magistrate Judge Bostwick has already granted the Kaufmans permission to travel to Topeka to confer with their counsel. Assuming the Kaufmans comply with modifications to their bond granted by Judge Bostwick, it is reasonable to assume that a similar modification can be made for Arlan Kaufman to travel to Topeka to confer with his expert and with his counsel. Linda Kaufman's primary counsel offices in Wichita. She makes no claim of a need to confer with an expert. Defendants' "understanding"

-8-

that the government selected its experts in part due to the designation of Topeka as the place of trial, frankly, is none of defendants' business.

Defendants' claims that they will be prejudiced by the court's statement that it will not agree to a 25-30 day trial (more likely longer) are not persuasive because defendants have not specified the number of witnesses they expect to call or the exhibits which they intend to offer. This is a criminal case. Defendants have no burden to do anything but if they are going to assert that they will be denied due process if they are not allowed unspecified time for their defenses, it seems only reasonable that they should afford the court with some insight regarding the nature of their defenses, <u>and</u> the number of their witnesses and the anticipated length of their testimony. They have not done so and, to make things clear, the court will not participate in ex parte discussions with counsel about any aspect of the case, unless specifically authorized by the rules.[4]

Defendants say that they will have inadequate time to prepare for trial because they were only authorized to seek interviews of the former residents ("victims") by Judge Bostwick in his order of August 23, 2005 (Doc. 212). <u>This claim is absolutely disingenuous</u>. The matter of defendants' contact with the "victims" first came up in November 2004. In his November 17 order (Doc. 50), Judge Bostwick ruled:

3. Any attempt to contact the former residents or their

---

[4]Defendants' counsel asked for an ex parte meeting with the court following the August 30 hearing. Their request was denied.

families by counsel for defendants in this case for the
purposes of preparing a defense shall be accomplished in
accordance with any restrictions established by the
district judge assigned to this case. The parties should
meet and confer as soon as possible about a procedure
which would allow defendants' counsel the opportunity to
properly prepare the defense while assuring that the
former residents and their families will not be unduly
inconvenienced.

Not surprising, the parties were never able to agree.  The
matter was not raised again until July 6, 2005, when defendants
sought modification of their release conditions (Doc. 152).  After
allowing the parties to brief the issues, Judge Bostwick held a
hearing on August 3 and 4, 2005, and then issued written orders on
August 8 and 23, 2005 (Docs. 197 and 212) which pertain to contact
with the "victims."  The court finds it irresponsible, to say the
least, that defendants' counsel would try to blame Judge Bostwick
for their failure to obtain a resolution of the parties' dispute.
Defendants knew the matter was unresolved in November 2004 and took
no action until July 2005.

Finally, there is the matter of "depletion of defendants'
funds" and the threat to seek appointed counsel.  This case was set
for trial on October 5, 2005, by Judge Crow's January 26, 2005
memorandum and order (Doc. 98).  Defendants' counsel were not in
the dark regarding what the case was about when they entered their
appearances.  It must be assumed that defendants' counsel would
have evaluated the case and made the necessary financial
arrangements to secure their representation through trial.
Apparently, defense counsel perceived a need to file numerous,
voluminous pretrial motions.  It is not up to the court to evaluate
counsels' decision, any more than the government's charging

decision.  Both counsel are experienced.  Defendant Arlan Kaufman's

counsel is a former Assistant U.S. Attorney.  But the court is

quite confident that defense counsels' engagement was not limited

only to filing pretrial motions.  It was, and is, the court's

expectation that defense counsel will recognize and adhere to their

ethical duties to their clients and to this court to see this case

through to its conclusion, whatever that conclusion may be.  In

other words, the matter of defendants' financial resources, how

defense counsel allocated their time in light of those resources

and any financial problems being experienced by defense counsel are

simply non-issues.  It would be totally unreasonable to shift

responsibility to appointed counsel at this point in the case.

        Dated this   6th   day of September 2005, at Wichita, Kansas.


                                    s/ Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE

-11-