**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No. 04-40141-01, 02 |
| ) | |
| ARLAN DEAN KAUFMAN and ) | |
| LINDA JOYCE KAUFMAN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on a Motion to Intervene and to Oppose Exclusion of Sketch Artists filed by Media General Operations, Inc., d/b/a KWCH-TV CHANNEL 12, a Wichita television station. (Doc. 275.) The court corrected several erroneous factual assertions in Channel 12's motion by written order. (Doc. 278.) The court also established a schedule for briefing and offer of proof on the issue of sketch artists. Id. The alleged victims in this matter filed a response (Doc. 283), and Channel 12 filed what it apparently perceived as an offer of proof; however, it only offered proof of irrelevant matters. The court also conducted a hearing on October 14, 2005. Channel 12's motion is GRANTED, subject to conditions, for reasons set forth herein.

**I. FACTS**

Defendants are charged in a thirty-four count second superceding indictment with, among other things, Medicare fraud, civil rights violations, and subjecting victims to involuntary servitude, all in violation of various provisions of Title 18 of the United States Code.

(Doc. 121.)  The case has garnered more than trivial interest in the local media.  Unfortunately, this case involves allegations of sexual misconduct by defendants toward their mentally ill patients.  Some of this conduct is recorded in graphic detail on video tapes.  In light of the congressional mandate to protect the privacy and dignity of victims under the Crime Victims' Rights Act, 18 U.S.C. § 3771, the court has already directed that these videos be displayed on a screen that is visible to the jury, the court, and the parties, but not to people seated in the gallery.  No objection has been made to this procedure by the parties or by the media.  Other than that, and despite the graphic detail which already has come out and which is certain to come out through further witness testimony, the court has not otherwise closed the proceedings to the public.  Both the media and the general public have the opportunity to attend the proceedings and describe what they witness to anyone who will listen.

When Channel 12 filed its motion seeking a ruling on whether sketch artists would be allowed in the courtroom (Doc. 275), the court questioned the parties, none of whom desired to have a sketch artist in the courtroom.  On October 14, 2005, in open court, the court questioned the members of the jury regarding their feelings about being drawn by a sketch artist. No juror indicated any desire to have his or her likeness drawn and displayed on television.  In anticipation of the court's inquiry to the jury, Channel 12 filed a document in which it stipulated that if sketch artists were permitted to conduct their operations in the courtroom, they would not sketch victims or jurors. (Doc. 287.)  At the end of this inquiry, the court offered Channel 12 the opportunity to offer any additional evidence

-2-

or argument that it wished. Channel 12 briefly reiterated its prior arguments.

## II. ANALYSIS

The general principle that the public and the press have a First Amendment right of access to criminal proceedings is well established. See United States v. McVeigh, 119 F.3d 806, 811 (10th Cir. 1997) (citing Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 558-81, 100 S. Ct. 2814, 2818-30, 65 L. Ed. 2d 973 (1980) (plurality opinion)). Nevertheless, "[a]lthough the right of access to criminal trials is of constitutional stature, it is not absolute." Globe Newspaper, 457 U.S. at 606, 102 S. Ct. at 2620. Any restrictions must be "necessitated by a compelling governmental interest, and . . . narrowly tailored to serve that interest." Id. at 607, 102 S. Ct. at 2620.

Here, the trial has been completely open to the press and the public with the exception that sexually-graphic videos of mentally ill victims are shown in a manner so that they are not viewable by individuals in the gallery. This restriction was necessary to protect the victims' "right to be treated with fairness and with respect for the victim[s'] dignity and privacy." 18 U.S.C. § 3771(a)(8). Other than this restriction, no limitation has been placed on the public's right to be present and hear the extensive, graphic testimony about the content of those videos. Accordingly, the threshold issue here is the much narrower question of if, and to what extent, the First Amendment grants sketch artists the right to attend and sketch the proceedings in a criminal trial.

As an initial matter, "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion." Globe Newspaper, 457 U.S. at 609 n.25, 102 S. Ct. at 2621 (internal quotations omitted). For the reasons set forth in its previous order (Doc. 278), the court was unaware of Channel 12's interest until it filed its Motion to Intervene. Therein, Channel 12 requested a hearing. Since a hearing would necessarily interrupt the underlying criminal trial, the court directed Channel 12 to file an offer of proof regarding any matters it intended to prove at the hearing. (Doc. 278.) Channel 12 filed an offer of proof in the form of an affidavit from one of its managers. (Doc. 281.) Unfortunately, that offer of proof only encompassed events related to communications between Channel 12 and the United States Attorney's Public Affairs Officer as it pertained to having sketch artists in the courtroom. Channel 12 offered no explanation regarding what its artist intended to sketch, which raised the court's concern that Channel 12 intended to sketch and show likenesses of protected witnesses and jurors. Nevertheless, the court still afforded Channel 12 an opportunity to be heard in open court on October 12, 2005. Hence, the court finds that Channel 12 has received its notice and opportunity to be heard. There is no purpose in conducting further hearings on this matter and Channel 12 has not requested one.

