# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | )   **CRIMINAL ACTION** |
| | ) |
| v. | )   No. 04-40141-01, 02 |
| | ) |
| ARLAN DEAN KAUFMAN and | ) |
| LINDA JOYCE KAUFMAN, | ) |
| | ) |
| Defendants. | ) |
| ——————————————— | ) |

## MEMORANDUM AND ORDER

Before the court are the following:

1.   Arlan Kaufman's motion for new trial (Doc. 327);

2.   Linda Kaufman's motion for judgment of acquittal or new trial (Doc. 328);

3.   Government's response (Doc. 332).

Except where otherwise noted, defendants have adopted each others' motions.   For the following reasons, the motions are denied.

## Applicable Law

The court and the parties are familiar with the standards pertaining to post-trial motions, which will not be detailed herein.

## Brady v. Maryland Violation

Defendants contend that the government failed to provide them with _Brady_ materials concerning the interviews of Patricia Girard and Kevin Roberts.   Defendants assert that they believe that "promises were made to Mr. Roberts prior to his testimony regarding he [sic] was not going to get into trouble.   Ms. Girard testified

to being interviewed and offered accommodations so she would not have to go to the expense of attending the grand jury in Topeka. The defense respectfully submits there is a 'reasonable probability' that there would have been a different verdict had this information been provided." (Doc. 327 at 2).

Kevin Roberts, one of defendants' victims, testified for the government. The court has reviewed its notes, which do not disclose any questioning regarding promises made to Roberts or any Brady issues. The court's notes are not verbatim, of course, and the subject may (or may not) have been covered. In its response, the government has attached a letter dated August 11, 2005 to defense counsel which states "when the government first interviewed Mr. Roberts he expressed concern that he would be prosecuted. The government assured him he would not be prosecuted, as we knew and know of nothing he has done to warrant prosecution. We do not consider such a statement to be a promise or Giglio material." The court cannot recall whether the contents of this letter were brought to the court's attention prior to or during trial.

Patricia Girard testified for defendants. Girard lived on defendants' farm where some of defendants' victims worked in the nude. The court recalls Girard because she claimed an inability to read or write and because the tone of her testimony was quite hostile toward the government and friendly toward defendants. She was examined at length regarding the circumstances of her interview conducted by government investigators and counsel which was given in lieu of her appearance before the grand jury.

The court finds that defendants have not demonstrated a Brady

violation with respect to Kevin Roberts or Patricia Girard.  It
affirmatively appears that the government withheld nothing
exculpatory; rather, defendants were aware of the matters they seem
to suggest amounted to a <u>Brady</u> violation.  But even if they were
not aware, they have not explained how the information would have
resulted in different verdicts.  Based on the court's review of its
notes and its recollection of the evidence, the court can say with
absolute certainty that the verdicts would not have been different.

### Failure to Allow Testimony of Cynthia Steinhauser

The court adheres to rulings made with respect to this
potential witness as set forth in its Memorandum and Order of
November 7, 2005 (Doc. 308) and those made orally in open court.

### Insufficient Evidence

Defendants contend that " . . . the evidence was insufficient
to  convict and the jury ignored the direct eye witness testimony
of the residents." (Doc. 327 at 4).  Defendants do not specify how
the evidence was insufficient or the testimony which the jury
supposedly ignored. The government's evidence was far more than
sufficient; it was overwhelming.

### Count 32 - Failure to Give Requested Jury Instruction (<u>Arlan Kaufman Only</u>)[1]

Count 32 charged defendants with a violation of 18 U.S.C. §§
1035(a)(2) and (2), as follows:

On or about February 21, 2001, in the District of
Kansas, the defendants

ARLAN DEAN KAUFMAN
and

---

[1]Linda Kaufman was acquitted on Count 32.

LINDA JOYCE KAUFMAN

in connection with the delivery of and payment for health care benefits, knowingly and willfully made, attempted to make, and caused to be made, materially false representations, writings, and documents, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in that the defendants manufactured records to respond to a request for records from Medicare.

