IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
vs. ) Case No. 04-40141-MLB
)
ARLAN DEAN KAUFMAN, and )
LINDA JOYCE KAUFMAN, )
)
Defendants. )
)

**GOVERNMENT'S SENTENCING MEMORANDUM REGARDING OBSTRUCTION OF JUSTICE**

The United States of America, by and through undersigned counsel, hereby submits its Sentencing Memorandum regarding Obstruction of Justice. In its January 17, 2006, letter to counsel, the Court indicated it would defer ruling on the defendants' objections to an obstruction of justice enhancement until it heard evidence and arguments of counsel. The government is providing the Court with evidence and argument at this time in the hopes of streamlining the sentencing hearing scheduled for January 23, 2006.

DISCUSSION

The Court will not need to rely merely on information in the presentence report to justify imposing an obstruction of justice enhancement for both defendants. Instead, the Court can rely on the testimony at trial regarding the defendants' obstructive conduct, and the further evidence submitted for sentencing, including more specific evidence concerning defendant Arlan Kaufman's perjury at trial.

**1. The defendants obstructed the Butler County Sheriff's investigation, which began in 1999, following the incident at their Potwin farm on November 8, 1999.**

At trial, both Captain Craig Murphy and SRS employee Laura Lautt testified about their communications with the defendants and the Kaufman House residents, following the report of nude people working at the defendants' Potwin farm. Those communications prevented SRS and law enforcement from taking action against the defendants in 1999 because the information given Captain Murphy and Laura Lautt undercut their ability to further investigate the activities at the Kaufman House and undercut their ability to bring the defendants' actions within state criminal statutes applicable to dependent adults. Captain Murphy's testimony at trial and his reports of the interviews he conducted in November 1999[1] evidence three forms of obstructive conduct.

First, the defendants lied to him and concealed material information about the activities at Kaufman House and the farm. Defendant Linda Kaufman told Captain Murphy "we do not do nude therapy here." Defendant Linda Kaufman also indicated that the residents were not dependent adults. Defendant Arlan Kaufman presented the law enforcement officials with his rationalization of the activities, Government Exhibit 404 (Warning: Nude People at Work), which claimed that the nudity at the farm was a "research project" and that the residents had "body image" problems they were working on because of prior sexual abuse.

---

[1] Attached (This will be Exhibit S-9).

Second, the defendants so controlled the Kaufman House residents through their "code of silence," discussed further below, that the Kaufman House residents lied to and concealed material information from Captain Murphy. Throughout Captain Murphy's reports, he indicated that the residents seemed unable to talk freely and looked to defendant Linda Kaufman for approval of their statements. None of the residents indicated that they were required to work on the farm, or that they were required to be nude at the farm and at Kaufman House; instead, they denied that nudity was a requirement, and indicated it was their choice. Kevin and Jonathan told Captain Murphy that the nudity had only been going on for a couple of years. However, the videotape evidence introduced at trial indicated that the nudity had been going on since the mid-1980s. Kevin and Mary H told Captain Murphy that no nude therapy was conducted at the residence. As Kevin testified at trial, this was the "truth according to Arlan," but not the truth. As Jonathan testified at trial, his "choice" to be nude and work at the farm was forced upon him through threats of being sent to a nursing home or worse, and promises that nudity would help him with his anxiety.

Third, defendant Linda Kaufman tried to undermine the credibility of James, as well as silence him, by telling him to quit fantasizing when he began to talk about masturbation and how "another girl has helped him." Once she chastised him, James quit talking about the sexual activities.

**2. The defendants' code of silence at Kaufman House was a form of witness tampering because it effectively prevented the residents from communicating with law enforcement officials.**

Preventing people from communicating information to law enforcement is a form of witness tampering (see 18 U.S.C. § 1512(b)(3)), and therefore clearly constitutes

obstructive conduct. There can be no question that the defendants engaged in this type of obstructive conduct. Indeed, in its January 17, 2006, letter, the Court credited the testimony of Kaufman House residents that indicated the defendants instructed them not to reveal what was going on to family members, law enforcement officers and investigators. This testimony came from multiple witnesses at trial – Nancy, Kevin, Jonathan, and Peter. This testimony is corroborated by additional evidence, specifically the deposition of Mary O, and a "new" videotape subpoenaed from defendant Arlan Kaufman's counsel following the trial.

The defendants insisted on taking the deposition of Mary O in Oregon and did so during the trial. The defendants did not introduce her deposition, however, because it was damaging to them in many respects. The government will introduce her deposition at the hearing. In that deposition, Mary O stated as follows:

> A: We weren't supposed to go to the door and let people in.[2]
>
> A: The only thing [they threatened] – the only tool they used was nursing home. They knew we didn't like nursing homes, and they didn't either. They were afraid they'd lose us. And they'd say, we'll send you to a nursing home.[3]
>
> Q: I want to talk about this nursing home threat. Did you consider that a threat?
>
> A: Oh, yes. I sure didn't want to go to a nursing home. . . . [W]e knew that if we caused trouble for Kaufman House we'd have to find another place to go. We knew that. And he thought – He told us that his

---

[2] Deposition (Exhibit S-6) at p. 46.

[3] Deposition at p. 54.

> house was the only one of its kind. He said, you won't find another place like this where you have it so good. You won't find a place like this.[4]

The "new" videotape the government recently reviewed is an excerpt of a longer videotape,[5] also recently reviewed, which depicts a group meeting with all Kaufman House residents on March 31, 2000.[6] This meeting is not a therapy session, but is a staged confrontation between defendant Arlan Kaufman and resident Tom R. From the videotape, it appears that the defendant Arlan Kaufman gathered the group to witness his blistering attack on Tom R for having the audacity to call his father and tell him about the incident at the farm on November 8, 1999, and the resulting investigation by law enforcement and SRS. Tom confessed to making the call because he felt guilty for "taking things into the community" – that is, he felt guilty for breaking the code of silence.

The message the Kaufman House residents take away from this group meeting is clear – do not tell anyone what is going on here, or you will suffer the consequences. Some of the more colorful comments defendant Arlan Kaufman makes to Tom during the meeting are:

---

[4] Deposition at pp. 96-97.

[5] The government will introduce this videotape during the hearing as Exhibits S-5 and S-5A.

[6] Those present include at least Kevin, James, Mary O, Mary H, Jonathan, Gerald, Amy, Tom, and Barbara. Other individuals seem to be walking around in the background, but are not in view of the camera. Defendant Arlan Kaufman is seated at the head of the table, with Tom, nude, at the foot of the table. James and Mary O are at the table to defendant's right, with their heads bowed. Kevin is at the table to defendant's left. Mary H is on the couch, nude, with her knees to her chest, and her head bowed.

> This is incredible. . . . What you did was dishonest, evil and a deliberate intent to destroy my reputation.
>
> You called your dad up and volunteered information – for what purpose? . . . We are all vulnerable to an evil attack like this. . . . How do we protect ourselves from Tom's evil?
>
> . . . a dastardly thing.

By the end of the segment, defendant Arlan Kaufman is deftly convincing the group that their blaming him for the nudity is "denial" and that they are naked because they want to be naked. This tape is reminiscent of the tape introduced at trial, Government Exhibits 100A and 100C, where the defendant convinces Mary H that she really did want to see Kevin masturbate, despite her statements to the contrary, and has her in tears and apologizing. One can only imagine the harmful effect of the defendant's attacks on Tom and his house mates, all of whom suffered from severe mental illnesses.

**3. Defendant Arlan Kaufman lied to Agents Coney and Filson on June 18, 2001.**

As Agent Coney testified at trial, and as reported in his investigative summary of the interview,[7] defendant Arlan Kaufman made several false statements during his interview during the HHS-OIG search of his residence. Defendant Linda Kaufman was present, and made no corrections to his statements. As proved by other evidence offered at trial, the false statements were, at a minimum, the following:

(1) None of the patients he has seen have violent tendencies as far as he knows.[8]

---

[7] Exhibit S-10 (attached).

[8] The defendant's own testimony at trial about Peter's violence against him and other residents makes this a false statement, or, alternatively, makes his testimony at trial false.

(2) He is unaware of any of his patients which exhibit behavior that would be along the line of psychotic.[9]

(3) He claimed that the nude activity at the farm occurred only four times in the past four years.[10]

(4) He did not bill Medicare for therapy involving nudity.[11]

(5) He did not provide "nude therapy."[12]

(6) He did not touch any of his patients on the breast, the vaginal area, or the genitalia in a sexual way.[13]

(7) Massage therapy occurred, but not for 10 years.[14]

**4. Defendants attempted to influence potential witnesses at trial.**

Just prior to trial, the defendants' relatives circulated a letter to at least two Mennonite churches, and attached to that letter was the defendants' rationalization for

---

[9] The defendant's submissions to Medicare, as well as other writings over the years, clearly indicated that several of the Kaufman House residents were psychotic. The government's experts corroborated this fact.

[10] The videotapes introduced into evidence indicated numerous trips to the farm where residents were forced to work in the nude.

[11] Agent Coney's testimony at trial was that he compared the videotapes with Medicare claims and was able to determine that the billings corresponded to nude therapy.

[12] This claim is belied by his own documents, Government Exhibit 425, which is an agreement the defendant wrote about a "Nude Therapy Group."

[13] The videotapes introduced into evidence, and the testimony of Kevin and Jonathan absolutely dispute this statement. Additionally, Mary O's testimony indicates that defendant Arlan Kaufman tried to have sexual relations with Barbara. See Exhibit S-6 (Deposition at p. 53 – "he was a rat. Tried to have relations with Barb." and p. 74, confirming same) .

[14] The videotapes introduced into evidence, as well as recently received videotapes dating into 2002, indicate that the "massage" therapy occurred frequently and repeatedly, well after the date of 1991 that defendant's statement would indicate.

their activities. The government submits these documents as Exhibit S-8 (attached). The attachment is clearly written by the defendants: it echoes the defense offered at trial and refers to "our patients."

The defendants were well aware that potential government witnesses, identified in government pleadings, attended these churches and would receive these documents. Indeed, it was a government witness that provided these documents to the government. The intent of the attachment to the letter is clear – it is meant to make witnesses reluctant to testify because of the defendants' claimed explanation of their conduct.

These letters were also followed by phone calls from Donna and/or Harry Neufeld, who urged people to say good things about the defendants at trial. At least two witnesses, Metta and Florine, were approached in this way.

**5. Defendants attempted to place assets beyond the government's reach.**

As proved at trial, and as the defendants never disputed, eleven days following the June 18, 2001, search, they gifted the farm, the 7th Street House, the 8th Street House, and the Broadway House to their children. The clear purpose of these transfers was an attempt to keep them from the government's reach to satisfy restitution to victims. See United States v. Black, 78 F.3d 1, 6 (1st Cir. 1996)(transfer of assets held to be subject to enhancement).

**6. Defendant Arlan Kaufman committed perjury at trial.**

Although the government submits that the defendant's testimony was replete with perjury, the following instances are particularly egregious.

(1) Kevin testified that the defendant directed Gerald and James to perform oral sex for videotaping. The defendant denied that he directed this to occur, and

claimed that it occurred only briefly. Specifically, the defendant's testimony on cross-examination by Ms. Krigsten was as follows:

Question: You did video – or you did have people perform oral sex in your presence in a group?

Answer: I did have people perform – no.

Question: It was performed in your presence, wasn't it?

Answer: Yes, very, very briefly.

The defendant committed perjury in two respects – stating that he did not have people perform oral sex and that it was performed very, very briefly.

The government introduced into evidence one tape, GX 107A & C, on which oral sex between James and Gerald is discussed. This tape was created in 2001. The tape and its transcript, GX 107B,[15] reveals a statement by the defendant that he believes acting out sexual fetishes, fantasies and cravings in group reduces and even eliminates the need to "do it outside." The defendant goes on to state:

> See, Gerald feels like he's got to suck somebody's penis in order to have an orgasm. . . . it's too bad that we didn't videotape that, that sucking his penis the other time, for – for Gerald to look at . . . . Because that might be the solution to his craving to do that, thinking that life is over if I can't suck James's penis.

See Trial Exhibit 107B at pp. 12-13.

---

[15] The government will offer this transcript at the sentencing hearing as Exhibit S-7.

Since trial, the government has discovered two additional tapes – one dated June 13, 2002, and one dated June 24, 2002 – that show Gerald performing oral sex on James, at defendant's direction.[16] The defendant states on the June 13th tape, in essence, that James' allowing Gerald to perform oral sex on him might reduce James' need to masturbate when he is talking to women on the telephone.[17] In the approximately ten-minute segment, defendant Arlan Kaufman deftly persuades James to engage in the oral sex, despite James' statement that he did not want to.

Consequently, the defendant **did** direct the performance of oral sex that he videotaped, and even claimed it had therapeutic value, and this occurred repeatedly, not "very, very briefly."

(2) The defendant's testimony about his use of the stun gun on Peter was replete with perjury. On Monday, October 31st, during direct examination by Mr. Haney, the defendant testified generally as follows:

> He only recalled using the stun gun on Peter two or three times. . . . He shocked him in the stomach when he was clothed. . . . He never shocked him in the testicles. . . . He did not show the stun gun to other residents at 8th Street.

This testimony is untruthful when it is compared against the testimony of Peter, Kevin, and Jonathan. Even the deposition of Mary O indicates that she was aware of the "cattle prod" the defendant used.[18] These residents have no reason to lie, while the

---

[16] The government will offer these tapes as Exhibits S-2, S-2A, S3, and S-3A.

[17] The transcript of this portion of the videotape is attached and will be offering at the hearing as Exhibit S-2B.

[18] Deposition at p. 72.

defendant has every reason to lie about using a dangerous weapon against Peter and threatening its use against others. Government Exhibit 361, discussed below, also indicates that only Peter's face and head were exempt from the stun gun. Not only did Peter testify that defendant Arlan Kaufman used the stun gun on his penis and testicles, he also testified that defendant Linda Kaufman did so, and taught residents Mary H and Barbara how to do so.

On Tuesday, November 1st, during cross examination by Ms. Krigsten, the defendant testified that he did not use the stun gun as punishment or to retaliate against Peter. Yet, his own document, Government Exhibit 361 (emphasis added below), clearly states that:

> Peter is at the stage of the young child; he apparently needs to experience the physical pain, humiliation, and intimidation of his own violent acts. . . . Our method of dealing with Peter's violence will be to redirect the pain, humiliation and intimidation thru **retaliation**. In order to minimize the promotion of violent retaliation in the house, we will use the "zapper" as discussed and approved earlier. I and the victim of Peter's violence, will use the "zapper" in such a manner and with the full intent to inflict pain, humiliation, and intimidation, as close to the time of the incident of Peter's attack as possible. **The head and face will be the only area exempt from contact.**

(3) On Tuesday, November 1st, during cross examination by Ms. Krigsten, defendant Arlan Kaufman claimed he never interfered with residents' mail except for Barbara's. This testimony is impeached by Mary O's deposition, in which she stated:

> Q: And they denied you stamps or somehow restricted your mail?
>
> A: Oh, they did deny me. Because I wrote about everything. And they read all my letters before they gave me stamps. They'd put the stamps on the mail.

Q: So they would censor.

A: Censured my mail, yeah.[19]

(4) On Tuesday, November 1st, during cross examination by Ms. Krigsten, defendant Arlan Kaufman claimed that Kaufman House never had an involuntary seclusion room. This testimony is clearly false, given the testimony of Nancy, Kevin, Peter, and the deposition testimony of Mary O, in which she stated:

> A: . . . they had a room downstairs. There was no rooms downstairs, but this one room was a detention room. When anybody became incorrigible they'd lock them up in this solitude room.[20]
>
> A: That room I was in was four walls. And it was very solid in there. It was like a solitary cell. And they had a bed in there. And they never put me in there but they'd put some of the others in there, they'd lock them up in there until they promised to change. And then they'd let them out.[21]

(5) On Wednesday, November 2nd, during cross examination by Ms. Krigsten, defendant Arlan Kaufman claimed that he had more videos, but none depicted masturbation. The recent videos received and reviewed by the government indicate, to the contrary, that masturbation, oral sex, and other "nude activities" introduced at trial occurred well into 2002.[22]

---

[19] Deposition at p. 73.

[20] Deposition at pp. 29-30.

[21] Deposition at p. 78.

[22] Exhibits S-2, S-2A, S-3, S-3A, S-4, S-4A.

CONCLUSION

Given the evidence at trial, the additional evidence the government is offering for sentencing, and given the fact that both defendants were convicted of obstructing a federal audit,[23] an obstruction enhancement is clearly appropriate.

Respectfully submitted,

ERIC F. MELGREN
United States Attorney

s/ Tanya J. Treadway

TANYA J. TREADWAY #13255
Assistant United States Attorney

s/ Lisa Krigsten
s/ Kristy Parker

LISA KRIGSTEN, (IA #14849)
KRISTY PARKER (KS #18790)
U.S. Department of Justice
Criminal Section, Civil Rights Division

---

[23] Although this conduct was grouped, it had no effect on the ultimate sentencing range, thereby resulting in no sentencing effect at all, which cannot be the result intended by the grouping rules. See § 3C1.1, Commentary, Application Note 8.

CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following individuals:

Thomas Haney
Wright, Henson, Clark, Hutton, Mudrick & Gragson, LLP
100 S.E. Ninth Street, 2nd Floor
Topeka, KS 66601-3555

Stephen M. Joseph
500 N. Market Street
Wichita, KS 67214

s/ Tanya J. Treadway
Tanya J. Treadway #13255
Assistant United States Attorney