**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

```
UNITED STATES OF AMERICA,        )
                                 )
                 Plaintiff,      )      CRIMINAL ACTION
                                 )
v.                               )      No.  04-40141-01, 02
                                 )
ARLAN DEAN KAUFMAN and           )
LINDA JOYCE KAUFMAN,             )
                                 )
                 Defendants.     )
_____)
```

**MEMORANDUM AND ORDER**

Hopefully this Memorandum and Order will serve as the final
chapter to the sentencing phase of this prolonged and disturbing
case.

Defendants stand justly convicted of conspiracy, forced labor,
involuntary servitude, health care fraud, mail fraud and other
felonies, all arising out of their decades-long operation of homes
for persons needing care, mostly due to various forms of mental
illness.  The court sentenced Arlan and Linda Kaufman to prison
terms of 30 and 7 years, respectively.  The case is now on appeal.

The court has before it the following:

    1.  Government's brief regarding restitution and
        forfeiture (Doc. 349):

    2.  Arlan Kaufman's response to the motion hearing
        on restitution (Doc. 388);

    3.  Linda Kaufman's response to the government's
        brief regarding restitution and forfeiture
        (Doc. 403); and

    5.  Government's reply (Doc. 411).

In addition, the court has considered defendants' presentence

reports, section 5E1.1 of the advisory guidelines, the transcript of the February 7, 2006 restitution hearing and exhibits received, and its memory and notes regarding the evidence received at the trial (The trial transcript, which is estimated to exceed 5,000 pages, has not yet been prepared).

<u>Introduction and Applicable Law</u>

The parties agree that restitution is to be determined by the provisions of the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A. Before turning to the issues regarding restitution to the individual victims, two matters need to be mentioned. First, this order will be filed more than 90 days after sentencing. By letter dated March 29, 2006, the court informed the clerk of the Tenth Circuit that there would be a delay (Doc. 401). Ms. Shoemaker responded that this court's interpretation of the statutes and applicable Tenth Circuit case law set forth in his letter was correct. In addition, counsel who represented defendants at trial consented to the additional time. Therefore, the court finds that it has jurisdiction to rule on the restitution issues.

Second, the court recognizes that the defendants' sentences of incarceration, particularly Arlan Kaufman's, will make full restitution of the victims' losses unlikely. Through his counsel, Arlan Kaufman's counsel represents that defendants' funds and assets have been exhausted, or nearly so, which the court does not doubt since it authorized defendants to appeal in forma pauperis. Defendants' real property is subject to forfeiture in an on-going

-2-

separate proceeding.[1]  Arlan Kaufman argues that no restitution should be ordered but that if it is "Restitution in any significant amount from a man whom the Court has advised is going to spend the rest of his life in prison and whose property and assets have been seized and are subject to forfeiture is, in effect, a futile exercise.  If the Court were to order a certain percentage to be paid from Dr. Kaufman's commissary account on a regular basis, such would hardly allow a significant amount of restitution in any sense.  But such would further penalize Dr. Kaufman from receiving even the small pleasures afforded one incarcerated for the rest of his life."  (Doc. 388 at 1).

The court rejects this argument for several reasons.  First, the court is utterly unconcerned about any "small pleasures" which

---

[1]The AUSA handling the forfeiture proceeding has provided the following information concerning the property to be forfeited:

199 W. 8th, Newton         -   Appraised value:    $45,000
         - Anticipated recovery:  $39,233.64

321 W. 7th, Newton         -   Appraised value:    $32,000
         - Anticipated recovery: $26,803

413 W. Broadway, Newton    -   Appraised value:    $75,000
         - Anticipated recovery: $54,000 to $69,000
                                depending on the amount of
                                lien

7130 Shumway, Potwin       -   Appraised value:    $147,000
         - Anticipated recovery: $133,000

The jury found that each of these properties was used by defendants to commit the offenses of forced labor and involuntary servitude (Doc. 311-4).

It cannot be determined when a final order concerning forfeiture will be made.  The government has indicated that it will make any forfeiture proceeds available for payment of restitution (Doc. 349 at 1).  See also United States v. O'Connor, 321 F. Supp. 2d 722, 729-30 (E.D. Va. 2004).

Arlan Kaufman may be denied during his incarceration.    What happens, or does not happen, to Arlan and Linda Kaufman during their periods of incarceration is the business of the Bureau of Prisons, not this court.    Nevertheless, a sad irony is that defendants' conditions of confinement will be better than the conditions endured by many of the Kaufman House residents.

An additional reason to reject the argument is that the court is precluded as a matter of law from considering defendants' economic circumstances in ordering restitution of victims' losses. 18 U.S.C. § 3664(f)(1)(A).    The reason for this prohibition is explained in <u>United States v. Catoggio</u>, 326 F.3d 323, 329 (2nd Cir.), <u>cert. denied</u>, 540 U.S. 939 (2003):

> However, the MVRA makes clear that the defendant's ability to pay should not be considered in determining the amount of restitution. Congress evidently wanted to ensure that victims be fully compensated for a defendant's past crimes if that defendant "unexpectedly inherit[s] money, win[s] the lottery, or otherwise strike[s] it rich." [<u>United v. ]Grimes</u>, 173 F.3d at 639; <u>see also</u> <u>United States v. Vandeberg</u>, 201 F.3d 805, 812 n.3 (6th Cir. 2000).

Defendants' economic circumstances are relevant only in setting a payment schedule <u>United States v. Wilson</u>, 416 F.3d 1164, 1170 (10th Cir. 2005).

Finally, the Tenth Circuit has made it clear that restitution is not punishment, <u>United States v. Garcia-Castillo</u>, 127 Fed.Appx. 385 (10th Cir. 2005).    Therefore, as a matter of law, neither defendant will be "further penalized" by having to make restitution to the victims.

Defendants' presentence reports specifically list six individual victims as eligible for restitution plus Medicare Part

-4-

B and Mennonite Mutual Aid (MMA), an insurance company which provided supplemental insurance coverage for Peter L, one of the victims.  In its brief regarding restitution, the government has addressed each victim (Doc. 349).  Linda Kaufman's counsel has addressed restitution issues as to all six victims plus Medicare and MMA (Doc. 403).  Arlan Kaufman's counsel's response (Doc. 388 at 1-7) has not addressed in any detail the individual restitution claims of the victims.  Arlan Kaufman's unauthorized pro se response (Doc. 388 at 9-72, plus exhibits) ostensibly responds to the restitution claims of the individual victims.  In reality, however, it is disorganized, poorly written and interspersed with diatribe regarding government counsel and government witnesses so as to be virtually worthless.  As with his lengthy testimony at trial and his three-plus hour statement at sentencing, Arlan Kaufman's statements regarding restitution continue to reflect his arrogant refusal to acknowledge not only his wrongdoing, but also that no rational, responsible person anywhere in the civilized world would view his conduct as acceptable, much less that of a professional whom society reasonably expected to help, not harm, persons who were dependent upon him.

<u>The Victims</u>[2]

---

[2]Based on the evidence presented at trial, virtually every person who ever resided at Kaufman House would qualify as a victim. The victims considered in this order are only those who have made a claim for restitution.

The term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's

Barbara T

Barbara T resided at Kaufman House for thirteen years, from 1981 through 1994. Defendants were convicted of subjecting Barbara T to forced labor in violation of 18 U.S.C. § 1589 (count 3), holding Barbara T in involuntary servitude in violation of 18 U.S.C. § 1584 (count 5), health care fraud in violation of 18 U.S.C. § 1347 (counts 11 and 18) and conspiracy (count 1). The jury unanimously found beyond a reasonable doubt in response to special questions that Barbara T was a "vulnerable victim" (Doc. 311-4 at 4), that both defendants physically restrained Barbara T (Doc. 311-4 at 5) and that Barbara T was held in involuntary servitude and subjected to forced labor for more than one year (Doc. 311-4 at 6).

Arlan Kaufman was appointed Barbara T's conservator and guardian by the District Court of Harvey County, Kansas, Case No. 89P2276. An initial inventory of assets as of August 11, 1989, signed by Arlan Kaufman, listed assets totalling $103,269.95 (Exhibit R-18). When Barbara T's brother died, his estate distributed $165,697.10 on December 12, 2002, to Arlan Kaufman as Barbara T's conservator (Exhibit R-19). In addition, during the period July 1994 through June 2001, Barbara T received social security checks totalling $36,840, all of which were negotiated by Arlan Kaufman as Barbara T's "representative payee" (Exhibits 60

---

criminal conduct in the course of the scheme, conspiracy, or pattern. 18 U.S.C. §§ 3663A(a)(2) and (c)(1)(A)(i).

See also 18 U.S.C. § 16, which defines crime of violence. Any person who is subjected to forced labor and involuntary servitude is a victim of a crime of violence.

and 60e).  The total of these three amounts is $305,807.05.

Between August 2002 and May 2004, Arlan Kaufman wrote numerous checks on Barbara T's conservator account which totalled $96,756.47.  Some of the checks bore notations regarding "therapy." The Kaufmans' "therapy" methods served as the basis for several of the counts of conviction.  Therefore, the notations have little or no probative value insofar as the legitimacy of the payment is concerned.  In their searches of defendants' properties, government agents were not able to find any sort of accounting with respect to Arlan Kaufman's expenditures of Barbara T's funds.   The presentence report notes that on May 19, 2004, Arlan Kaufman was ordered by the District Court of Harvey County, Kansas to file annual reports but that he failed to do so.

In the presentence reports, $202,228.14 in restitution is sought on behalf of Barbara T.  At the restitution hearing, the government presented evidence to support restitution in the sum of $245,426.14 broken down into four components: trust account ($95,756.47); initial inventory ($103,269.95); social security ($36,840) and care provided by Barbara T to another resident, Mary O ($8,560).  The evidence also showed that $165,697.10 was paid to Arlan Kaufman from the estate of Barbara T's brother and the evidence is clear that Arlan Kaufman negotiated the check.  It is not clear why the government did not include this figure but the court has elected to consider it.

Arlan Kaufman has responded to Barbara T's restitution claim by providing conservatorship accountings filed in the District Court of Harvey County, Kansas (Doc. 388 at 54-55 and Exhibit 42).

The accountings cover the period from August 1989 through August 1998, (with the exception of 1992 and 1993).  The accountings show disbursements for medications, food, utilities, clothes, rent and other items totalling $86,632.52.  None of the accountings contain any supporting documentation.

Linda Kaufman's objections to restitution for Barbara T are (1) that the government failed to demonstrate causation between the counts of conviction and the restitution claim and (2) no credit has been given for the "unquestionably legitimate benefits received by Barbara T" during the time she lived at Kaufman House such as housing, food and medicine.  No dollar value is assigned to these "benefits."

The court rejects both of these objections.  The jury found that defendants held Barbara T in involuntary servitude and subjected her to forced labor while, during the same time period, Arlan Kaufman was acting as her conservator and receiving substantial monies on her behalf.  Only a portion of those monies is accounted for, without supporting documentation.  Given the conduct surrounding the counts of conviction involving fraud, the accuracy and veracity of Arlan Kaufman's accountings are questionable, at best.  So too is the nature and value of the "unquestionably legitimate benefits" received by Barbara T.

The court finds that restitution of $250,000 will be awarded to Barbara T.

## Peter L

Peter L resided at Kaufman House from 1983 to 1997. Defendants were convicted of conspiracy relating to false claims

-8-

submitted on behalf of Peter L (count 1).

In the presentence reports, Peter L seeks restitution of $51,373.85 representing hospitalizations during the years 1997 through 2001.  The government has submitted an affidavit of Peter L supporting his restitution claim to which are attached statements from hospitals and nursing homes where Peter L was confined following his departure from the Kaufman House (Exhibit R-17). Peter L also testified at trial.

Defendants, through their counsel, do not object to the amounts of the bills submitted in support of Peter L's claims. Instead, they object on the basis that there is no evidence to show that the hospitalizations were necessitated by or related to Peter L's treatment by defendants (Transcript of restitution hearing at 12-18, Doc. 388 at 6-7 and Doc. 403 at 8-10).  Arlan Kaufman predictably argues that Peter L and his mother (Metta, who also was a victim at trial) were lying when they testified that Peter L's condition improved after leaving Kaufman House.  He supports his statement with a record from Peter L's admission to a psychiatric facility in 2001 which contains diagnoses of schizophrenia, panic disorder and psychotic disorder.

The court rejects defendants' argument that Peter L is not entitled to restitution because there is no (presumably expert) testimony that the hospitalizations were caused by his treatment at Kaufman House.  Defendants cite no authority for this proposition.

The court has reviewed its notes regarding Peter L's and Metta L's trial testimony.  Peter L had serious mental issues before he

-9-

went to Kaufman House.  His mother described him as a "handful."
By his own testimony, Peter L continued to be a "handful" during
his years at Kaufman House and, to some extent, at facilities where
he resided after leaving Kaufman House.  Nevertheless, the court
accepts Peter L's testimony that his condition improved after
leaving Kaufman House, in part because of treatment he received at
the hospital and nursing home facilities.  Thus, the court finds
that there is sufficient evidence to demonstrate that Peter L's
treatment at Kaufman House necessitated further mental treatment
and that defendants are liable for restitution for a portion of
that treatment.[3]  Peter L is entitled to restitution in the sum of
$20,000.

<u>Jerry J</u>

Jerry J resided at Kaufman House from 1980 to 2000.
Defendants were convicted of Medicare fraud pertaining to Jerry J
(counts 20 and 22) and conspiracy (count 1).

In the presentence reports, Jerry J seeks restitution of
$107,400 based upon a $10,000 life insurance policy which Arlan
Kaufman cashed for $2,300; for government benefits paid to
defendants during his term of residence at Kaufman House and for

---

[3]The court is aware that 18 U.S.C. § 3663A does not speak
specifically to restitution for offenses regarding mental or
emotional, as opposed to bodily, injury.  However, 18 U.S.C. §
3663A is applicable to crimes of violence (§ 3663A(c)(1)(A)(i)) and
the court is satisfied that the evidence showed that every Kaufman
House resident, to one degree or another, was a victim of a crime
of violence.  Therefore, the court believes that under § 3663A,
restitution for mentally-related treatment is available.  <u>See</u>
<u>United States v. Erickson</u>, 83 Fed. Appx. 997 (10th Cir. 2003).  The
court does not believe that restitution would contravene <u>United</u>
<u>States v. Barton</u>, 366 F.3d 1160, 1167 (10th Cir. 2004) which holds
that consequential damages are not recoverable under the MVRA.

five years worth of lawn mowing services (Exhibit 60 and 60d and transcript of restitution hearing at 9-11 and 44-45). Exhibit 60 and 60d were social security payments on Jerry J's behalf of $41,356.67 before July 1994 and social security payments of $45,532 from July 1994 to April 2000. These two amounts total $86,888.67.

Through their counsel, defendants object to restitution by Jerry J on the basis that he was not a victim of any offense of conviction. This objection is overruled. Defendants were convicted of conspiracy to defraud residents through the use and threatened use of physical restraint. Among other things, the evidence demonstrated that Jerry J was placed naked in the "seclusion room" at the Seventh Street house. A female resident helped him masturbate and Arlan Kaufman touched his genitals. Defendants also object that the government has not shown that the social security benefits paid to defendants on Jerry J's behalf were not used to cover his expenses during the twenty years he lived at Kaufman House. Defendants point out that, broken down, his benefits are $4,344 per year which the evidence showed was used for Jerry J's housing, food, medication and nursing services (Doc. 388 at 7 and Doc. 403 at 10-12).

The court partially agrees with defendants. The government has not presented evidence that defendants did <u>not</u> use at least some of the social security payments for Jerry J's benefit or that the amount, spread over twenty years, was unreasonable. The court declines to award restitution for lawn mowing services based on some sort of quantum merit theory. Finally, the government has not demonstrated that Linda Kaufman provided <u>no</u> nursing services to

Jerry J.  The evidence at trial was disputed regarding the nature of the nursing services provided by Linda Kaufman to the residents of Kaufman House but it was not disputed that she did provide some services.

The court finds that Jerry J is entitled to restitution in the sum of $20,000.

<u>Kevin R</u>

Kevin R resided at Kaufman House for more than 25 years. Defendants were convicted of holding Kevin R in involuntary servitude (count 6), of health care fraud pertaining to Kevin R (counts 9 and 17) and conspiracy (count 1).  The jury answered affirmatively to a special question that both defendants subjected Kevin R to involuntary servitude (Docs. 311-2 at 2 and 311-3 at 3) for a term of more than one year (Doc. 311-4).

In the presentence reports, Kevin R seeks restitution totalling $54,000 for rent and nursing services he paid to defendants during the period he resided at Kaufman House.  Somehow, it is not clear why, Kevin R's claims presented at the restitution hearing total $16,230.12 based on nursing services totalling $4,389 for the period of March 2001 through October 2004 (Exhibit R-7), Medicare payments totalling $5,478.62 paid from 1997 through 2000, $4,450 representing services Kevin R provided to another resident, Mary O, and $2,062.50 representing his share of a settlement (Exhibit R-9) which he claims he paid to Arlan Kaufman (in his declaration, Exhibit R-8, Kevin R states that his portion of the settlement was approximately $1,400).  At the restitution hearing, government counsel stated that Kevin R was claiming restitution of

-12-

only $10,000 which ". . . the Government believes that's below what we can establish as a loss figure." (Transcript of restitution hearing at 40-43).

Defendants' counsel point out that although the government is seeking restitution of $16,230.12 for Kevin R, Kevin himself is seeking restitution of only $10,000.

The court finds from the evidence that Kevin R is entitled to restitution in the sum of $10,000.

<u>Nancy J</u>

Nancy J was a resident at Kaufman House from March 1986 to March 1987. Defendants were convicted of conspiracy pertaining to Nancy J (count 1).

Nancy J She seeks the modest sum of $4,001.14 for medical and hospital bills she incurred for treatment after she left Kaufman House. Her claim is supported, both as to the care received and the amounts claimed (Exhibit R-10).

Defendants' counsel's principal objection to Nancy J's claim is that there is no evidence to show a causal connection between Nancy J's treatment at Kaufman House and the treatment for which she is making a claim.

The court has reviewed its notes of Nancy J's trial testimony. There is no question that Nancy J had many problems before she was referred to Kaufman House by arguably well-meaning but ignorant members of her church (sadly, ignorance of or deliberate indifference to what was going on at Kaufman House by members of churches is a theme running throughout this case). Based on Nancy J's trial testimony regarding her experiences at Kaufman House,

-13-

which the jury believed and which was not refuted by any credible evidence, the court finds that the government has met its burden and awards Nancy J $4,001.14 in restitution.

<u>Mary O</u>

Mary O is an elderly woman who resided at Kaufman House from 1988 through 2004. Defendants were convicted of conspiracy pertaining to Mary O (count 1).

Through the attorney for Mary O's guardian, a claim is made in the presentence reports for $126,637.64. At the restitution hearing, the government sought restitution of $52,345 representing therapy services never provided, $59,173 for nursing services not provided and $23,814.95 representing monies paid to a "building fund" (Exhibit R-20, restitution transcript at 18-22 and 46-48). These sums total $135,332.95.

Arlan Kaufman's counsel's response is that "the government is in possession of literally hundreds of messages from Mary O to Linda K dealing with her condition and asking questions to her nurse/care giver." (Doc. 388 at 7). Linda Kaufman's counsel's response is that the nursing and personal services provided by Linda Kaufman to Mary O during the eighteen years she lived at Kaufman House are substantiated by Exhibit R-22 and therefore the $59,173 restitution claim should be denied. Attached to Linda Kaufman's response are invoices which purport to be "representative" of invoices showing nursing services rendered to Mary O (Doc. 403-3). In addition, Arlan Kaufman has responded to the claims for restitution on behalf of Mary O (Doc. 388 at 51-54) and Linda Kaufman has adopted his response. According to Arlan

-14-

Kaufman, the new construction was requested by Mary O's then-guardian and was approved by a Judge Welborn. Arlan Kaufman represents that Mary O participated in "evening groups" but was unable to function in a therapy group because she had a lobotomy. Arlan Kaufman claims that the building fund improvement and payment for his services were approved by the "Conservator, Guardian & Judge." There is no evidence in the file to support such approval, particularly by a "judge."

Mary O was deposed but her testimony was not offered at trial, either by the government or by defendants.

The court finds from the evidence that Mary O is entitled to restitution in the sum of $10,000.

### Mennonite Mutual Aid

The government has provided photocopies of two checks drawn on MMA's account to Kaufman Treatment Center for the benefit of Peter L which total $3,903.16 (Exhibit R-4). The court awards restitution in that amount.

### Medicare

The court orders restitution to Medicare in the amount claimed, $216,906.23, for the reasons put forth by the government in its submissions, Docs. 349 and 411. However, Medicare is assigned the lowest priority. 18 U.S.C. § 3664(i)

### Restitution Order Pursuant to
### 18 U.S.C. § 3664(b)(3)(A)

In fashioning this restitution order, the court has considered United States v. Wilson, 416 F.3d 1164 (10th Cir. 2005), which states, in pertinent part:

-15-

> The defendant's economic circumstances are relevant in fixing a payment schedule. "Upon determination of the amount of restitution," the district court shall specify the "manner" in which restitution will be paid, "in consideration of-(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. 3664(f)(2). The district court may "direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A).

Id. at 1170.

Defendants' financial resources and other assets appear to consist primarily of monies potentially to be recovered through the forfeiture proceeding. Arlan Kaufman's projected earnings and other income presumably will be derived only from prison employment. Linda Kaufman also may derive income from prison employment but she may be employed following her release from prison. There is no evidence that either defendant has financial obligations.

The court orders that 100% of any sums received by defendants as a result of the forfeiture proceeding shall be applied to restitution, as prioritized below. Additional restitution shall be satisfied by payments of not less than 90% of the funds deposited each month into defendants' inmate trust accounts and monthly installments of not less than 50% of either defendants' gross monthly household income over a period of three years to commence thirty days after his/her release from custody. Restitution is due immediately. Interest pertaining to restitution is waived. Defendants' restitution obligations are joint and

several.

```
        Barbara T                25%
        Nancy J                  25%
        Peter L                  12%
        Jerry J                  12%
        Kevin R                  12%
        Mary O                   10%
        Mennonite Mutual Aid      3%
        Medicare                  1%
```

IT IS SO ORDERED.

Dated this ____13th____ day of June 2006, at Wichita, Kansas.


                              s/ Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE