## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,      )
                                         )
                 Plaintiff,      )      **CRIMINAL ACTION**
                                         )
v.      )      No. 04-40141-01
                                         )
ARLAN DEAN KAUFMAN,      )
                                         )
                 Defendant.      )
_____)

### MEMORANDUM AND ORDER

Before the court are defendant's submissions pursuant to 28 U.S.C. § 2255 and the government's responses: Docs. 591, 603, 606, 606, 607, 608, 609, 610, 612, 614 and 615.

#### Applicable Legal Standards

The purpose of a motion made pursuant to 28 U.S.C. § 2255 is to correct errors of constitutional dimension or fundamental errors which result in a complete miscarriage of justice. <u>Brown v. United States</u>, 34 F.3d 990, 991 (10th Cir. 1994). When, as here, a motion is predicated on claims of ineffective assistance of counsel, a defendant has a high hurdle to overcome:

> "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." <u>Williamson [v. Ward]</u>, 110 F.3d 1508, 1513-14 (quoting <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). As the Supreme Court established in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to succeed on this claim, [a defendant] must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced thereby, which means that he must show a reasonable probability that the outcome of the trial would have been more favorable to him, absent the errors of trial counsel. <u>See</u>, <u>e.g.</u>, <u>Foster v. Ward</u>, 182 F.3d 1177, 1184

> (10th Cir. 1999). In evaluating claims of this nature, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, 104 S.Ct. 2052.

United States v. Holder, 410 F.3d 651, 654 (10th Cir. 2005), aff'd after remand, No. 06-7071, 2007 WL 2753055 (10th Cir. Sept. 19, 2007).

The two-part burden which a defendant must meet in order to prevail on an ineffective assistance of counsel claim was summarized in United States v. Chavez-Marquez, 66 F.3d 259 (10th Cir. 1995):

> To prevail on this claim, defendant must meet the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). First, defendant "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688, 104 S. Ct. at 2064; see also Romero v. Tansy, 46 F.3d 1024, 1029 (10th Cir.), cert. denied, [515] U.S. [1148], 115 S. Ct. 2591, 132 L.Ed.2d 839 (1995). Under the second prong, defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see also Hatch v. Oklahoma, 58 F.3d 1447, 1457 (10th Cir. 1995).

Id. at 262. The failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. See Strickland, 466 U.S. at 700, 104 S. Ct. at 2071. "The Supreme Court has observed that often it may be easier to dispose of an ineffectiveness claim for lack of prejudice than to determine whether the alleged errors were legally deficient." United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993). A defendant's proof must overcome the "strong presumption" that counsel was effective. Id. Strategic choices of attorneys are given great deference and a court will not question tactical decisions of trial counsel. Trial strategies necessarily evolve without the benefit of

hindsight. A high level of deference is afforded to the reasonableness of counsel's performance in light of all the circumstances at the time. See United States v. Dean, 76 F.3d 329, 334 (10th Cir. 1996); see also Williamson v. Ward, 110 F.3d 1508, 1513-14 (10th Cir. 1997). The bottom line is that a defendant who claims his lawyer's performance was deficient must show the performance was "completely unreasonable, not merely wrong." Hooks v. Workman, 606 F.3d 715, 723 (10th Cir. 2010) (citing Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999), cert. denied, 528 U.S. 1167 (2000)).

The standard required to prove ineffective assistance of appellate counsel is, if anything, more strict than for trial counsel. As the court observed in Upchurch v. Bruce, 333 F.3d 1158, 1163 (10th Cir. 2003), cert. denied, 540 U.S. 1050 (2003):

> Claims of appellate-counsel ineffectiveness are often based on counsel's failure to raise a particular issue on appeal. Appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Although it is possible to bring a Strickland claim based on counsel's failure to raise a particular issue, it is difficult to demonstrate that counsel was incompetent.

(Internal citations and quotations omitted). Indeed, the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. United States v. Challoner, 583 F.3d 745, 749 (10th Cir. 2009) (internal citations and quotations omitted). Obviously, appellate counsel cannot be found ineffective for failing to raise claims which the record demonstrates have no merit. See Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998),

cert. denied, 525 U.S. 1151 (1999) (citing United States v. Cook, 45 F.3d 388 (10th Cir. 1995)).  Appellate counsel will be deemed ineffective only if he fails to assert a "dead-bang winner," i.e., "an issue which was obvious from the trial record . . . and one which would have resulted in a reversal on appeal." Cook, 45 F.3d at 395. See also Moore v. Gibson, 195 F.3d 1152, 1180 (10th Cir. 1999), cert. denied, 530 U.S. 1208 (2000).

The following quotation is especially applicable in view of the nature and number of claims of ineffective assistance of leveled by defendant's current lawyers at his trial and appellate counsel:

> It is not the critic who counts; not the man who points out how the strong man stumbles, or where the doer of deeds could have done them better. The credit belongs to the man who is actually in the arena, whose face is marred by dust and sweat and blood; who strives valiantly; who errs, who comes short again and again, because there is no effort without error and shortcoming; but who does actually strive to do the deeds; who knows great enthusiasms, the great devotions; who spends himself in a worthy cause; who at the best knows in the end the triumph of high achievement, and who at the worst, if he fails, at least fails while daring greatly, so that his place shall never be with those cold and timid souls who neither know victory nor defeat.

(From Citizenship in a Republic, a speech given in 1910 by President Theodore Roosevelt).

### Background

Someone looking for a shortcut to what this case was about undoubtedly will read the Tenth Circuit's opinion: United States v. Kaufman, 546 F.3d 1242 (10th Cir. 2008), cert. denied, Kaufman v. United States, 130 S. Ct. 1013 (2009).  The opinion describes some of the deplorable conditions at Kaufman House, the facilities where the "residents" lived and where defendant and his wife practiced their cruel and illegitimate "therapy" methods.  It also recounts some, but

-4-

not all, of the serious mental and emotional problems of the residents, several of whom suffered from schizophrenia, a condition described by no less distinguished mental health professional, Walter Menninger, M.D. as "the cancer of mental illness." But what the opinion does not do, and in truth can never do, is adequately depict the <u>way</u> several of the residents described their "treatment" by defendant and his wife; their apprehension and fear, even in the safe confines of a courthouse. No written opinion can portray the arrogant, evil, non-repentant persona displayed by sex-pervert Arlan Kaufman. It was these and other problems, with which trial counsel were faced.

Who are the counsel whose performance is now so roundly criticized by lawyers who attended not one minute of any proceedings in this court and who did not represent defendant on appeal? Throughout the pretrial and trial proceedings, defendant and his wife were represented by retained, seasoned defense counsel who have earned well-deserved reputations as effective advocates in both state and federal courts in a wide variety of cases. Arlan Kaufman's counsel previously had represented Kaufman in a case which ultimately came before the Kansas Supreme Court: <u>Kaufman v. Kansas Department of SRS</u>, 248 Kan. 951, 811 P.2d 876 (1991). It is hard to imagine how both defendants could have been represented by more experienced, competent counsel. Each defendant effectively benefitted from the representation of two counsel because their defenses did not conflict in any way. Arlan Kaufman's appellate counsel, whose conduct is also criticized, has been a federal public defender since 1995 who regularly appears in the Tenth Circuit.

<u>Case Statistics</u>

In addition to the Tenth Circuit's opinion, a statistical description of the case may be helpful: there were several pretrial hearings and rulings; 1½ days of jury selection augmented by juror questionnaires, 24 in-court trial days (not counting jury deliberation); testimony by 37 witnesses, both lay and expert, for the government and defendants; admission of 415 exhibits, many of which consisted of multiple pages; more than 3,700 pages of transcript and upwards of 600 docket entries.

<u>Claims of Ineffective Representation by Trial Counsel</u>

<u>Change of Venue and Jury Selection</u>

Defendant asserts that the charges "ignited a media frenzy" and that his counsel was ineffective for not seeking a change of venue out of Wichita and then for not "adequately questioning" proposed jurors.

There was news coverage of the charges and the trial but there was no "media frenzy." The relatively few news articles which appeared in the 4-month period prior to trial would not have caused this court to change venue had a Rule 21 motion been made. None of the cases cited by defendant are remotely similar to this case. <u>See</u>, <u>e.g.</u>, <u>Stafford v. Saffle</u>, 34 F.3d 1557, 1566 (10th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1099 (1995). Defendant does not suggest a trial location where pretrial and trial publicity would not have occurred nor does he consider that a transfer based on adverse publicity in one location likely may encourage additional publicity in the new location and at a time closer to trial.

Jurors called to serve in Wichita are drawn from 11 counties (D. Kan. Rule 38.1(a)(2)). Because of the 4-5 week anticipated length of

-6-

the trial, the clerk sent a letter to prospective jurors soliciting information regarding their ability to serve.  Several prospective jurors were excused based on their responses to the letter but 69 reported for jury duty.  Each juror completed a questionnaire (Ex. A) which counsel used during jury selection.  In addition, counsel were allowed to examine the jurors (Fed. R. Crim. P. 24) and no restrictions were placed on counsel's questioning regarding exposure to pretrial publicity and ability to be fair and impartial.  The law does not presume that jurors were exposed to pretrial publicity or, if so, that they were prejudiced by it.  United States v. Tokoph, 514 F.2d 597, 607 (10th Cir. 1975).  Interestingly, in Tokoph, Harris L. Hartz, now a Tenth Circuit judge, was the Assistant U.S. Attorney who represented the government.

Ultimately, 5 jurors were excused by the government and 9 by defendants.  The opinion of defendant's current lawyers, who were not present during jury selection and whose experience in selecting juries is unknown, that trial counsels' questions were not "particularly rigorous or probing" has no persuasive value, especially since out of the 600 pages of transcript pertaining to voir dire, only four jurors are identified as being "inadequately" examined.

Insofar as publicity during trial is concerned, defendant has completely failed to show that any juror was exposed to media reports. The court repeatedly and regularly admonished the jurors not to read or listen to any news coverage as well as not to do any investigation and research regarding the case.  Defendant's present lawyers' complaint that the court did not repeat the full admonition at each recess has no legal support and trial counsel was not ineffective for

failing to request a different or more inclusive admonition.  The law presumes that jurors understand and follow the court's instructions and defendant has put forth no evidence that any of the jurors either did not understand or failed to comply with the court's admonition.

## Inadequate Cross-Examination of Two Witnesses

Defendant claims that his counsel failed to "adequately cross-examine" government witnesses Kevin R. and Lara Laut.  Since both witnesses were cross-examined by counsel for <u>both</u> defendants, his complaint is reduced to counsel not asking the questions <u>he</u> now asserts <u>should</u> have been asked.  The court adopts the government's response (Doc. 603 at 20-21).  Most important, here as with all his other complaints, defendant has completely failed to show how, absent counsel's alleged failure, the outcome of the case would have been different.

## Unreasonable Defense Strategy

Defendant complains that his counsel pursued an "unreasonable defense strategy" in three respects: (1) counsel did not present expert testimony that defendant's therapy methods were legitimate; (2) counsel did not adequately prepare the witness called to rebut the opinions of Walter Menninger, M.D. and (3) counsel should not have told the jury to watch all the videotapes.

Defendant's first argument is disingenuous because counsel <u>did</u> attempt to present such testimony through a Dr. Cynthia Steinhauser. The court held a <u>Daubert</u> hearing outside the jury's presence and sustained the government's motion in a written Memorandum and Order (Doc. 308).  Significantly, defendant does not include the court's ruling in his laundry list of complaints regarding the performance of

his appellate counsel.

Defendant instead asserts that his trial counsel's performance was ineffective because counsel knew or should have known that the government's <u>Daubert</u> challenge likely would be sustained.  He does not explain <u>how</u> his counsel was supposed to know the government would file a <u>Daubert</u> motion and/or that the court would grant it.  If trial counsel knew or should have known that Dr. Steinhauser would not be allowed to testify, who is the expert witness defendant's trial counsel should have retained who would have been permitted to testify that defendant's therapy methods were legitimate? Because defendant's present lawyers have not identified such a witness, the court assumes either they have not looked for one or, if they have, they have not found one.  Instead, defendant's current lawyers postulate, with the benefit of perfect hindsight, that "The better defense would have been for counsel to argue that whether the videotapes depicted therapy or not, Kaufman truly believed that he was conducting therapy, thus he lacked the specific intent required for conviction on all of the crimes charged."  Argument, of course, must be based on evidence. There was little, if any, evidence to support such an argument, particularly in view of defendant's own testimony.  The record cannot portray such things as defendant's manner and attitude while testifying, which the jury was entitled to evaluate in addition to his words.  Defendant's testimony consumes more than 500 pages of transcript.  The jury was entitled to believe defendant's testimony regarding the legitimacy of his methods but it chose not to, perhaps because actions usually <u>do</u> speak louder than words.  There is absolutely no reason to think that the jury would have accepted

counsel's postulated "true belief" argument in view of all the evidence.

Defendant's second argument is somewhat related to his first. Defendant says his counsel called Dr. George Hough to rebut the testimony of Dr. Walter Menninger regarding the ability to some of the Kaufman House residents to consent to defendant's therapy methods. Defendant speculates that his counsel did not adequately prepare Dr. Hough for cross-examination by fully informing him of the details of defendant's methods.

Leaving aside the question of what defendant's present lawyers could or would have done to rebut or question the opinions of a witness having the credentials of Dr. Menninger, the court finds that defendant has failed to show that Hough's testimony, whether on direct or cross, would have changed the outcome of the case, regardless of his preparation.

Defendant's final argument is that counsel was ineffective by encouraging the jury to watch all the videotapes made by defendant, allegedly for the purpose of documenting his therapy methods. Defendant's present lawyers, who criticize trial counsel for not arguing positions not supported by evidence, i.e., defendant's "true belief," reverse course and claim that trial counsel was ineffective for arguing the positions taken by defendant. As the government points out (Doc. 603 at 11-15), defendant's defense was that his methods were legitimate therapy and the tapes would validate his methods.

The Tenth Circuit observed in United States v. Rivera, 900 F.2d 1462, 1474 (10th Cir. 1990): "When, as here, the prosecutor has an

overwhelming case, 'there is not too much the best defense attorney can do.'" (citations omitted).   Such was the situation here. Defendant's trial counsel did his best to put on the defense defendant wanted.   That's hardly the mark of inadequate representation.

### The "No Eye Contact" Issue

Defendant revisits the undersigned's order that defendants "To the extent possible, avoid eye contact with the victims . . . ." (Doc. 268).   Three "victims" testified for the government:  Nancy J., Peter L. and Kevin R.   The order had no application to the approximately 22 other government witnesses.   The order was made outside the presence of the jury and there is no evidence (and never has been) that any of the jurors were aware that defendants were not having "eye contact" with the three victim witnesses or, if any of the jurors were aware, that they were adversely influenced in any way against defendant.

The undersigned had his reasons for making the "no eye contact" order but he acknowledges that those reasons are irrelevant to the present issue.   The undersigned also acknowledges the Tenth Circuit's extensive discussion regarding his order and will not take issue with the Circuit's analysis.   He cannot help but notice, however, that defendant, who now has the burden of proof, has failed to acknowledge and deal with the Circuit's observation that ". . . hypothesized downward glances during the residents' testimony [were not sufficient to] establish a reasonable probability of a different result." (546 F.3d at 1259).   Even if trial counsel should have objected to his order, there is no basis for this court to conclude that counsel's failure to object fell below an objective standard of reasonableness

or that a different result would have occurred.  If the Tenth Circuit, based on a review of a cold record, could reach a "no different result" conclusion, defendant has failed to explain why this court should find, based on his perspective as the trial judge, that defendant has proved that his trial counsel's failure to object was an error of constitutional magnitude which resulted in a complete miscarriage of justice.

### The Videotapes and Fed. R. Evid. 403

Defendant asserts that his trial counsel was ineffective because he did not object to the videotapes depicting his "therapy" methods as prejudicial under Fed. R. Evid. 403.  He also makes the gratuitous suggestion that "The government could simply have had Agent Dan Coney or Agent Philip McManigal describe the contents of the tapes."

The content of the videotapes is described in some detail in the Circuit's opinion (546 F.3d at 1248-49) and for some unknown reason defendant's present lawyers have devoted several pages of one of their submissions to a description of the tapes.  There is no question that the tapes are unpleasant and uncomfortable to watch (except to defendant).  Indeed, the very nature of the tapes runs contrary to defendant's argument that the jury watched them during deliberations.

Nevertheless, the tapes were evidence, indeed some of the most probative evidence, of defendant's crimes, including his criminal intent, which his new lawyers want to say he didn't possess.  They were prejudicial in the same sense that most, if not all, of the government's evidence can be considered prejudicial from the viewpoint of any criminal defendant.  But to run afoul of Rule 403, the prejudice must be unfair.  Crystal Star Phillips v. Hillcrest Medical

-12-

<u>Center</u>, 244 F.3d 790, 800 (10th Cir. 2001), <u>cert.</u> <u>denied</u>, 535 U.S. 905 (2002).   Defendant cites no case authority to support his argument that the tapes violated Rule 403, much less that his counsel's failure to make a Rule 403 objection or objections amounted to ineffective assistance.   In this connection, the court wholeheartedly agrees with the government's observations regarding the tapes, Doc. 603 at 12-14. When the tapes are considered as part of the entire case, it is highly unlikely that this court would have sustained many, if any, Rule 403 objections to any individual tape because their probative value was not outweighed by their prejudicial effect.

Perhaps sensing the weakness of his Rule 403 argument, defendant makes a somewhat unusual suggestion: that the government could have asked its agents to describe the contents of the tapes, instead of playing them.   No authority is cited in support of this suggestion.

The Advisory Committee Notes to the 1972 Proposed Amendments to Fed. R. Evid. 1002 observe: "Cases in which an offer is made of the testimony of a witness as to what he saw in a photograph or motion picture, without producing the same, are most unusual."   Indeed, had the government attempted what defendant's new lawyers suggest, it is certainly arguable that the agents' testimony would have violated Rule 1002. <u>See</u> <u>Freeman v. City of Fort Worth, Texas</u>, 2011 WL 2669111 (N.D. Tex.) #3 ("Thus because much of Lewis' testimony seeks to describe the contents of the Wal-Mart video, it is inadmissible under the best evidence rule.")   In addition, the tapes contain statements of defendant and the residents.   Surely the agent's recitation of those statements would present hearsay problems.   In short, defendant's suggested alternative is unrealistic and unworkable.

-13-

<u>The Jury's Viewing of the Videotapes</u>

Defendant asserts that his counsel was ineffective because he did not object when the court provided the jurors with a television and VCR in order for them to view videotapes played in court and not played (but all of which were received in evidence). Defendant seems to be claiming that the court committed "structural error" and that his counsel's failure to object amounted to presumed <u>Strickland</u> prejudice. Defendant cites <u>Miller v. Dormire</u>, 310 F.3d 600 (8th Cir. 2002) (counsel's waiver of his client's rights to a jury trial without defendant's knowledge and understanding was structural error); <u>Owens v. United States</u>, 483 F.3d 48, 61-66 (1st Cir. 2007) (counsel's failure to object to closure of courtroom during jury selection amounted to structural error because it deprived defendant of his right to a public trial); <u>Johnson v. Sherry</u>, 586 F.3d 439, 446-447 (6th Cir. 2009), <u>cert. denied</u>, 131 S. Ct. 87 (2010) (counsel's failure to object to closure of the trial during testimony of three witnesses might constitute structural error) and <u>Styers v. Schriro</u>, 547 F.3d 1026, 1030-32(9th Cir. 2008), <u>cert. denied</u>, 130 S. Ct. 379 (2009) (counsel's failure to move to strike the jury panel theoretically could amount to <u>Strickland</u> prejudice but did not under the facts). Each of these cases is factually distinguishable and none represent controlling authority.

Despite being alerted on several occasions, defendant seems incapable of directly addressing the government's position that defendant considered the tapes to be evidence of the legitimacy of his therapy methods, whether or not they had been played in court, either during the government's case or as part of his case. Defendant also

-14-

asserts that the tapes were "provided to the jury without any cautionary instruction" but, as he does elsewhere in his submissions in other contexts, he does not suggest what cautionary instruction would have been appropriate.

The court finds defendant has shown neither structural error nor ineffective assistance.   The tapes were sent to the jury when defendant was present in the courtroom.   Obviously, defendant was not entitled to be present in the jury room when the tapes were reviewed (assuming, for purposes of argument only, that the jurors watched <u>any</u> of the tapes).   Most important, defendant has failed to show how counsel's failure to object resulted in his conviction; in other words, that he would have been acquitted but for counsel's failure.

<u>Hearsay Testimony</u>

Defendant complains that his counsel did not object when a government witness, Detective Walton, testified that Barb T., one of the Kaufman House residents, told him that she had been punished when she had spoken with Walton on a previous occasion.

Defendant also asserts that his trial counsel was ineffective for failing to object to the testimony of Kevin R., another resident, regarding encounters between defendant and Barb T.   Kevin testified that Barb would scream, yell, plead for her life and report that defendant tried to kill her.   Barb T. did not testify.

Finally, defendant claims that his counsel should have objected to the testimony of Leland H., the father of resident Mary, that his daughter told him that no one from SRS was to be allowed in the house.

The government responds that the testimony was not hearsay or was admissible as hearsay exceptions.   The court generally agrees with the

-15-

government.  For example, Kevin's testimony about Barb's screaming certainly appears to relate to excited utterances under Fed. R. Evid. 803(2).  Defendant asserts that Barb's statement was "testimonial" and therefore inadmissible because "A reasonable person in [Barb's] position would objectively foresee that the primary purpose of the statement was to use it in the investigation or prosecution of a crime" citing <u>United States v. Smalls</u>, 605 F.3d 765 (10th Cir. 2010). <u>Smalls</u> is a lengthy opinion involving a factual situation totally unlike the encounter between Barb and Walton.  The Circuit declined to "tender a definitive definition of 'testimonial'" (605 F.3d at 778).  Even if one does not consider why Barb was a resident (e.g., because she suffered from schizophrenia or other serious mental condition), defendant has not cited facts to support a conclusion about what she could "objectively foresee" and thus whether Walton's testimony <u>was</u> inadmissible.  But it is unnecessary to engage in a detailed discussion of the hearsay rule and its exceptions.  Even if trial counsel should have objected, defendant has not shown that counsel's failure was "completely unreasonable" and, far more important, that had the challenged testimony not been admitted, defendant would have been acquitted.

<u>Closing Argument</u>

Defendant claims that his counsel was ineffective because he failed to object to portions of government counsels' closing argument. His complaints essentially fall in three categories: (1) the prosecutor vouched for the credibility of witnesses; (2) the prosecutor called him and his wife "liars" and (3) the prosecutor misstated the testimony of some of the Kaufman House residents.

-16-

At the outset, the court notes that with the exception of <u>United States v. Lopez-Medina</u>, 596 F.3d 716, 740 (10th Cir. 2010) defendant fails to deal with the Tenth Circuit cases which are contrary to his position.  As for his improper vouching claim, defendant cites the following (and only) statement by government counsel:

> As you listen to this argument, I ask you to remember that the Government has presented you with multiple witnesses, documents and videotapes for every legal proposition we are required to prove. Witnesses with no motive other than to tell the truth. Documents and videotapes that speak loudly for themselves.

(Doc. 477 at 7, Tr. p. 3524).  There is no question that this argument does <u>not</u> amount to improper vouching.  <u>United States v. Franklin-El</u>, 555 F.3d 1115, 1125 (10th Cir. 2009).

Defendant's second claim, that prosecutors called him and his wife "liars," is patently misleading.  Nowhere in the transcript citations does the word "liar" appear.  Here follow the excerpts:

> And look at the way the Defendants worked together to hide what was really going on at 321 West 7th Street from the outside world. They banded together to lie and to give misinformation to SRS, the Butler County Sheriff's Department, the Department of Health and Human Services, Blue Cross & Blue Shield, the Newton police, doctors; and most shamefully, the parents of their so-called patients.

(Doc. 477 at 12, Tr. p. 3529).

> While Defendant Kaufman will no doubt tell you yet again that he really believed that he was helping Mary and Barbara by giving them, as he called it, the rare privilege to be nude and masturbate in front of a video camera, the Defendants' web of secrets and lies tells you otherwise.

(Doc. 477 at 25, Tr. p. 3542).

> And the web of lies went far beyond SRS. When those Butler County Sheriff's Officers were called out to the Potwin farm on November 8 of 1999, why didn't Arlan Kaufman just tell the officers about his innovative family therapy program that includes masturbation, genital shaving and videotaping?

-17-

(Doc. 477 at 26, Tr. p. 3543).

> He and Linda Kaufman chose instead for over 20 years to lie
> under oath in 1992, to the police in 1999, to Dan Coney in
> 2001, and to the parents of their patients for years.

(Doc. 477 at 43, Tr. p. 3560).

> So, contrary to what Mr. Joseph told you, she did lie; she
> did cheat; she did steal from Medicare and the families and
> the residents.
>                          * * *
> You can believe the evidence presented to you by the
> uncontrovertible videotapes, the documents, the experts,
> the victim witnesses who corroborated each other; or you
> can believe the Defendants who have hidden the truth and
> whose lies were repeatedly highlighted during the trial.
> You can believe the victims or you can believe the   one
> person in this courtroom who had every incentive to lie to
> you and who played word games with you throughout his
> testimony.

(Doc. 477 at 122, Tr. p. 3639).

Counsel's argument was fair comment based on the evidence.
Counsel did <u>not</u> call defendants "liars" but even if she had, the court
would have overruled any objection to the word. (Perhaps defendant's
delicate sensibilities would be salved if the prosecutor had used the
word "fib" instead of "lie.") The evidence clearly showed that
defendants lied and did so repeatedly.

Defendant's final argument is similarly unpersuasive. The court
instructed the jury, without objection, that arguments of counsel are
not evidence.  Such an instruction may minimize the impact of any
error made by misstating the evidence in closing argument and failure
to object does not establish prejudice. <u>Bledsoe v. Bruce</u>, 569 F.3d
1223, 1239 (10th Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 808 (2009).
Assuming misstatements were made, there is nothing to indicate they
were made deliberately for the purpose of misleading he jurors. More
important, if there were misstatements, they related to but a fraction

-18-

of the evidence.  It is inconceivable that the jury ignored all of the overwhelming evidence of defendant's guilt and returned guilty verdicts on charges concerning which the resident's testimony had no relevance.

In conclusion, defendant has completely failed to show that his counsel's failure to object during closing argument meets either prong of the Strickland standard.

### Appellate Issues

Defendant claims that his appellate counsel was ineffective for failing to appeal (1) Senior Judge Sam Crow's order disqualifying defendant's initial counsel; (2) orders denying motions to suppress evidence; (3) victims' lawyer Kirk Lowry's "interference" with defense counsels' attempts to interview residents; (4) insufficiency of evidence on certain counts and (5) sentences not authorized by statute.  (Defendant claims trial counsel also was ineffective on claims (4) and (5)).

At the outset, the court notes that defendant's current lawyers have not mentioned the standards applicable to claims of ineffective appellate counsel, supra, and therefore have made no effort to demonstrate how their claims meet those standards.  For these reasons, the court has considered simply denying the claims out of hand. Nevertheless, notwithstanding defendant's lawyers' unexplained failure, the court will comment briefly on the claims.

### Judge Crow's Ruling

Defendant contends in conclusory fashion that Judge Crow's order disqualifying his original counsel violated his Sixth Amendment right to counsel but he does not cite any portion of the order, offer any

-19-

explanation regarding why the order was either factually or legally erroneous or, most important, why an appeal from the order would have been a "dead-bang winner," perhaps because his current lawyers are ignorant of that requirement.

### Motions to Suppress

Defendant's claims regarding the rulings on the motions to suppress are contained in a single paragraph of eight lines of text. No explanation is offered as to why the rulings were erroneous, no authority is cited and no argument is advanced that an appeal from either or both rulings would have a "dead-bang winner."

### The Kirk Lowry Issue

Kirk Lowry, a private attorney, was appointed as guardian ad litem for some of the Kaufman House residents/victims. When defense counsel wanted to interview some of the residents, Lowry declined the request as their guardian. The matter was heard and ruled on by U.S. Magistrate Judge Donald W. Bostwick and no appeal was taken to this court from his rulings. Defendant asserts that because of events which later occurred during trial, Lowry's ". . . actions suggest an allegiance with the government. Appellate counsel should have pursued this issue on appeal."

What issue, had appellate counsel "pursued" it, would have been a "dead-bang winner"? Defendant doesn't say.

### Sufficiency of Evidence

When a defendant appeals a jury verdict challenging sufficiency of the evidence, the universal standard is that the Court of Appeals reviews all the evidence, as well as reasonable inferences therefrom in the light most favorable to the verdict and will find evidence

-20-

insufficient only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.  <u>United States v. Lovern</u>, 590 F.3d 1095, 1104 (10th Cir. 2009).  The Court of Appeals does not weigh conflicting evidence, resolves all possible conflicts of the evidence in the light most favorable to the government and assumes the jury found the evidence credible.  <u>United States v. Doddles</u>, 539 F.3d 1291, 1293-94 (10th Cir. 2008).  The same standards apply to motions for judgment of acquittal.

Defendant has not analyzed his sufficiency of evidence claims in accordance with these standards, nor has he offered any explanation how an appeal based on insufficiency of evidence would have been a "dead-bang winner."

<u>Sentences on Counts 4 and 5</u>

The government concedes that the 20 year sentences imposed on counts 4 and 5 were erroneous and should have been 5 years each.  Even though neither his trial or appellate counsel caught the error- which, in truth, was this court's fault- defendant has not and cannot show prejudice because the sentences run concurrently.  Even if the court should correct the judgment and commitment to reflect the correct sentences on counts 4 and 5, defendant's controlling sentence would not be reduced.

<u>Defendant's Pro Se Submission</u>

Defendant has submitted what he styles as a Motion to Amend (Doc. 609).  The submission was filed on February 14, 2011 and clearly is out of time.  28 U.S.C. § 2255(f).  Defendant's apparent purpose in filing the submission was to circumvent this court's ruling striking his lawyers' initial § 2255 motion (Doc. 591) because it violated the

court's page-limit order (Doc. 599).  The court now has given full consideration to the claims made in Doc. 591, as well as every other submission by defendant's new lawyers.

Even if the submission had been timely filed, the court would not consider it.  As the government points out, Doc. 610 at 3, defendant has no right to "hybrid" representation.  Moreover, by seeking to pursue an additional 26 claims of ineffective assistance (many of which would not be cognizable under § 2255, even if liberally construed), defendant essentially is accusing his current lawyers of ineffectively presenting his § 2255 motion.  None of this is appropriate either under § 2255 or the Rules of Procedure.

<u>Evidentiary Hearing</u>

Defendant suggests throughout his submissions that he will prove his claims by the testimony of his trial and appellate counsel.  He does not proffer what their testimony will or even might be.  He has attached no affidavits.

Rule 8 of the Rules Governing § 2255 Proceedings applies to evidentiary hearings.  Conclusory and general allegations made as part of a request for an evidentiary hearing are insufficient.  <u>Hooks v. Workman</u>, <u>supra</u>, 606 F.3d at 730-31 (10th Cir. 2010). No hearing is required if the files and records conclusively show the defendant is not entitled to relief.

Such is the case here.  Each of defendant's claims is that his counsel failed to do something.  It is unclear how testimony by counsel regarding his failure to do something would be relevant or helpful to defendant.

Accordingly, defendant's request for an evidentiary hearing is

-22-

denied.

Conclusion

The court has given full consideration to defendant's claims and finds that the files and records clearly and conclusively show that he is entitled to no relief.   Contrary to defendant's claims, the record demonstrates that he received extraordinary representation by his trial and appellate counsel.   His treatment by the courts, including his sentence which many rightly would consider lenient, not only has been entirely consistent with his rights, but far better than the "treatment" he provided to the emotionally-damaged individuals entrusted to his and his wife's care.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).

The response to any motion for reconsideration shall not exceed three pages.   No reply shall be filed.

IT IS SO ORDERED.

Dated this __1st__ day of August 2011, at Wichita, Kansas.


                              s/ Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE