**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 19, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ARLAN DEAN KAUFMAN,

Defendant-Appellant.

No. 11-3253
(D.C. Nos. 5:10-CV-04150-MLB &
5:04-CR-40141-MLB-1)
(D. Kan.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY***

Before **TYMKOVICH**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

Arlan Dean Kaufman was convicted of numerous federal charges related to his physical and sexual abuse of mentally ill persons under his care at a residential treatment facility in rural Kansas. The district court sentenced Kaufman to 30 years' imprisonment.

He now seeks a certificate of appealability (COA) to appeal the denial of his 28 U.S.C. § 2255 motion for sentencing relief. He contends that he received

* This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R App. P. 32.1 and 10th Cir. R. 32.1.

ineffective assistance of trial counsel. We have jurisdiction under 28 U.S.C. § 1291, and we deny a COA.

**Background**

Because the facts of this case are recounted in detail in our opinion on direct appeal, *United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008), and the parties are familiar with those facts, we provide only a brief summary.

Kaufman, a doctor of social work, and his wife owned and operated the Kaufman House Residential Care Treatment Center, an unlicensed group home for severely mentally-ill persons. After deputies discovered two of the Center's male residents working in the nude on a Kaufman farm, authorities initiated an investigation of the Center. "They learned that, over a period of more than fifteen years, the Kaufmans had directed the severely mentally ill residents . . . to perform sexually explicit acts and farm labor in the nude while maintaining that these acts constituted legitimate psychotherapy for the residents' mental illnesses." *Id.* at 1246. Execution of a search warrant uncovered seventy-eight videotapes in Kaufman's bedroom, many showing residents engaged in graphic sex acts directed and filmed by Kaufman. "In several instances, the tapes show Dr. Kaufman touching the genitals of some of the residents (two women and a man)." *Id*. at 1249.

At trial, the prosecution played some of the tapes for the jury and offered testimony from some of the residents who appeared on the tapes. Additionally, two psychiatrists, a psychologist, and a social worker testified that there was no therapeutic justification for the nudity and sex acts suggested by Kaufman; indeed, they testified that the acts were quite harmful. There was also evidence that Kaufman used physical force against residents, confined residents naked to a "seclusion room" that lacked a bed and a toilet, *id.* at 1250, and took some of the residents to a nudist colony. Finally, the residents testified that the Kaufmans had restricted the information they could give to medical and law-enforcement personnel.

Kaufman testified in his own defense, asserting that residents voluntarily engaged in nudity and the videotaped sex acts. He maintained that sexual behavior was appropriate for the residents and helpful in preventing improper behavior.

As the jury began its deliberations, it was provided the videotapes admitted into evidence, along with a VCR and television "in the event that the jury wanted to view the videotapes." Aplt. Br. at 15. After deliberating for nearly seventeen hours, the jury returned guilty verdicts.

Kaufman's convictions and sentence were affirmed on direct appeal. The district court denied § 2255 relief in a thorough and well-reasoned decision. Kaufman now seeks a COA to perfect an appeal from that decision.

## Discussion

I. Standards of Review

"The issuance of a COA is a jurisdictional prerequisite to an appeal from the denial of an issue raised in a § 2255 motion." *United States v. Gonzalez*, 596 F.3d 1228, 1241 (10th Cir. 2010). To obtain a COA, Kaufman must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation omitted).

To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must show both that his counsel's performance fell below an objective standard of reasonableness, and that he suffered prejudice as a result. *Id*. at 688, 694. Our review of counsel's performance is highly deferential; the petitioner must overcome the presumption that, "under the circumstances, the challenged action might be considered sound trial strategy." *United States v. Taylor*, 454 F.3d 1075, 1079 (10th Cir. 2006) (quotation omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

II. Conduct of Counsel

Kaufman posits five grounds for concluding the conduct of his counsel violated constitutional norms. We address each in turn.

*A. Videotapes*

Kaufman argues that his trial counsel was ineffective for not objecting to the jury being given videos that were not played in open court. He contends that lack of an objection violated his "right to be present at every stage of the criminal proceeding," Aplt. Br. at 30, and is presumptively prejudicial. The district court disagreed, stating that Kaufman considered the tapes to be evidence demonstrating the legitimacy of his therapy methods, and that he failed to show how the lack of an objection resulted in his conviction.

We do not find the district court's ruling debatable. Defense counsel's failure to object is consistent with a trial strategy to minimize the tapes' damning impact by portraying them as recordings of therapy sessions or voluntary behavior. Kaufman does not indicate whether the "unplayed tapes," *id.* at 38, were inconsistent with such a strategy. And to the extent Kaufman objects to the use of such a strategy, he has not shown that it was unreasonable "considering all the circumstances" of the case against him. *United States v. Rushin*, 642 F.3d 1299, 1307 (10th Cir. 2011) (quotation omitted), *cert. denied*, 132 S. Ct. 1818 (2012).[1]

---

[1] We reject Kaufman's claim that trial counsel acted unreasonably in failing to foresee that his expert's testimony in support of his therapy strategy would ultimately
(continued)

But even if counsel's failure to object was deficient performance, Kaufman has not shown prejudice. First, there is no evidence that the jurors watched any unplayed tapes. Indeed, as Kaufman notes, during trial "the jury was so fed up" with watching tapes depicting residents' sexual behavior that a juror "sent a question to the court asking how many more videos the jury would be required to watch." Aplt. Br. at 20.

To the extent Kaufman relies on *United States v. Noushfar*, 78 F.3d 1442 (9th Cir. 1996), to contend that we should presume prejudice, that case is not persuasive. Specifically, *Noushfar* involved tape recordings made by the government during an undercover investigation. The Ninth Circuit held that giving the jury access to tapes that had not been played in the courtroom constituted structural error because it was "akin to allowing a new witness to testify privately, without cross-examination, to the jury during its deliberations." *Id.* at 1445. But here, it was the defendant who made the recordings, and he tied them to his defense strategy. Under these circumstances, we will not deem counsel's failure to object structural error or presumptively prejudicial trial performance.[2]

---

be excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) (holding that trial courts have a gatekeeping function to ensure both the relevance and reliability of scientific expert testimony). As Kaufman concedes, "the government did not file its motion to exclude [the expert's] testimony until mid-trial." Aplt. Br. at 42. And even if the government alerted counsel before trial that it would seek to exclude the expert's testimony under *Daubert*, it was not unreasonable for defense counsel to proceed under the therapy strategy and fight for the expert's testimony when the government challenged it.

[2] Kaufman also argues that his counsel should have objected to the videotapes that were played at trial as irrelevant, prejudicial, and cumulative. He contends that (continued)

*B. The "No Eye Contact" Order*

Prior to trial, the district judge ordered the Kaufmans to avoid any contact with the victims during trial, including, "to the extent possible, . . . eye contact with the victims when they are in court." *Kaufman*, 546 F.3d at 1251 (quotation omitted). The district judge explained that he did not "want to deal with complaints that defendants [were] trying to influence or intimidate victims through eye contact." *Id.* Defense counsel did not object. On direct appeal, this court applied plain-error review and stated, "There is considerable support for the Kaufmans' contention that the district court erred in issuing the no-eye-contact order" without making particularized findings. *Id.* at 1255-56. We then concluded that, "even assuming that the district court plainly erred, . . . the Kaufmans have not established the prejudice required to obtain relief under the plain error analysis." *Id*. at 1257.

In the § 2255 proceedings below, Kaufman argued that his trial counsel was ineffective for not objecting. The district court disagreed, citing this court's lack-of-prejudice conclusion as supporting its own conclusion that counsel's failure

---

the tapes "do not shed much light" on the government's charges, Aplt. Br. at 52, that testimony describing the residents' sexual behavior would have been adequate on its own, *see, e.g. id.* at 47, and that "brief clip[s] . . . would have sufficed to support the government's argument," *id.* The district court determined that counsel's failure to object was not ineffective assistance, reasoning that an objection would have, for the most part, failed because the tapes were highly probative and not unfairly prejudicial. We agree. The government was entitled to make its case using the videotapes. Even if defense counsel had objected and managed to exclude or truncate some of the video clips, he would not have been able to exclude enough material to make a difference in the outcome of the case.

to object was not prejudicial under *Strickland*. As Kaufman observes, however, the burden of establishing prejudice on direct appeal would have been different had there been an objection at trial. Specifically, had there been an unsuccessful trial objection, and had this court on direct appeal definitively declared error, the government would have had the burden of showing that the error was harmless beyond a reasonable doubt. *See id.* at 1259. But under plain-error review, it was Kaufman's burden to demonstrate prejudice. *Id.*

Nevertheless, we disagree with Kaufman's basic premise that "[u]nder a harmless error standard, [he] would have been entitled to a new trial." Aplt. Br. at 41. The evidence against him was overwhelming. In addition to the videotapes admitted at trial, residents of the Center and mental-health experts offered detailed testimony in support of the charges against Kaufman. We conclude that the district court's decision that Kaufman is not entitled to relief based on counsel's failure to object to the "no eye contact" order is not debatable.

*C. Closing Argument*

Kaufman also contends that trial counsel provided ineffective assistance during closing arguments by not objecting to (1) the prosecutor's misstatements of the evidence; and (2) accusations that the Kaufmans had lied.[3] The district court

[3] Before the district court, Kaufman also argued that the prosecution vouched for the credibility of its witnesses. Because he has provided no discussion regarding vouching on appeal, the argument is abandoned. *See Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 702-03 (10th Cir. 1998).

rejected the first contention on the grounds that it had instructed the jury that counsel's arguments are not evidence, and that any misstatements concerned only a small portion of the evidence. It then cited our opinion in *Bledsoe v. Bruce*, 569 F.3d 1223, 1239 (10th Cir. 2009), holding that "[a] jury instruction may minimize the impact of any error made by misstating the evidence in closing arguments." We find nothing debatable in this respect.

As for Kaufman's second contention, that the prosecutor accused the Kaufmans of being liars without objection by defense counsel, the district court stated that the evidence showed that they had, in fact, lied. Thus, it would have overruled an objection. Indeed, "it is permissible for the prosecution to comment on the veracity of a defendant's story . . . on account of irreconcilable discrepancies between the defendant's testimony and other evidence in the case." *Bland v. Sirmons*, 459 F.3d 999, 1025 (10th Cir. 2006).

Kaufman has not demonstrated that an objection by defense counsel would have been meritorious or that a failure to object had any effect on the outcome of the case. The district court's decision on this point is not debatable.

### *D. Cumulative Ineffective Assistance of Counsel*

Kaufman argues that "the cumulative effect of counsel's errors must be considered." Aplt. Br. at 61. The district court does not appear to have addressed this argument. Nevertheless, because we reject all of Kaufman's individual claims of ineffective assistance of counsel, we cannot hold that the cumulative effect of his

counsel's conduct was nonetheless ineffective. *See Bunton v. Atherton*, 613 F.3d 973, 990 (10th Cir. 2010) (observing that "the cumulative error doctrine does not apply [w]here . . . we have not found the existence of two or more actual errors").

III. Evidentiary Hearing

Insofar as Kaufman suggests that the district court erred in ruling on his § 2255 motion without holding a hearing, we conclude that "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Thus, the district court appropriately declined to hold a hearing.

**Conclusion**

No reasonable jurist could dispute that the district court properly denied Kaufman relief under 28 U.S.C. § 2255. Accordingly, Kaufman's application for a COA is DENIED, and this appeal is DISMISSED.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk