United States District Court
District Of Kansas

United States Of America,

                    Plaintiff,

v.                                                    Case No. 5:04-cr-40141-001

Arlan Dean Kaufman

                    Defendant.

## MOTION FOR COMPASSIONATE RELEASE

### I.    Introduction

Defendant, Arlan Kaufman ("Kaufman"), through his attorney, respectfully moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), for an order reducing his sentence because he presents "extraordinary and compelling reasons" for compassionate release.

Dr. Kaufman is an 83-year old first-time offender with Stage IV prostate cancer that has metastasized to his spine, pelvis, and ribs, as well as other serious medical conditions, including peripheral vascular disease, stage 3 chronic kidney disease, hypertension, and coronary atherosclerosis. He has served almost 15 years of his 30-year sentence and his advanced age, terminal illness, and deteriorating health are extraordinary and compelling reasons to grant a reduction in sentence. Dr. Kaufman would be deserving of compassionate release during normal times; however, his compromised health and age place him at imminent risk of death if he were to contract the novel coronavirus (COVID-19).

1

This Court has jurisdiction under § 3582 to determine whether "extraordinary and compelling reasons" warrant a sentence reduction after consideration of sentencing factors under 18 U.S.C. § 3553(a), the Sentencing Commission's policy statement on reduction of sentence in U.S.S.G. § 1B1.13, and after determining Kaufman is not a danger to the safety of others or the community. Because Dr. Kaufman satisfies all the relevant factors, he respectfully requests the Court grant his motion for compassionate release and reduce his sentence to time served or to a term of home confinement.

## II.   <u>Procedural History</u>

On November 8, 2005, Kaufman was found guilty of offenses including health care fraud, mail fraud, forced labor, and involuntary servitude. (Jury Verdict, ECF No. 311; Amended Judgment, ECF No. 426.) On January 23, 2006, this Court sentenced Kaufman to 30 years imprisonment, three years of supervised release, and ordered him to pay $534,810.53 in restitution and a $3,100 assessment. (Judgment, ECF NO. 352; Amended Judgment, ECF No 482.) He was transferred to Butner FMC on May 1, 2020, and his anticipated release date is May 1, 2031.[1]

On March 30, 2020, Dr. Kaufman submitted a Request for Compassionate Release to the Warden of FCI Seagoville, requesting the BOP move under 18 U.S.C. § 3582(c)(1)(A) for a reduction in sentence. (Letter to Warden, attached as **Exhibit A**.)  On April 21, 2020, Warden Zook denied Dr. Kaufman's request. (Ex. A.) In its

---

[1] *Federal Bureau of Prisons Inmate Locater*, https://www.bop.gov/inmateloc/ (last visited June 16, 2020).

denial, the BOP stated that concerns about "being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release." (Ex. A.) The BOP also stated that Dr. Kaufman "does not meet the criteria for Terminal Medical Conditions or Debilitated Medical Condition." (Ex. A.)

### III.   Statement Of Facts

#### A.   Kaufman Suffers from Stage IV Prostate Cancer.

In January 2020, Dr. Kaufman heard something "popped/broke/tore" in his hip while walking on the unit at FCI Seagoville and he fell. (BOP Medical Records attached as **Exhibit D**, at 34.) After experiencing pain and soreness, and being unable to ambulate for one month, he sought medical attention on February 6, 2020. (Ex. D, at 34–36.). After a series of tests (x-ray, bone scan, bone biopsy, and MRI) over two months, Dr. Kaufman was finally diagnosed with stage IV prostate cancer with extensive metastases in his thoracic and lumbar spine, pelvis, and ribs on March 31, 2020. (Ex. D, at 13–14, 22, 26, 30, 34–36, 77, 125–127, 139–150, 155, 171, 181–183.) He was hospitalized at Dallas Regional Medical Center from March 25–31, 2020, and then discharged to Vibra Specialty Hospital Dallas (a long-term acute care hospital) for therapy, where he remained from March 31 to April 8, 2020. (Ex. D, at 129–135, 138–139.) Thereafter, the BOP transferred 83-year old Dr. Kaufman across the country during the COVID-19 pandemic to FMC Butner. His current treatment regimen includes a combination of Alendronate 70 mg, Bicalutamide 50 mg, and Tamsulosin HCL 0.4 mg. (Ex. D, at 4–5.)

Signs and symptoms of stage IV metastatic prostate cancer include: painful urination, decreased force in the stream of urine, blood in the semen, bone pain, swelling in legs, and fatigue.[2] While treatment "may slow or shrink an advanced prostate cancer" or reduce symptoms, stage 4 prostate cancer cannot be cured.[3] It is the second leading cause of cancer death among men in the United States.[4] The five-year survival rate for prostate cancer patients presenting with bone metastases, as exhibited by Dr. Kaufman, is a dismal 1%. (Declaration of Clinton F. Merrill, Jr., M.D. attached as **Exhibit E**.)

**B.    Kaufman Suffers from Numerous Other Serious Medical Conditions that Have Worsened and Make Prison Overly Difficult for Elderly Inmates.**

In addition to metastatic prostate cancer, Dr. Kaufman suffers from multiple serious, chronic medical conditions and his physical health is deteriorating because of the aging process. These conditions will continue to worsen making it difficult for him to provide self-care and placing him at risk for serious complications and death if he contracts COVID-19. Kaufman's additional diagnoses include:

- *Severe peripheral arterial disease, longstanding peripheral vascular disease, and atherosclerosis.* (Medical Records attached as **Exhibit B**, at 1, 6, 18; Ex. D, at 9, 69, 94, 212, 216.) Dr. Kaufman has "severe stenosis of superficial

---

[2] *Stage 4 Prostate Cancer*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/stage-4-prostate-cancer/symptoms-causes/syc-20377966 (last accessed Apr. 20, 2020).

[3] *Id.*

[4] *Prostate Cancer Survival Rates*, Prostate Cancer Foundation, https://www.pcf.org/about-prostate-cancer/what-is-prostate-cancer/prostate-cancer-survival-rates/ (last accessed Apr. 20, 2020).

femoral arteries bilaterally." (Ex. B, at 4–6.) Doppler studies in 2019 showed severe stenosis in his left lower extremity and moderate stenosis in his right lower extremity. (Ex. B, at 12–13; Ex. D, at 212, 216.) He has a history of heart surgery and coronary artery bypass graft. (Ex. B, at 1.) Kaufman's vascular disease and compromised circulation impact circulation to his lower extremities (causing ulcers and weakness in his feet), and place him at risk for heart attack or stroke.[5] His circulation is so poor that a pulse could not be detected in either foot in February 2020. (Ex. D, at 177.)

- *Coronary artery disease, chronic complete occlusion of coronary artery.* (Ex. D, 43, 69, 138, 195, 197, 201–202.) Dr. Kaufman has a history of open-heart surgery and triple coronary artery bypass graft in 2000. (Ex. D, at 69.) On January 3, 2020, he complained of chest pressure and increased heart rate (pulse 162); he was hospitalized from January 3–8, 2020 to stabilize his heart rate and for monitoring. (Ex. D, at 194–206.) Dr. Kaufman has significant blockages in his heart valves and continues to experience chest pain and edema. (Ex. D, 43, 69, 138, 195, 197, 201–202.)

- *Vascular ulcers (painful sores on feet).* (Ex. B, at 7, 9–10, 18; Ex. D, at 27, 45–62, 88, 210.) Dr. Kaufman experiences painful sores on his feet that "will likely be difficult to heal without vascular intervention." (Ex. B, at 10.) These sores are painful, and they inhibit his walking and ability to put weight on his feet;

---

[5] *Peripheral Artery Disease*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/peripheral-artery-disease/symptoms-causes/syc-20350557 (last accessed Apr. 20, 2020).

he requires alternate shoes. (Ex. B, at 7; Ex. D, at 88.) He has battled these sores for at least one year. (Ex. D, at 175–178.)

- *Hypertension, hypothyroidism, and hyperlipidemia* requiring medication and regular monitoring. (Ex. B, at 9, 10; Ex. D, at 9, 94.)
- *Stage 3 Chronic Kidney Disease* requiring regular monitoring. (Ex. B, at 2, 16; Ex. D, at 38, 116, 138.)

Kaufman currently takes the following prescription medications: Alendronate (metastatic prostate cancer), aspirin (coronary atherosclerosis), Atorvastatin (hyperlipidemia), Bicalutamide (metastatic prostate cancer), Cilostazol (hyperlipidemia and coronary atherosclerosis), isosorbide mononitrate ER (hypertension, coronary atherosclerosis, chest pain), levothyroxine sodium (hypothyroidism), Lisinopril (hypertension), nitroglycerin (chest pain, hypertension, coronary atherosclerosis), Tamsulosin (metastatic prostate cancer). (Ex. D, at 4–5.)

Dr. Kaufman experiences frequent fatigue and weakness and he is confined to a wheelchair; he is unable to ambulate because of pain in his pelvis. (Ex. D, at 34, 8, 102–103, 155, 158.) He is a high risk for falls and fractures, and other dangerous skeletal-related events as discussed by Dr. Merrill, *supra* Section III.C. (Ex. D, at 155.) He often does not have the strength to push his wheelchair and requires others to assist him; there have been multiple instances where Kaufman has missed meals because no one would push him to the meal hall. He is having great difficulty caring for himself and experiencing recurrent bouts of diarrhea; he also wears adult diapers because of bladder incontinence. (Ex. D, at 27.) Dr. Kaufman requires housing on the

first floor and a lower bunk; he must also be in an air-conditioned unit and located close to the dining and medical facilities because of difficulties ambulating. (Ex. D, at 78, 102.)

The nature of Dr. Kaufman's serious medical conditions coupled with the effects of incarceration will only cause his overall physical condition to worsen as he ages. As his illnesses progress and his cancer treatment continues, he will become even more reliant on the assistance of others to complete activities of daily living.

## C. Medical Expert Confirms Kaufman's Terminal Diagnosis and High Risk of Death from COVID-19.

Dr. Clinton Merrill, Jr., a physician with 30 years' experience in medical oncology and hematology, reviewed Kaufman's medical records and confirmed the serious and terminal nature of his metastatic prostate cancer; a copy of his report has been attached as **Exhibit E**. Dr. Merrill opines that Kaufman's metastatic prostate cancer is incurable and further complicated by his "increased risk for skeletal-related events (SREs), which include pathological fractures, spinal cord compression and sever pain requiring radiotherapy or surgery"; these complications will reduce his quality of life. (Ex. E, at 2.) Moreover, "[o]ctogenarians with metastatic prostate cancer and SREs experience a 15-fold increased odds of mortality." (Ex. E, at 2.) Dr. Merrill concludes:

> due to his age and stage of his disease Mr. Kaufman has at best a 40% predicted one-year survival and a predicted 1% 5-year survival. It is therefore, more likely than not, that he will survive for less than 1 year.

(Ex. E, at 5.) The medical records and expert opinion of Dr. Merrill directly and overwhelmingly contradict the BOP's finding that Dr. Kaufman does not qualify for compassionate release.

Dr. Merrill also determined that "Kaufman's medical care to date has not met the standard of medical care that should be expected for any patient with newly diagnosed metastatic prostate cancer." (Ex. E, at 4.) Kaufman has not received the "appropriate therapy" and the form of androgen deprivation therapy (ADT) provided (bicalutamide) "is not sufficient in this regard." (Ex. E, at 4.) Based on Dr. Merrill's review, Kaufman has not received appropriate therapies or consultations as ordered, which poses further dangers to Kaufman since "timely" treatments may decrease his risk of SREs and improve survival rates. (Ex. E, at 4.) Finally, Dr. Kaufman faces grave consequences should he contract COVID-19:

> Given Mr. Kaufman's age, cancer diagnosis, and multiple other comorbidities he is at extremely high risk for contracting COVID-19. These same factors place Mr. Kaufman at a high risk of dying from COVID-19 should he contract the disease.

(Ex. E, at 5.) Indeed, Dr. Kaufman is suffering from a terminal illness and the BOP's failure to provide even the basic standard of care is further reducing his already diminished quality of life. If he were to contract COVID-19, he would not survive.

**D.      COVID-19 Threatens Vulnerable Persons Like Dr. Kaufman.**

As of June 15, 2020, there are approximately 2,085,769 confirmed cases COVID-19 in the United States and 115,644 deaths.[6] In some people, the virus can present as a mild illness causing fever, shortness of breath, and a cough.[7] However, people like Dr. Kaufman are at a higher risk for developing "more serious complications" from COVID-19.[8] Specifically, people over 65 years and older, people with chronic lung disease or asthma, people with heart conditions, and those who are immunocompromised (including a history of smoking, cancer, and immune deficiencies) are at a higher risk of developing serious and potentially fatal complications, and these people are encouraged to protect themselves by maintaining personal space, avoiding crowds, frequent hand washing, cleaning and disinfecting surfaces frequently, and staying home.[9]

According to the CDC, having one underlying health condition places people at increased risk of hospitalization and intensive care unit admission:

> The percentage of COVID-19 patients with at least one underlying health condition or risk factor was higher among those requiring intensive care unit (ICU) admission (358 of 457, 78%) and those

---

[6] *Cases in the U.S.*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last accessed June 16, 2020).

[7] *COVID-19 Symptoms*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last accessed Apr. 20, 2020).

[8] *People Who Are At A Higher Risk*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed Apr. 20, 2020); *COVID-19 Symptoms*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last accessed Apr. 20, 2020).

[9] *People Who Are At A Higher Risk*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed Apr. 20, 2020).

requiring hospitalization without ICU admission (732 of 1,037, 71%) than that among those who were not hospitalized (1,388 of 5,143, 27%). The most commonly reported conditions were diabetes mellitus, chronic lung disease, and cardiovascular disease.[10]

Dr. Kaufman is over the age of 65, immunocompromised because of treatment for metastatic prostate cancer, a longstanding history of cardiac conditions, hypertension, and chronic kidney failure—he presents with multiple risk factors expressly identified by the CDC that place him at increased risk for serious complications and death if he contracts COVID-19.

### E.   Rapidly Rising COVID-19 Infection Rates in Prisons and Jails Paint Dire Picture for Medically Vulnerable Inmates.

Conditions of confinement create the ideal environment for transmitting contagious diseases like COVID-19 given the lack of sufficient handwashing areas, crowding, rationed access to clean laundry and soap, delays in medical evaluation and treatment, and insufficient infection control measures.[11] While the BOP has implemented modified operations, including restricting visitations, staggering recreation and meal times, and limiting inmate movement, this is insufficient to provide the safe and sanitary conditions necessary to combat the spread of COVID-

---

[10] Morbidity and Mortality Weekly Report, Centers for Disease Control and Prevention, *Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019—United States, February 12–March 28, 2020*, (Apr. 3, 2020, 69(13); 382–386), *available at* https://www.cdc.gov/mmwr/volumes/69/wr/mm6913e2.htm?s_cid=mm6913e2_w (emphasis added).

[11] Joseph A. Bick, *Infection Control in Jails and Prisons*, 45(8) Clinical Infectious Diseases 1047, 1047 (2007), *available at* https://academic.oup.com/cid/article/45/8/1047/344842.

19.[12] *See, e.g., United States v. Rodriguez*, 2020 U.S. Dist. LEXIS 58718, *21–23 (E.D. Pa. Apr. 1, 2020) (discussing the insufficiency of BOP's containment measures).

### 1.    Undertesting and Underreporting by BOP.

As of June 15, 2020, there are 1220 active inmate cases of COVID-19, 4918 inmates have recovered, and there have been 85 inmate deaths.[13] In other words, 6223 of the 146,638 BOP inmates (the current census) have had COVID-19—that is approximately 4.24% of the BOP population. There are 168 active staff cases, 498 staff have recovered, and there has been one staff death.[14]

Dr. Kaufman is housed at Butner FMC. As of June 16, 2020, there are five active inmate cases and four staff cases of COVID-19 at Butner FMC.[15] The Butner Federal Correctional Complex consists of FCI Butner Low, Medium I, and Medium II. Currently, Butner Low FCI has the highest number of active inmate cases in the BOP with 613 active inmate cases and 11 inmate deaths; there are 20 active inmate cases at Butner Medium I, 193 inmates have recovered and 6 inmates have died.[16]

Testing by the BOP has been "grossly insufficient" and many believe the reports are underrepresenting the number of actual cases.[17] When prisons and jails

---

[12] *See BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed Apr. 8, 2020).
[13] *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed June 16, 2020).
[14] *Id*.
[15] *Id*.
[16] *Id*.
[17] Walter Pavlo, *Bureau of Prisons Underreporting COVID-19 Outbreaks in Prison*, Forbes, (Apr. 1, 2020), https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisons-underreporting-outbreaks-in-prison/#438077327ba3

implement widespread testing, they find alarming rates of infection among inmates.[18] When mass testing was implemented in four state prison systems (Arkansas, North Carolina, Ohio, and Virginia), 96% of inmates that tested positive were asymptomatic.[19] As of mid-June 2020, the BOP has started reporting the number of inmate tests on its website: of the 16,839 completed inmate tests, 6060 inmates tested positive—approximately 40 percent of inmates who were tested are positive for COVID-19.[20]

Kaufman's placement at a federal medical center is also irrelevant as evidenced by the crisis facing other federal medical centers. As of June 16, 2020, Fort Worth FMC has 29 active inmate cases and 5 staff cases, 11 inmate deaths, and 584 inmates have recovered—it has the fifth highest number of confirmed positive inmate tests in the BOP system, right behind Butner Low FCI (which is fourth).[21] The dire situation at Fort Worth FMC makes clear that status as a FMC provides no advantage in terms of inmate safety.[22]

---

[18] Cary Aspinwall & Joseph Neff, *These Prisons Are Doing Mass Testing For COVID-19—And Finding Mass Infections*, Marshall Project (Apr. 24, 2020), https://www.themarshallproject.org/2020/04/24/these-prisons-are-doing-mass-testing-for-covid-19-and-finding-mass-infections.

[19] Linda So & Grant Smith, *In Four U.S. State Prisons, Nearly 3,300 Inmates Test Positive For Coronavirus—96% Without Symptoms*, Reuters (Apr. 25, 2020), https://www.reuters.com/article/us-health-coronavirus-prisons-testing-in/in-four-u-s-state-prisons-nearly-3300-inmates-test-positive-for-coronavirus-96-without-symptoms-idUSKCN2270RX.

[20] *COVID-19 Cases*, *supra* note 15.

[21] *Id.*

[22] Scott Gordon, *COVID-19 Cases Nearly Quadruple Inside For Worth Federal Medical Prison*, (Apr. 23, 2020), https://www.nbcdfw.com/news/coronavirus/covid-19-cases-quadruple-to-132-at-fort-worth-federal-prison/2356912/; Mike Wilson, *3 Deaths and Rampant Infections At A Fort Worth Lockup Are Fueling Criticism Of*

2.      **BOP Staff Highlight Facilities' Failures to Comply with CDC Guidance and BOP's Action Plan.**

BOP staff from multiple facilities have cast doubt about the measures being implemented and the safety of staff and inmates. BOP staff have reported shortages of masks, including when transporting sick inmates; counterfeit N95 masks; shortages of gloves and other PPE; and reports of wardens telling staff to remove their masks while working.[23] Staff at FMC Carswell in Texas filed a whistleblower complaint in April alleging the BOP "knowingly misleads the American public" about the conditions within the prisons and is taking a "cavalier approach" to quarantine that is placing staff and inmates at risk by requiring staff to continue coming to work after exposure to an infected inmate and allowing inmates to continue congregating in groups.[24] The national president of the union for BOP staff also filed an Imminent Danger Report with OSHA, and employees at FCI Oakdale in Louisiana joined a class-action lawsuit against the federal government alleging they were exposed to the virus because they lacked necessary equipment.[25] These are just a few of the many

---

*How Federal Prisons Are Handling The Pandemic*, (Apr. 29, 2020), https://www.dallasnews.com/news/public-health/2020/04/29/3-deaths-and-rampant-infections-at-a-fort-worth-lockup-are-fueling-criticism-of-how-federal-prisons-are-handling-the-pandemic/.

[23] Keegan Hamilton & Daniel Newhauser, *Federal Prison Staff Say the Government Is "Getting Hustled" With Bogus Coronavirus Masks*, Vice, (Apr. 21, 2020), https://www.vice.com/en_us/article/884z4g/federal-prison-staff-say-the-government-is-getting-hustled-with-bogus-coronavirus-masks.

[24]American Federation of Gov't Employees, Council of Prison Locals 33, FMC Carswell Local 1006, Letter to Senator John Cornyn (Apr. 7, 2020), *available at* https://www.documentcloud.org/documents/6879694-2020-04-07-14-16-14.html.

[25] https://www.documentcloud.org/documents/6827335-AFGE-OSHA-Complaint-Against-Bureau-of-Prisons.html; Keegan Hamilton & Daniel Newhauser, *Federal Prison Staff Say the Government Is "Getting Hustled" With Bogus Coronavirus*

instances where staff and union officials have contradicted the BOP's claim that it is following its own action plan and the CDC guidelines.[26]

The shortage of equipment and physical and practical limitations of a correctional environment support Dr. Kaufman's need for compassionate release— there is a significant likelihood that he will develop serious and life-threatening complications if he is exposed to COVID-19 while incarcerated.

## IV.   Statement Of Questions Involved

In this case, the Court must determine whether "extraordinary and compelling reasons" warrant a sentence reduction after consideration of sentencing factors under 18 U.S.C. § 3553(a), the Sentencing Commission's policy statement on reduction of sentence in U.S.S.G. § 1B1.13, and after determining Dr. Kaufman is not a danger to the safety of others or the community.

## V.   Argument

### A.   First Step Act Affords This Court Jurisdiction to Modify Dr. Kaufman's Sentence.

On December 21, 2018, the President signed the First Step Act ("FSA") into law and removed a major obstacle from judicial review of sentences to determine whether "extraordinary and compelling reasons" exist that make a sentence

---

*Masks*, Vice, (Apr. 21, 2020), https://www.vice.com/en_us/article/884z4g/federal-prison-staff-say-the-government-is-getting-hustled-with-bogus-coronavirus-masks.
[26] Nick Pinto, *Internal Prison Guard Email Contradicts Government's Claims to Judges About Containing Coronavirus at Federal Detention Center*, Intercept, (Apr. 10, 2020), https://theintercept.com/2020/04/10/prison-coronavirus-mdc-bop/ (discussing email of MDC Brooklyn correctional staff calling into question BOP's alleged practices for containing coronavirus spread).

reduction "sufficient, but not greater than necessary," under 18 U.S.C. § 3553(a). First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). Under the FSA, this Court is afforded jurisdiction to make the § 3553(a) determination of whether Kaufman's time in prison and continued confinement during the COVID-19 pandemic is "sufficient, but not greater than necessary" to accomplish the goals of sentencing and warrants a reduction in sentence or immediate release to home confinement.

This Court has discretion to reduce the term of imprisonment imposed in this case based on § 3582(c)(1)(A)(i), which states in relevant part that the Court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction[.]"

Title 28 U.S.C. § 994 authorizes the U.S. Sentencing Commission to define "extraordinary and compelling reasons,"[27] which it did in the Commentary to U.S.S.G. § 1B1.13. Application Note 1 to § 1B1.13 to the Sentencing Guidelines defines "extraordinary and compelling reasons" as:

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> > (A) **Medical Condition of the Defendant**.—
> > > (i) The defendant is suffering from a terminal illness (*i.e.*,

---

[27] *See* 28 U.S.C. § 994(t) "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of [T]itle 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
. . .

(B) **Age of the Defendant**.—The defendant

(i) is at least 65 years old;

(ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

(iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

. . .

(D) **Other Reasons**.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, comment. n.1(A)(i) (emphasis added).

While the Sentencing Commission Policy Statement on reductions of sentence lists categories of "extraordinary and compelling reasons" there is no restrictive list or combination of factors that can warrant release. U.S.S.G. § 1B1.13, comment. n.1(A)–(D). Moreover, the reason for seeking a reduction in sentence "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13, Appl. Note 2.

After concluding Dr. Kaufman presents "extraordinary and compelling reasons," the Court must also find that a sentence reduction is consistent the Sentencing Commission's policy statement on reduction of sentence in U.S.S.G. § 1B1.13, that Kaufman is not a danger to the safety of others or the community (18

U.S.C. § 3142(g)), and that a reduction is consistent with the sentencing factors under 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

## B. Dr. Kaufman Exhausted Administrative Remedies.

As a preliminary matter, a defendant is required to exhaust administrative remedies prior to filing a motion with the court for compassionate release. 18 U.S.C. § 3582(c)(1)(A). On March 30, 2020, Dr. Kaufman requested the BOP to move under 18 U.S.C. § 3582(c)(1)(A) for a reduction of his sentence. (Ex. A.) The BOP denied his request by letter dated April 21, 2020, stating that concerns about potential exposure or the possibility of contracting COVID-19 do not warrant early release. (Ex. A.) The BOP also stated that Kaufman "does not meet the criteria for Terminal Medical Conditions or Debilitated Medical Condition" as set forth in Program Statement 5050.50, which is different than the criteria used by this Court in U.S.S.G. § 1B1.13. (Ex. A.) Accordingly, Dr. Kaufman has exhausted his administrative remedies and he may now bring his request for a sentence reduction directly to this Court.

## C. Kaufman Presents "Extraordinary and Compelling Reasons" Under 18 U.S.C. § 3582(c)(1)(A).

Dr. Kaufman easily meets the threshold requirement of "extraordinary and compelling reasons" warranting a reduction in his sentence to time served or, in the alternative, home confinement because he has a terminal illness and meets the age-related requirements within the meaning of Application Note 1(A)(i) and (B) of U.S.S.G. § 1B1.13. Moreover, Kaufman's terminal illness and chronic conditions, combined with the heightened risk of complications from COVID-19 present "other reasons" as contemplated under Application Note 1(D). Therefore, this Court has

multiple bases to conclude that Kaufman presents extraordinary and compelling reasons for compassionate release.

### 1. Metastatic Prostate Cancer is Expressly Recognized As An "Extraordinary and Compelling" Reason.

U.S.S.G. § 1B1.13, Application Note 1(A)(i) provides specific examples of terminal illnesses that qualify as "extraordinary and compelling" for purposes of § 1B1.13: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." Dr. Kaufman's diagnosis of stage IV metastatic prostate cancer is a "metastatic solid-tumor cancer" and, therefore, is expressly recognized as an "extraordinary and compelling" reason in support of compassionate release. Because the Sentencing Guidelines include metastatic cancers—and do not require a specific prognosis of life expectancy—as an example of extraordinary and compelling circumstances, the Court need only conclude that Kaufman has the diagnosis of metastatic prostate cancer (which has been established by the medical records and supported by expert medical opinion) and recognize that it is a terminal illness. Dr. Kaufman's diagnosis is confirmed by medical records and expressly identified as terminal by expert physician Dr. Merrill, who predicts that "more likely than not, that he will survive for less than 1 years." (Ex. E, at 5.)

### 2. Kaufman Satisfies the "Age of Defendant" Criteria.

Dr. Kaufman meets the criteria as set forth by U.S.S.G. § 1B1.13, Application Note 1(B)—Age of the Defendant and, therefore, is entitled to a reduction in sentence. First, Kaufman is at least 65 years old; he is currently 83 years old. Second, he is experiencing serious deterioration in physical or mental health because of the aging

process. As fully discussed in Section II, Dr. Kaufman is suffering from multiple chronic, serious medical conditions, including a terminal illness, which have worsened over time and will continue to worsen as he ages. He is confined to a wheelchair with multiple conditions that are incurable—his ability to provide self-care is substantially diminished. He cannot push himself to the dining hall for meals, he is a high risk for falls and fractures, and his bladder incontinence requires him to wear adult diapers. He has nonhealing wounds on his feet, kidney failure, chronic obstruction of his coronary artery, and he is undergoing treatment for stage 4 metastatic prostate cancer. In addition, he has hypertension, hyperlipidemia, and hypothyroidism, which all require regular monitoring and medication. Finally, Kaufman has served at least 10 years of term of imprisonment; he has been in prison since January 23, 2006.

A Southern District of Texas case considered an inmate's request for compassionate release under the age-related criteria of § 1B1.13. In *United States v. Cantu-Rivera*, the defendant was serving concurrent terms of life imprisonment for charges of conspiracy to possess with intent to distribute cocaine, and other related offenses. *United States v. Cantu-Rivera*, 2019 WL 2578272, at *1 (S.D. Tex., June 24, 2019). The court granted compassionate release based on the age-related definition of "extraordinary and compelling reasons" as set forth in U.S.S.G, § 1B1.13, Application Note 1(B). Cantu-Rivera was 69 years old, was "experiencing serious deterioration in physical health because of the aging process (arthritic conditions in

multiple joints, cataracts, diabetes, prostrate conditions), and he has served 30 years in prison." *Id.*

*Cantu-Rivera* is very instructive in this instance. Like *Cantu-Rivera*, Kaufman is also over the age of 65 and meets the requirement for serving at least 10 years of his sentence. However, Kaufman suffers from numerous other medical conditions, including age-related conditions like peripheral vascular disease, atherosclerosis, declining kidney function, and stage 4 metastatic prostate cancer, making Kaufman's physical health status much more serious than Cantu-Rivera's. Dr. Kaufman is suffering from a terminal illness and his health is deteriorating because of the aging process. He presents multiple grounds for compassionate release.

### 3. COVID-19 Is An "Extraordinary and Compelling" Reason.

Courts across the country have examined and granted motions for compassionate release finding that the combination of an inmate's medical conditions and the dangers associated with COVID-19 constitute "extraordinary and compelling reasons." *See, e.g.*, *United States v. Muniz*, 4:09-cr-0199-1, 2020 U.S. Dist. LEXIS 59255 (S.D. Tex. Mar. 30, 2020) (granting compassionate release to defendant with serious medical conditions, including kidney disease, who was vulnerable to severe illness from COVID-19); *United States v. Etzel*, No. 6:17-cr-00001-AA, 2020 U.S. Dist. LEXIS 77198 (D. Ore. May 1, 2020) (granting compassionate release despite no cases at inmate's facility); *United States v. Sanchez*, 18-cr-00140-VLB-11, 2020 U.S. Dist. LEXIS 70802 (D. Conn. Apr. 22, 2020) (finding extraordinary and compelling reasons

supporting compassionate release where defendant had comorbidity and increased risk of developing complications from COVID-19).

Courts have also granted compassionate release to elderly defendants with similar combinations of ailments as Kaufman. *See, e.g., United States v. Bellamy,* No. 15-165(8) (JRT/LIB), 2019 U.S. Dist. LEXIS 124219 (D. Minn. July 25, 2019) (granting compassionate release to 71 year-old wheelchair bound defendant who had heart problems, and suffered from diabetic kidney disease, among other conditions); *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 U.S. Dist. LEXIS 107850, 2019 WL 2646663, at *2 (D. Ariz. June 27, 2019) (granting compassionate release to 81 year-old suffering from severe heart disease); *United States v. McGraw*, 2019 U.S. Dist. LEXIS 78370, 2019 WL 2059488, at *1-2 (S.D. Ind. May 9, 2019) (granting compassionate release to 72 year-old inmate with limited mobility, diabetes, kidney disease, Hepatitis C, and other issues).

These opinions are instructive for many reasons. First, they demonstrate that "persuasive precedent for granting compassionate release under the current circumstances is overwhelming." *Samy v. United States*, 2020 U.S. Dist. LEXIS 66864, *10–11 (E.D. Mich. Apr. 16, 2020) (collecting cases granting compassionate release in light of medical reasons and COVID-19). Second, they repeatedly highlight the BOP's inability to prevent the spread of infection:

> Many of the recommended measures to prevent infection are impossible or infeasible in prison. The government's assurances that the BOP's "extraordinary actions" can protect inmates ring hollow given that the measures have already failed to prevent transmission of the disease at the facility where [the inmate] is housed. . . . Indeed, Congress and the Department of Justice are increasingly recognizing the danger of

COVID-19 outbreaks in prison and encouraging steps to release some inmates.

*United States v. Rodriguez*, 2020 U.S. Dist. LEXIS 58718, *21–23 (E.D. Pa. Apr. 1, 2020). If Kaufman is not released from the dangerous conditions of prison, he will be exposed to a life-threatening virus—there must be a reasonable balance between the punishment originally ordered and the unnecessary risk of sickness and death should Kaufman be forced to continue serving his sentence at a correctional facility. Indeed, Kaufman's terminal illness, other medical conditions, and the threat of COVID-19 pose extraordinary and compelling reasons for compassionate release.

## D. Reducing Kaufman's Sentence Would Be Consistent With § 1B1.13 Policy Statement and Attorney General Barr's Memorandum.

Section 3582(c)(1)(A) requires that the reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission": U.S.S.G. § 1B1.13. Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A). In addition to providing an extraordinary and compelling reasons to warrant a sentence reduction and the consideration of § 3553(a) factors, the Court must determine that Kaufman "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

It is evident from a review of the § 3142(g) factors that Kaufman presents no danger to any person or the community. He has no history of violence; he is 83 years old and he is confined to a wheelchair. He is no longer a licensed clinical social worker, so he is physically and practically incapable of participating in activities similar to those underlying his offenses.

1.      **Compassionate Release Granted in *United States v. Ebbers*.**

In January 2020, a federal district court in New York granted compassionate release to Bernard Ebbers. *U.S. v. Ebbers*, 2020 U.S. Dist. LEXIS 3746 (S.D.N.Y. Jan. 8, 2020). Ebbers was the former CEO of WorldCom, Inc. who was sentenced to 25 years in prison for securities fraud that resulted in losses estimated around $2 billion. *Id.* at *1. Ebbers moved for compassionate release under the First Step Act arguing that he presented extraordinary and compelling reasons for a reduction based on his age and serious health issues under U.S.S.G. § 1B1.13, Application Note 1(B), "Age of Defendant." *Id.* at *13. The court ultimately concluded that his medical conditions were "extraordinary and compelling reasons" and that he posed no risk to society, so a sentence reduction would be compatible with policy statements. *Id.* at *25. Lastly, the court concluded that the § 3553(a) factors "do not outweigh its finding that Ebbers's deteriorating health and old age qualify him for compassionate release." *Id.* at *25.

> Ebbers's present poor health does not reduce his culpability or diminish the harm he caused. His crimes were egregious; but having been incarcerated from aged 65 to aged 78, during what should have been his golden years, and having reached a point where his quality of life is quite low, releasing Ebbers will not prevent him from being adequately punished nor will it discount the seriousness of his offense or diminish the message that his crimes were unacceptable. It also will not prevent his sentence from serving as a general deterrent to white-collar criminal conduct. Thirteen years of incarceration—up to the point of approaching death—is not a slap on the wrist; it seems likely that no one who might be considering committing accounting fraud would view his sentence as lenient. Far from it—Ebbers has essentially served the life sentence that the sentencing court predicted it had imposed.

*Id.*

2. **Nature and Circumstance of Offense, and History and Characteristics, 18 U.S.C. §§ 3142(g)(1), (g)(3).**

Aside from the offenses in this case, Kaufman has no other felony convictions. Before his incarceration, Kaufman was heavily involved in his family and community, and he has no history of violence. Dr. Kaufman is an 83-year old man facing significant health issues, including treatment for metastatic prostate cancer in the middle of a pandemic that could have devastating impacts on his health. His weakened and declining physical condition is such that he would pose no danger to anyone. He will be unable to work because of his failing health, age, and physical condition. Kaufman will support himself financially through Social Security and Medicare benefits. If released, he will live with his son David Kaufman in St. Louis, Missouri. As evidenced by the letters of support attached as **Exhibit C**, Dr. Kaufman will have overwhelming support.

3. **Kaufman's Release Would Pose No Danger to Any Person or the Community, 18 U.S.C. § 3142(g)(4).**

Kaufman was a first-time felony offender with no history of violence. His medical conditions and need to remain isolated from others during this pandemic would ensure he poses no danger to anyone—he is confined to a wheelchair and he is physically and practically incapable of working in the healthcare field. Kaufman's other health conditions, including his vascular ulcers, coronary artery occlusions, history of cardiac surgery, and hypertension put him at increased risk for cardiac injury, including heart attack and stroke, and his fatigue and overall age contribute to fatigue and his limited mobility.

Despite Kaufman's cancer and deteriorating health, if the Court is concerned about any risk to the public, it can manage those risks by fashioning appropriate terms of his supervised release. *See* 18 U.S.C. § 3142(g) (noting conditions of release can mitigate danger to the community); *see also, U.S. v. Gray*, 2019 U.S. Dist. LEXIS 160593, at **12–13 (S.D. Ind. Sept. 20, 2019) (finding that post-release supervision would serve "as a sanction and general deterrent, appropriately recognizing the seriousness" of the defendant's conduct).

If released, Dr. Kaufman has a stable home to live in and he would receive overwhelming support from friends and family. (Ex. C.) There can be no question that he would be safer at home at this time. Given Kaufman's physically weakened state, cancer diagnosis, and his inability to participate in the healthcare field, granting Kaufman's request for compassionate release would be consistent with the § 1B1.13 Policy Statement—he poses no danger.

**E.  With Full Consideration of the § 3553(a) Factors, Kaufman's Time Served Constitutes A Sentence Sufficient but Not Greater Than Necessary to Accomplish the Goals of Sentencing.**

A review of the § 3553(a) factors, to the extent that they apply, weigh in favor of an immediate reduction in sentence—compassionate release would not undermine the goals of Kaufman's original sentence and it is the only way to protect Dr. Kaufman from contracting COVID-19, which he would not be expected to recover.

**1.  Nature and Circumstances of the Offense and History and Characteristics of Kaufman, § 3553(a)(1).**

Kaufman was a first-time felony offender with no history of violence. Since Kaufman's sentencing, circumstances have changed such that continued

imprisonment would make his sentence greater than necessary to serve its purpose. After almost 15 years in prison, Dr. Kaufman is now 83 years old and suffering from Stage 4 prostate cancer. His condition will only continue to worsen (treatments only address symptoms and he likely has less than one year to live) and his dependence on others for assistance with activities of daily living and need for additional medical and staffing resources will only increase. (*See* Ex. E.) Moreover, if Dr. Kaufman contracts COVID-19—which is highly likely given the conditions in prison and his advanced age and compromised immune system—he would not recover. (Ex. E.) Kaufman's cancer diagnosis, other medical conditions, and vulnerability to COVID-19 weigh in favor of granting compassionate release and immediately reducing his sentence or releasing him to home confinement. Continued incarceration serves no further purpose.

## 2. Compassionate Release Would Not Diminish the Seriousness of the Offense, Respect for the Law, and Goal of Providing Just Punishment, § 3553(a)(2)(A).

Similar to the observations made by the *Ebbers's* court, Kaufman's terminal illness does not reduce his culpability or diminish the harm he imposed on his victims. *See Ebbers*, 2020 U.S. LEXIS 3746, at *25. However, Kaufman has been incarcerated since he was 70 years old—he is now 83 years old and he has spent "what should have been his golden years" incarcerated. *Id*. His complicated medical conditions have significantly diminished his quality of life. (Ex. E.) As in *Ebbers*, releasing Kaufman does not prevent him from being adequately punished—he has spent the last almost 15 years in prison, most of the time being seriously ill, and his incarceration has led

"up to the point of approaching death." *Id*. That "is not a slap on the wrist . . . [he] has essentially served the life sentence that the sentencing court predicted it had imposed." *Id*. Reducing Kaufman's sentence would bring about the same result: Kaufman has spent almost 15 years in prison and, if released, would still be under significant supervision and spend his final years imprisoned and battling his illness— it is still a life sentence.

Keeping Kaufman in prison will not undo the harm to his victims; however, Kaufman cannot impose any further harm and the "compassionate thing to do in this case is to release [Kaufman] early, consistent with the intent of Congress when it passed the First Step Act." *See id*., at *26 (granting Ebbers's request for compassionate release).

### 3. Compassionate Release Would Not Diminish the Deterrent Effect Kaufman's Sentence Has on the Criminal Conduct of Others, § 3553(a)(2)(B).

Granting Kaufman's compassionate release does not diminish the deterrent effect of his sentence. His arrest and conviction were heavily publicized, and his sentence communicated, in no uncertain terms, that any similar criminal conduct would be met with significant terms of imprisonment proportional to the crimes.

Granting Dr Kaufman compassionate release does not diminish the message communicated by his sentence; he has served almost 15 years in prison while battling serious medical illnesses and he now faces the harsh reality that he has terminal Stage 4 prostate cancer.

27

### 4.      Public Would Not Be Harmed by Further Crimes, § 3553(a)(2)(C).

Kaufman is physically and practically incapable of imposing further harm on the public. His Stage 4 prostate cancer and other debilitating medical conditions have left him in a weakened state and he no longer is a licensed clinical social worker. While it would seem impossible for Kaufman to harm the public by committing further crimes, if the Court has doubts it is free to fashion appropriate conditions on his supervision to mitigate any risk. 18 U.S.C. § 3142(g) (noting conditions of release can mitigate danger to the community).

Dr. Kaufman is an 83-year old first-time offender. Statistically, he poses an extremely low risk of reoffending: "incarcerated individuals 50 years and older have a 15% re-arrest rate, compared to 41% re-arrest rate for the general federal prison population."[28] Kaufman poses no risk of reoffending, which weighs in favor of granting compassionate release.

### 5.      Sentence Reduction Would Afford Kaufman Medical Care in the Most Effective Manner, § 3553(a)(2)(D).

Kaufman's health has and will continue to deteriorate, and he will require more assistance physically and medically leading up to his death. The Court must also consider the need "to provide [Kaufman] with . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The BOP is likely to claim it is capable of providing adequate medical care and treatment for Kaufman, but that claim seems

---

[28] https://www.schatz.senate.gov/download/compassionate-release-letter-2017 (last accessed Apr. 20, 2020).

unlikely given the nature of his Stage 4 cancer, serious medical conditions, the dangerous and potentially fatal complications that can arise from COVID-19, and the challenges of preventing the spread of the virus in a correctional facility environment.

Granting Kaufman compassionate release would allow him to receive care in the community, which would be more effective, timely, and less burdensome on the BOP, especially considering that he is not currently receiving even the minimal standard of care. (*See* Ex. E.) Even if the BOP can provide competent care, Kaufman's conditions are "extraordinary" under § 3553(a)(2)(D) and he is entitled to "the most effective manner" of treatment. In the Eighth Circuit case of *United States v. Wadena*, 470 F.3d 735 (8th Cir. 2006), the court recognized that while the defendant inmate could obtain dialysis treatments and medical care in prison, "[18 U.S.C.] § 3553(a)(2)(D) explicitly states that the effective provision of necessary medical care is an appropriate factor for the district court's consideration in sentencing." *Id*. at 739. Moreover, "[t]he district court had the discretion to decide that it would be more efficient and effective for [the prisoner] to receive treatment from his current healthcare provider." *Id*.

In this case, the most effective treatment for Kaufman is outside of prison where he can receive the support and comfort of loved ones and necessary treatments or hospice care for his Stage 4 prostate cancer. Granting Kaufman compassionate release would allow him to safely shelter in place, not only lowering his risk of being infected but his risk of transmitting the virus to others.

### 6.   Relevant Policy Statement Favors Compassionate Release, § 3553(a)(5).

As discussed at length in Section IV.D, granting Kaufman compassionate release would be consistent with U.S.S.G. § 1B1.13. Reducing Kaufman's sentence would not undermine the goals of sentencing. Rather, it would demonstrate that an 83-year old man with multiple, chronic medical conditions who is confined to a wheelchair and who poses no danger to society, deserves compassion during a pandemic while he is also battling a terminal illness.

## VI.   <u>Conclusion</u>.

Dr. Kaufman presents extraordinary and compelling reasons in support of compassionate release as envisioned by the passage of the First Step Act. A reduction in his sentence is consistent with U.S. sentencing policy and he poses no danger to society. Moreover, granting compassionate release would not diminish the goals of sentencing under § 3553(a). Given the unprecedented situation facing our prison system, the courts, and the inmates, this Court must weigh the potential risks of keeping Kaufman incarcerated. Given his age, medical conditions, and prostate cancer diagnosis, this Court should conclude that Dr. Kaufman satisfies the requirements for compassionate release—it is inhumane and unnecessarily punitive to keep an 83-year old man with Stage 4 prostate cancer imprisoned given his deteriorating health and during the COVID-19 pandemic.

For the foregoing reasons, Dr. Kaufman respectfully requests that the Court reduce Kaufman's sentence to time served.

Respectfully submitted,

/s/ Zachary L. Newland
Zachary L. Newland
Senior Litigation Counsel
**Brandon Sample PLC**
P.O. Box 250
Rutland, Vermont 05702
Phone: (802) 444-4357
Fax:     (802) 779-9590
Email: zach@brandonsample.com
Texas Bar: 24088967
https://brandonsample.com

*Counsel for Arlan Dean Kaufman*

/s/ James Pratt
James R. Pratt #17716
Attorney for Defendant
445 N. Waco
Wichita, Kansas 67202
Ph: (316) 262-2600
Fax: (316) 262-2602
Jim@PrattLawLLC.com

*Local counsel for Arlan Dean Kaufman*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this

18th day of June 2020, via CM/ECF on all counsel of record.

## CERTIFICATE OF CONFERENCE

On June 18, 2020, AUSA Jared Maag advised that the United States is

unable to offer a position on this motion and will respond after it is filed.

/s/ James R. Pratt
JAMES R. PRATT