The court finds that sketch artists have no First Amendment right to attend and sketch the proceedings in a criminal trial. This is because the First Amendment interests vindicated by their activities are de minimis. In finding that the press holds a general First Amendment right of access to criminal trials, the Supreme Court

focused on the important role of the media in keeping the public informed regarding the proper and effective functioning of their government, particularly in the area of criminal judicial proceedings. Globe Newspaper, 457 U.S. at 604-06, 102 S. Ct. at 2618-20. There can be no doubt that allowing the press to report on the trial is critical to keeping the public informed. Most citizens lack the time and opportunity to attend a criminal trial, particularly one of this extended duration. Their ability to stay abreast of the proceedings through newspapers, television, and other media outlets is thus essential to give practical meaning to the First Amendment right of access.

However, unlike the written or spoken word, sketches of courtroom proceedings do little, if anything, to inform the public about the course of the trial. It conveys nothing about the allegations, the testimony, or other non-testimonial evidence received in the case. Likewise, the sketches give no sense of whether the case is being handled in a fair, legitimate manner, or whether there is some problem with corruption, misconduct, or other irregularity that might indicate a failure in our system of justice. In fact, the one device that would provide visual images that could fulfill some of these important functions is a video camera. Yet, the Supreme Court has made clear that there is no constitutional right to have video cameras in the courtroom. Estes v. Texas, 381 U.S. 532, 85 S. Ct. 1628, 14 L. Ed. 2d 543 (1965).[1]  In fact, Federal Rule of Criminal Procedure 53

---

[1] While Estes was a fractured opinion regarding whether a televised criminal trial was a per se violation of the constitution, the decision was essentially unanimous that there was no First Amendment right to televise a criminal trial. See also Estes, 381

-5-

expressly forbids photographing and broadcasting criminal proceedings.[2]  See also United States v. Kerley, 753 F.2d 617, 622 (7th Cir. 1985) (Rule 53 does not violate the First Amendment);[3] United States v. Hastings, 695 F.2d 1278, 1283-84 (11th Cir. 1983) (same).  Likewise, still cameras lack a constitutionally protected right of access to the courtroom.  Indeed, the court can add little to the Eighth Circuit's recent summary of the law in this area:

> While Richmond mandates that criminal trials be open to the public, no court has ruled that videotaping or cameras are required to satisfy this right of access. Instead, courts have universally found that restrictions on videotaping and cameras do not implicate the First Amendment guarantee of public access. See Whiteland Woods v. Township of West Whiteland,

---

U.S. at 588, 85 S. Ct. at 1662 (Harlan, J., concurring) ("No constitutional provision guarantees a right to televise trials.")

[2] The text of the rule reads as follows:

> Except as otherwise provided by a statute or these rules, the court must not permit the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the courtroom.

Fed. R. Crim. P. 53.

[3] In Kerley, the Seventh Circuit provided a characterization of the case that is equally applicable here:

> It is important to note that the issue is not between open and closed proceedings. Rather, we are only concerned with whether it is reasonable to conclude that the marginal gains from videotaping and broadcasting an already public trial, which members of the public and media will be free to attend and to report on, are outweighed by the risks and uncertainties the procedure, in the minds of some, entails.

Kerley, 753 F.2d at 621 (emphasis in original)

-6-

> 193 F.3d 177, 184 (3rd Cir. 1999) (holding that public has no right to videotape Planning Commission meetings that were required to be public); United States v. Kerley, 753 F.2d 617, 621 (7th Cir. 1985) (holding that the public has no right to videotape trial even when the defendant wishes it to be videotaped); Westmoreland v. Columbia Broadcasting System, Inc., 752 F.2d 16, 23 (2d Cir. 1984) ("There is a long leap, however, between a public right under the First Amendment to attend trials and a public right under the First Amendment to see a given trial televised."), cert. denied, 472 U.S. 1017, 105 S. Ct. 3478, 87 L. Ed. 2d 614 (1985); United States v. Hastings, 695 F.2d 1278, 1284 (11th Cir.), cert. denied, 461 U.S. 931, 103 S. Ct. 2094, 77 L. Ed. 2d 303 (1983) (holding that the press had no right to videotape criminal trials); cf. Nixon v. Warner Communications Inc., 435 U.S. 589, 609, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978) (holding that no First Amendment right existed to publish or copy exhibits displayed in court); United States v. McDougal, 103 F.3d 651, 659 (8th Cir. 1996), cert. denied, 522 U.S. 809, 118 S. Ct. 49, 139 L. Ed. 2d 15 (1997) (holding that First Amendment right of access does not extend to videotaped deposition testimony of then-President Clinton). As the Second Circuit has observed, "the First Amendment right of access is limited to physical presence at trials." United States v. Yonkers Bd. of Educ., 747 F.2d 111, 113 (2d Cir. 1984).

Rice v. Kempker, 374 F.3d 675, 678-79 (8th Cir. 2004). Given that cameras and recording devices would tend to provide the public with a far better picture (no pun intended) of what transpired in the courtroom, and yet the Constitution does not mandate their admission, there can be little doubt that the First Amendment does not give sketch artists the right to sketch criminal trials.

The court now considers the restrictions proposed by Channel 12: that it will not sketch and televise likenesses of victims or jurors. Even in the absence of Channel 12's proposal, the court finds that 18 U.S.C. § 3771(a)(8) requires that sketch artists' activities in the

courtroom be restricted under the circumstances of this case.  First, there is a compelling government interest in protecting the dignity, as well as the physical and psychological well-being, of mentally-ill alleged crime victims who have been potentially exploited through extensive video recording of themselves engaged in bizarre sexual behavior under the tutelage of their social worker.  See Globe Newspaper, 457 U.S. at 607-08, 102 S. Ct. at 2620-21 (finding that "safeguarding the physical and psychological well-being of a minor" in the context of a sex-crimes case was a compelling interest).

   Next, the court finds that Channel 12's proposal is a narrowly tailored remedy that will protect this interest.  Dr. Walt Menninger, whose name is well known to anyone having the remotest knowledge of psychiatry and mental illness, testified that schizophrenia is the "cancer of mental illness."  Another highly respected witness, Dr. Bonnie Buchele, testified that many schizophrenics are fearful of everything.  Most, if not all, of the witnesses entitled to protection under 18 U.S.C. § 3771 suffer from forms of schizophrenia.  The court has already viewed the testimony of two mentally ill witness and observed the distress that these individuals exhibited trying to concentrate on the questions and formulate answers.  If that distress was compounded with concerns that the witness' picture was going to be shown on television as one of those "victims" who appeared in the graphic videos, the victim undoubtedly would not only face considerable additional distress and loss of dignity, but the individual might not even be able to testify, thereby damaging the truth-seeking function of a criminal trial.  See Estes, 381 U.S. at 544-50, 85 S. Ct. at 1634-36.

In addition, there are presently before the court three motions to quash subpoenas of mentally-ill witnesses based on, among other things, their inability to withstand the stress of testifying in open court. These motions contain statements and opinions from mental health professionals indicating that the mental health of these individuals may degenerate considerably if they are forced to testify. The court will have to give a great deal of consideration to balancing the health and welfare interests of these potential witnesses against the rights of the defendants who have subpoenaed them. The calculus would become even more difficult, and the potential harm to the victim-witnesses even greater, should these individuals be forced to face the additional stress of having a sketch artist working in the courtroom during their testimony. While the court has not yet ruled on these motions to quash subpoenas, the court finds that, absent Channel 12's proposed remedy, giving sketch artists unfettered leave to sketch in the courtroom could make it more difficult for the court to allow defendants to call these witnesses, thereby encroaching on defendants' Sixth Amendment compulsory process right.

Aside from the victims, the jurors have also gone on the record as being opposed to having their likenesses sketched. The court has authority to proscribe sketching jurors. See, e.g., KPNX Broad. Co. v. Arizona, 459 U.S. 1302, 1307-08, 103 S. Ct. 584, 587, 74 L. Ed. 2d 498 (1982) (Rehnquist, Circuit Justice) ("I think that in all probability the trial judge's order would be more defensible on federal constitutional grounds if he had flatly banned courtroom sketching of the jurors, and if he had extended the ban to those who sketch for the print media as well as to those who sketch for

television.")

In conclusion, the court finds:

1. Channel 12 has no First Amendment right to have sketch artists in the courtroom.

2. Title 18 U.S.C. § 3771 proscribes all forms of identification of the victims in this case, including, but not limited to, sketching for purposes of television.

3. Identification of jurors by sketching can be, and will be, prohibited.

4. Channel 12 will be permitted to have one sketch artist attend the trial. The artist shall not sketch jurors or victims. Channel 12 must identify, through communication with counsel for the parties, when a victim will appear as a witness. During each victim's appearance, no sketching materials of any kind will be visible in the courtroom.

5. This order applies only to Channel 12. No other sketch artists will be permitted in the courthouse or in the courtroom for the duration of the trial.

6. This order applies only to this trial. If must not be interpreted by Channel 12 or any other news provider as this court's general permission to allow sketch artists in the courtroom.

IT IS SO ORDERED.

Dated this __17th__ day of October 2005, at Wichita, Kansas.

> s/   Monti Belot
> Monti L. Belot
> UNITED STATES DISTRICT JUDGE

-10-