The court gave the following elements instruction with respect to Count 32:

This law makes it a crime to knowingly and willfully make false material statement or representations in order to obtain benefits from a health care benefits program.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

*First*: on or about the dates alleged, the defendant knowingly made and used a materially false writing and document;

*Second*: the defendant acted willfully;

*Third*: the defendant knew the writing and document contained materially false, fictitious, or fraudulent statements and entries;

*Fourth*: the false writing and document was in connection with the delivery of and payment for health care benefits;

*Fifth*: the delivery of and payment for health care benefits was from a health care benefit program; and,

*Sixth*: some or all of the defendant's actions occurred in Kansas.

Medicare is a "health care benefit program"

(Doc. 305 at 75, Instr. #23). The court also gave a "good faith" instruction. (Id. at 89, Instr. #33).

Defendant Arlan Kaufman proposed the following instruction:

Health care fraud does not include that conduct which constitutes abuse of a health care benefit program.

-4-

>     Abuse of a health care benefit program describes
>     incidents or practices of providers that are inconsistent
>     with accepted sound medical, business, or fiscal
>     practices. Abuse includes that conduct that directly or
>     indirectly results in unnecessary costs to a health care
>     benefit program, improper payment, or payment for
>     services which fail to meet professionally recognized
>     standards of care, or that are medically unnecessary.

(Doc. 264-2 at 3). Defendant supported his requested instruction by citing <u>Siddiqi v. United States</u>, 98 F.3d 1427 (2nd Cir. 1996). A transcript of the instruction conference has yet to be prepared but the court's recollection of counsel's argument in support of the instruction was that the evidence might show that defendants failed to keep adequate records but that would not be fraud. The court refused the requested instruction.

The court has re-read <u>Siddiqi</u>, which was an appeal from denial of post-conviction relief, as well as <u>United States v. Siddiqi</u>, 959 F.2d 1167 (2d Cir. 1992), the opinion on direct appeal. <u>Siddiqi</u> involved false medicare claims but the defendant was not charged under § 1035(a)(2). Moreover, there is no demonstrable parallel between the facts in <u>Siddiqi</u> and those in this case. Ultimately, the Court of Appeals granted post-conviction relief because of what it termed the government's "shifting theories" which were not supported by evidence or were inadequate as a matter of law. The court is unable to find in either opinion language which would support the requested instruction.

The court is satisfied that its instructions, considered as a whole, correctly stated the law and that it was not error for the court to refuse Arlan Kaufman's requested instruction regarding count 32.

<u>Count 33 - Insufficiency as a Matter of Law and Fact</u>
(<u>Linda Kaufman Only</u>)

Count 33 charged:

OBSTRUCTING A FEDERAL AUDIT

The Grand Jury incorporates by reference Paragraphs 1 through 51 as though fully restated and realleged herein.

On or about February 21, 2001, in the District of Kansas, the defendants

ARLAN DEAN KAUFMAN
and
LINDA JOYCE KAUFMAN

with the intent to deceive and defraud the United States, endeavored to influence, obstruct, and impede a Federal auditor in the performance of official duties relating to a person, entity or program receiving in excess of $100,000, directly or indirectly, from the United States in any one year period under a contract or subcontract, grant, or cooperative agreement, in that the defendants submitted to Medicare documents manufactured in response to Medicare's request for documentation supportive of the claims defendants' submitted to Medicare.

The foregoing is in violation of Title 18, United States Code, Sections 1516 and 2.

The court gave the following elements instruction with respect to Count 33:

This law makes it a crime to obstruct a federal audit under certain specific circumstances.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

*First*: on or about the dates alleged, the defendant endeavored to influence, obstruct, or impede a federal auditor in the performance of official duties;

*Second*: the defendant did so with intent to deceive or defraud the United States;

*Third*: The performance of the federal auditor's official duties related to a person or entity receiving in excess of $100,000, directly or indirectly, from the

-6-

United States in any one-year period under a contract or subcontract; and,

*Fourth*: some or all of the defendant's actions occurred in Kansas.

The term "federal auditor" means any person employed on a full- or part-time or contractual basis to perform an audit or a quality assurance inspection for or on behalf of the United States.

The term "endeavor" means any effort or any act, however contrived, to obstruct, impede or interfere with a federal auditor. It is the "endeavor" which is the gist of the crime. Success of the endeavor is not an element of the crime. Any effort, whether successful or not, that is made for the purpose of obstructing, impeding or interfering with a federal auditor, or that had the natural and probable effect of obstructing, impeding or interfering with a federal auditor, is prohibited.

The term "in any one-year period" means a continuous period that commences no earlier than twelve months before the commission of the offense or that ends no later than twelve months after the commission of the offense. Such period may include time both before and after the commission of the offense.

(Doc. 305 at 77, Instr. #24). The "good faith" instruction also applied to Count 33.

Linda Kaufman makes two arguments with respect to Count 33. One argument is essentially legal in nature; the other is factual. Her legal argument will be discussed first because if it is correct, she would be entitled to acquittal as a matter of law.

Linda Kaufman contends that Blue Cross Blue Shield of Kansas is not a federal auditor within the meaning of 18 U.S.C. § 1516(b)(1) but she does not explain why Blue Cross Blue Shield of Kansas does not fall within the statutory definition. Instead, she relies exclusively on United States v. Plasser American Corp., 57 F. Supp. 2d 140 (E.D. Pa. 1999) which rejected the government's position that Amtrak is a federal agency and thus concluded that

Amtrak's auditor could not be considered a federal auditor acting "for or on behalf of the United States" as contemplated by § 1516(b).  What is missing is any explanation why Amtrak (which, by law, is "not a department, agency  or instrumentality of the United States government," 49 U.S.C. § 24301(a)(3)) should somehow be equated with the Medicare program.

A good summary of Medicare is found in <u>United States v. Whiteside</u>, 285 F.3d 1345, 1346 (11th Cir. 2002):

> Medicare is a federal health insurance program designed to provide medical services, medical equipment, and supplies to persons 65 years of age and older and to blind and disabled persons. Congress established Medicare through Title XVIII of the Social Security Act, 79 Stat. 291 (1965) (current version at 42 U.S.C. §§ 1395-1395vv (1994)). The United States Department of Health and Human Services ("HHS") funds and administers Medicare. The Health Care Financing Administration ("HCFA"), an agency within HHS, manages the Medicare program.[2]

<u>See also</u> <u>United States v. McGovern</u>, 329 F.3d 247, 248 (1st Cir. 2003) (Medicare is a federally subsidized health insurance program for the elderly and for persons with certain disabilities that is administered by CMS and private contractors . . . Medicare [program is a] health care benefit program as defined in 18 U.S.C. § 24(b).) 42 U.S.C. § 1320a-7a(i)(4) defines the term "agency of the United States" to include any contractor active as a fiscal intermediary, carrier or fiscal agent or any other claims processing agency for a federal health care program.[3]  The evidence was that Blue Cross

---

[2]The Health Care Financing Administration is now known as Centers for Medicare & Medicaid Services (CMS).

[3]42 U.S.C. § 1320a-7a imposes civil monetary penalties for various proscribed billing practices related to Social Security and Medicare.  Defendants have not been charged under this statute.

-8-

Blue Shield of Kansas contracted with CMS to audit the Kaufmans because they were providers who submitted claims to Medicare.

The court thus rejects Linda Kaufman's legal argument that Blue Cross Blue Shield of Kansas was not a federal auditor.

Linda Kaufman's second argument is that there was not sufficient evidence to show that she aided and abetted her husband in the crime of obstructing a federal audit.  The court disagrees and finds that there was substantial evidence that Linda Kaufman knew that claim forms she was preparing and submitting contained false information and that she was uncooperative with auditors. It was for the jury to decide whether Linda Kaufman's actions constituted aiding and abetting under all the circumstances.  The jury found that they did and the court finds no reason to disagree with the jury's verdict.

## Improper Closing Arguments

During her closing argument, one of the prosecutors made certain statements, some of which were objected to by Linda Kaufman's counsel.  A partial transcript of the closing argument is attached to the government's response.  There are four instances which are claimed to be improper comments on Linda Kaufman's failure to testify.

In the first instance, counsel argued: "Arlan Kaufman also inflicted serious harm when he choked Barbara, grabbed her hair and shoved her into a urine-soaked bed sheet; and forcibly silenced her

_____

While not precisely on point, this section is informative for its declaration that the term "agency of the United States" is to be construed broadly in the Medicare context.

by putting his hand over her mouth.   Kevin, Peter and Nancy all told you about these things.   The only witness to contradict them is Arlan Kaufman."   No objection was made to this argument.

In the second instance, counsel stated: "You heard Kevin and Jonathan both tell you that Mary and Barbara continued to perform sexual acts for the Defendants until each of them left the house in 2001 and 2004 respectively.   No one has contradicted that testimony."   No objection was made to this portion of the argument.

In the third instance, counsel stated: "As well as testimony that Barbara's and Mary's sexual labor was continuous from the time it started in the 1990s until the time they left the Kaufman House.   Again, no one has contradicted this testimony."   This time, Linda Kaufman's counsel objected saying: "Fifth Amendment violations are just repeatedly happening here with her.   The defendant Linda Kaufman has not contradicted this evidence."   The court immediately instructed the jury as follows:

> Well, the jury will be instructed, as it has been instructed, that a defendant does not have to testify or otherwise produce evidence.   Linda Kaufman did not testify.   She did, however, produce evidence.   You may consider the evidence that she produced but you may not and must not consider the fact that she did not testify in any way in reaching your verdict.

No objection was made to this admonition.

The fourth and final instance related to the following statement by government counsel:   "What better evidence could you have of the power the defendants wielded and the damage they caused with it than to compare the Kevin you saw in those videotapes to the Kevin you saw in this courtroom?   And you should also make another comparison.   This time between the credibility of the

-10-

government's witnesses and the only person to contradict them.  The only person who chose to contradict them, defendant Arlan Kaufman." Counsel again objected and the court responded: "The jury has heard my instruction several times on this matter and I'm sure will be able to disregard comments that infringe upon the Fifth Amendment rights of defendant Linda Kaufman."  No objection was made to this admonition and no request was made for an additional instruction.

In addition to the instructions given during the government's closing argument, the court instructed the jury at the outset of the case and again in its instructions at the end of the case that no defendant has an obligation to testify and that the jury cannot consider in any manner Linda Kaufman's failure to testify.  (Doc. 305 at 103, Instr. #45).   No objections were made to these instructions.

The Supreme Court has endorsed "the almost invariable assumption of the law that jurors follow instructions." Richardson v. Marsh, 481 U.S. 200, 206, 107 S. Ct. 1702, 1707, 95 L. Ed. 2d 176 (1987).  See also United States v. Cooley, 1 F. 3d 985, 997 (10th Cir. 1993) (jurors are presumed to follow instructions).

Assuming, without deciding, that counsel's statements constituted improper comments on Linda Kaufman's election not to testify, it is inconceivable in view of the mountain of evidence, the court's other instructions and the fact that the jury acquitted Linda Kaufman on one count, that the jury abdicated its responsibility and convicted Linda Kaufman solely because of counsel's argument or that the argument prejudiced Linda Kaufman in any way. The suggestion is so preposterous that it deserves no

-11-

further comment.

### Denial of Defendants' Right of Confrontation

By letter of September 30, 2005, the court informed counsel of its rulings on several pretrial issues (Doc. 268). The court does not have the benefit of the transcript of the status conference referred to in the letter. In general, however, the letter reflects the concern, raised numerous times during pretrial proceedings before both magistrate and district judges, regarding the rights of Kaufman House residents or victims versus the rights of defendants. The letter stated, in part:

> I'll comment briefly on Mr. Lowry's motion. It is my understanding that Judge Bostwick restricted defendants' contact with the victims. I am not inclined to change his ruling, especially at this late hour. Defendants will not have contact with the victims in any fashion during the trial without my permission. To the extent possible, defendants will avoid eye contact with the victims when they are in court. I don't want to deal with complaints that defendants are trying to influence or intimidate victims through eye contact.

> Unless there is an order in the record to the contrary, I will not prohibit contact between the victims, defense counsel and defense investigators. I will expect any person seeking to contact a victim, or a victim's family member, to identify himself, state who he represents, the purpose of his contact and that the contactee is not required to speak with him. Defense counsel will be responsible for conveying these instructions to their staffs and investigators. Under no circumstances will it be stated or inferred that I have directed any contact with a victim or have required a victim to speak with anyone.

To the court's knowledge, no objection was raised regarding the court's "eye contact" admonition, either in writing or orally.

A second admonition was given on October 18. One of the prosecutors informed a member of the court's staff of her concern over a situation which allegedly occurred between Arlan Kaufman and

-12-

Kevin Roberts, one of the victims.  When the trial resumed, but in
the jury's absence, the following took place:

> THE COURT:    All right.  Now, before we bring Kevin
> out, apparently there was some situation involving Mr.
> Kaufman and Kevin during the break.
>
> MS. TREADWAY: Yes, Judge.
>
> THE COURT:    I don't want to know what happened.
> I don't care what happened.   But I'm telling the
> Defendants right now so that they clearly understand.  I
> made it clear in a letter to counsel, but maybe they
> didn't see that letter.   There isn't going to be any
> eyeballing of any of these witnesses.  There's no eye
> contact.  There's no verbal contact.  That is my order.
> If you violate it, you'll be in contempt and you will go
> straight to jail.  Do both of you understand that?  There
> won't be any monetary fines.  There won't be any second
> chances.   You'll be in jail for the duration of the
> trial.  Do both of you understand that?
>
> DEFENDANT MRS. KAUFMAN: Yes, sir.
>
> THE COURT:    You're lucky not to be in jail now;
> but you're going to stay out as long as you behave
> yourselves and you have so far; but if I find out that
> any of that's going on, that's the end.  All right.  I'm
> not saying it happened.  I'm not saying it didn't happen.
> It's just not going to happen again if it did, or at all.

Once again no objection was made to this admonition.

Arlan  Kaufman  now  complains  that  the  court  "severely

chastised"  him.   Perhaps,  but  at  the  time  of  this  incident,  the

court  had  heard  and  seen  two  weeks  of  testimony  regarding  Arlan

Kaufman's  (and,  to  a  lesser  extent,  Linda  Kaufman's)  "treatment"

of  the  victims  under  their  care.   Much  of  the  evidence  was

unrefuted  and  unrefutable  because  it  consisted  of  videotapes  made

by  Arlan  Kaufman  of  victims  engaging  in  such  "treatment"  activities

as  genital  shaving  and  group  masturbation,  all  at  Arlan  Kaufman's

direction.   Some  of  the  victims  had  been  subjected  to  these  sorts

of  "treatment"  for  several  years.  In  addition,  there  had  been

-13-

considerable testimony, again unrefuted, that the victims suffered (and still suffer) from mental illnesses, including schizophrenia, which Dr. Walter Menninger described as the "cancer of mental illness." The court was aware from other cases that intimidation can occur through means other than direct verbal threats, even when the person who is the object of the intimidation has no mental impairment. The court also was aware of the magistrate judge's order made during a detention hearing prohibiting defendants from having contact with any of the victims, an order which was never appealed or changed. The court's admonition, while blunt, was intended to insure that defendants clearly understood that they were not to have contact with any of the victims, thus avoiding collateral problems which potentially would interfere with the orderly progress of the trial.

During the trial, which lasted more than five weeks, defendants sat at counsel table located approximately fifteen feet from the witness box. In order to reach the witness box, the victims had to walk by defendants' table and, in so doing, were approximately six feet from defendant Arlan Kaufman. At no time during the trial did defense counsel object or even make the suggestion that defendants were being denied the right to confront witnesses because of the court's admonitions. At no time was any sort of screen placed between the victims and defendants, nor was closed circuit television utilized. Thus, the two cases cited by defendants are completely inapplicable. Coy v. Iowa, 487 U.S. 1012, 1020-21, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988) and Maryland v. Craig, 497 U.S. 836, 110 S. Ct. 3157, 111 L. Ed. 2d 666

-14-

(1990).

Throughout this case, defendants were well represented by highly experienced and competent counsel.  Under the circumstances, it is doubtful that defendants could have received better representation.  The court is confident that if at any time during the trial, defendants' counsel felt that their clients' constitutional rights were being violated –and in particular their right to confront their accusers– counsel would have brought this to the court's attention.

<u>Conclusion</u>

Defendants' post-trial motions (Docs. 327 and 328) are overruled.

IT IS SO ORDERED.

Dated this <u>  6th  </u> day of January 2006, at Wichita, Kansas.


<u>s/ Monti Belot                    </u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE