# Exhibit A



Via e-mail to SEA/ExecAssistant@bop.gov

March 30, 2020

Warden, FCI Seagoville
Federal Correctional Institution
2113 North Hwy 175
Seagoville, TX 75159

RE: *United States. v. Arlan Dean Kaufman*, No. 5:04-cr-40141-001 (D. Kansas)
Compassionate Release/Reduction in Sentence

Dear Warden:

I am writing on behalf of my client, Dr. Arlan Kaufman, BOP Register Number 19078-031, who is incarcerated at FCI Seagoville. Dr. Kaufman seeks "compassionate release" pursuant to Program Statement 5050.50, "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)," and U.S.S.G. § 1B1.13.

Under the BOP's Program Statement, "the Bureau of Prisons processes a request made by another person on behalf of an inmate in the same manner as inmate's request." BOP Program Statement No. 5050.50, at p. 3 (28 C.F.R. § 571.61(b)).

Further, section 603(b)(ii) of the First Step Act of 2018 provides that the BOP shall "accept and process a request for sentence reduction that has been prepared and submitted on the defendant's behalf by the defendant's attorney, partner, or family member." Accordingly, this request for compassionate release on behalf of Dr. Kaufman may be properly considered by the BOP.

As you are aware, Program Statement 5050.50 permits early release consideration for inmates who have a disease or condition with an end-of-life trajectory under 18 U.S.C. § 3582(d)(1), as well as inmates suffering from debilitating medical conditions. The U.S. Sentencing Guidelines permit early release consideration for inmates suffering from serious physical or medical conditions or functional impairments that diminish their ability to provide self-care within the environment of a correctional facility and for family circumstances. U.S.S.G. § 1B1.13, comment.

Dr. Kaufman is an 83-year old man with multiple, serious health issues including untreatable heart valve blockages, peripheral vascular disease, vascular ulcers, declining kidney health, hypertension, hyperlipidemia, and hypothyroidism; he is now confined to a wheelchair. Dr. Kaufman's serious physical and medical conditions diminish his ability to provide self-care within a correctional facility

Brandon Sample PLC           brandonsample.com           Tel: (802) 444-4357
P.O. Box 250                 clemency.com                Fax: (802) 779-9590
Rutland, VT 05702            sentencing.net              info@brandonsample.com

environment. In addition, because of Dr. Kaufman's age and serious medical conditions, he is particularly susceptible to death if exposed to COVID-19.

We are asking that Dr. Kaufman be considered by your office for compassionate release.

### 1. <u>Legal Authority for Compassionate Release</u>

The authority to reduce an inmate's sentence based on compassionate release grounds is based on the powers set out in 18 U.S.C. §3582(c). Section 3582 provides in part that:

> (c) **Modification of an Imposed Term of Imprisonment** – The court may not modify a term of imprisonment once it has been imposed except that –
> (1) in any case –
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>
>>> (i) extraordinary and compelling reason warrant such a reduction;
>>> …
>>
>> And that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The Senate Judiciary Committee's Report on the law which created the compassionate release authority explained the need for this provision of law, saying that:

> The first "safety valve" applies, regardless of the length of the sentence, to the unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner. In such a case, under subsection (c)(1)(A), the director of the Bureau of Prisons could petition the court for a reduction in the sentence, and the court could grant a reduction if it found that the reduction was justified by "extraordinary and compelling reasons" and was consistent with applicable



Warden, FCI Seagoville
Letter; March 30, 2020
Page 3 of 8

>policy statements issued by the Sentencing Commission.[1]

The Senate Report also noted, "[T]he Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by the changed circumstances. These would include cases of severe illness, [or] cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence."[2]

Policy statements issued by the U.S. Sentencing Commission provide separate additional implementing authority for compassionate release. The U.S. Sentencing Commission Guidelines § 1B1.13 and Commentary also provide that upon motion by the BOP under 18 U.S.C. § 3582(c), a district court may reduce an inmate's term of imprisonment after considering factors under § 3553(a) and concluding:

> (1)(A) extraordinary and compelling reasons warrant the reduction; or
> . . .
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

More specifically, the Commentary to U.S.S.C. § 1B1.13 provides:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>> (A) Medical Condition of the Defendant.—
>> . . .
>>> (ii) The defendant is—
>>>> (I) suffering from a serious physical or medical condition,
>>>> (II) suffering from a serious functional or cognitive impairment, or
>>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>> . . .
>> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons

---

[1] U.S. Senate Committee on the Judiciary, *Report on the Comprehensive Crime Control Act of 1983*, 98th Cong., 1st Sess., 1984, S. Rep. No. 225, p. 121. (emphasis added).

[2] *Id*. at p. 55.

> described in subdivisions (A) through (C).
>
> . . .
>
> 4. Motion by the Director of the Bureau of Prisons.—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

U.S.S.G. § 1B1.13 and Commentary (emphasis added).

Importantly here, according to the Sentencing Commission the reason for seeking a reduction in sentence does not have to have be new. According to the Sentencing Commission,

> 2. Foreseeability of Extraordinary and Compelling Reasons.—For purposes of this policy statement, an extraordinary and <u>compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment</u>. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

U.S.S.G. § 1B1.13, appl. Note 2 (emphasis added).

## 2. Dr. Kaufman's "Extraordinary and Compelling Reasons"

Dr. Kaufman is an 83-year old man with significant cardiac, vascular, and other medical conditions that put him at great risk for serious cardiac events, infection, and injury. His ability to provide self-care in a correctional facility is substantially diminished and he is not expected to recover. He is also at particular risk of death due to COVID-19 due to his current health and age. Accordingly, Dr. Kaufman presents "extraordinary and compelling reasons" warranting a reduction in sentence.

*Background and Personal History.*

On January 23, 2006, Dr. Kaufman was sentenced to 30 years imprisonment and three years of supervised release. (Amended Judgment, ECF No. 482.) He is currently located at FCI Seagoville. Kaufman is 83 years old; he has no criminal history and no history of violence.



*Dr. Kaufman's Medical Conditions*. Dr. Kaufman is 83 years old and has a history of multiple, serious medical conditions.

*Untreatable heart valve blockages*. In January 2020, Dr. Kaufman was hospitalized for five days in order to stabilize his heart rate. During this hospitalization, physicians diagnosed Kaufman with untreatable heart valve blockages.

*Peripheral vascular disease, vascular ulcers*. Kaufman suffers from peripheral vascular disease (PVD), which causes extremely poor circulation in his lower extremities. As a result of his PVD, Kaufman experiences significant pain and repeated instances of vascular ulcers. His PVD also causes extreme delays in wound healing and the ulcers he develops on his feet and lower extremities put him at increased risk for infection. These wounds and the corresponding pain contribute to difficulties ambulating.

In July 2019, a vascular physician prescribed pentoxifylline to treat Kaufman's vascular disease, but the BOP refused to allow the medication.

At this time, Dr. Kaufman is confined to a wheelchair; he cannot walk. He has missed numerous meals simply because no one would push him to the meal hall.

*Other conditions*. Kaufman also has a history of hypertension, hyperlipidemia, and hypothyroidism. His kidney function has also declined significantly. In addition, the BOP is currently investigating an abnormality in Dr. Kaufman's hip discovered during a bone scan.

Dr. Kaufman requires multiple medications and frequent monitoring and testing to manage his many medical conditions. The BOP is not equipped to provide appropriate care for Dr. Kaufman's serious medical conditions. Dr. Kaufman's medical conditions, coupled with his advancing age, put him at increased risk for significant progressive health issues which will only deteriorate more rapidly while incarcerated in a correctional facility.

*Increased risk of complications from COVID-19*. Given Dr. Kaufman's health status, he is at increased risk of fatal complications associated with COVID-19. The BOP cannot provide the safe, sanitary conditions necessary to prevent further deterioration of Dr. Kaufman's conditions, prevent risk of infection, and keep him safe during this pandemic.

Dr. Kaufman suffers from multiple serious physical and medical conditions and his ability to provide self-care in a correctional facility is substantially diminished. Dr. Kaufman will never recover from these conditions; they will only continue to worsen. The most effective manner for managing Dr. Kaufman's conditions and ongoing physical decline is outside of a correctional facility.



Compassionate release would afford Dr. Kaufman the opportunity to seek medical care outside the BOP system, which is not only the most effective manner of treatment, but also the most efficient and least expensive.

*Length of Sentence and Amount of Time Served*. Dr. Kaufman has served over 15 years of his 30-year sentence.

*Release Plans*. Upon release, Dr. Kaufman would reside in Goshen, Indiana with his daughter Cheryl Mast. He would receive medical care in the surrounding community. Kaufman would receive overwhelming support from family and friends ensuring a successful transition back into society.

*Early Release Would Not Minimize the Severity of the Offense*. Release at this time would not minimize the severity of the offense. Dr. Kaufman accepts full responsibility for his actions.

*Release Would Not Pose a Danger to the Safety of Persons or the Community*. Dr. Kaufman would pose no danger to the community or other persons. He has no prior criminal history and no history of violence. Kaufman is wheelchair bound and requires significant assistance to care for himself. Similarly, Dr. Kaufman would adhere to any conditions of release imposed as part of a reduction in his sentence.

Lastly, individuals "released under compassionate release have [a] 3.5% recidivism rate, the lowest rate among all those formerly incarcerated."[3]

## 3. Additional Considerations

Releasing Dr. Kaufman makes good fiscal sense for the Bureau of Prisons. The DOJ has acknowledged that the ever-expanding federal prison population and the budget of nearly $6.2 million that the BOP uses to keep federal prisoners locked up are unsustainable.

According to the Department's inspector general, the growing and aging federal prisons population consumes an ever-larger portion of the Department's budget, contributes to overcrowding that jeopardizes the safety of federal prisons, as well as the wellbeing of prisoners, and may force budget cuts to other DOJ components.[4]

---

[3] htttps://www.schatz.senate.gov/download/compassionate-release-letter-2017 (Accessed on January 23, 2019).

[4] *Top Management and Performance Challenges the Department of Justice—2012*, Memorandum from Michael E. Horowitz, Inspector General, DOJ, to the Attorney General and the Deputy Attorney General, DOJ, November 7, 2012, www.justice.gov/oig/challenges/2012.htm (Accessed



Moreover, the GAO Report to Congressional Requesters stated that in June 2017, the BOP's "health care obligations exceeded $1.3 billion fiscal year 2016."[5]

It is evident that as the inmate population increases, the health care costs increase as well. "According to BOP officials, the average cost to treat one inmate with new medication ranges from $30,000 to $60,000."[6]

One of the most readily available, feasible, and sensible steps the BOP can make to reduce federal prison expenditures would be to ensure that compassionate release functions as Congress intended. Increasing the number of dying or debilitated prisoners who are granted compassionate release would not markedly reduce the total federal prison population, but this would free the BOP from the unnecessary security costs of confining prisoners who pose a scant risk of harm to anyone due to their underlying medical conditions. The per capita cost of caring for a prisoner in one of the BOP's medical centers was $40,760, in FY 2010, compared with an overall per capita of $25,627.

A report by Attorney General Eric Holder in August 2013, noted that four months earlier[7], the Bureau of Prisons "expanded the medical criteria that will be considered for inmates seeking compassionate release." The Holder report in August 2013, also announced "revised criteria for other categories of inmates seeking reduced sentences.

This expansion includes elderly inmates and certain inmates who are the only possible caregiver for their dependents. In both cases, under revised policy, BOP would generally consider inmates who did not commit violent crimes and have served significant portions of their sentences. The sentencing judge would ultimately decide whether to reduce the sentence."[8]

I recognize many members of the public—and public officials as well—cannot accept the idea of early release. However, a criminal justice system that recognizes extraordinary circumstances may warrant mercy not only ensures accountability for those who commit crimes, it also ensures that sanctions are proportionate to the crime and further the goals of punishment.

---

January 23, 2019). The memorandum also notes that the BOP portion of the DOJ budget exceeds 25 percent.

[5] *Bureau of Prisons Better Planning and Evaluation Needed to Understand and Control Rising Inmate Health Care Costs*, GAO Report to Congressional Requesters. June 2017, https://www.gao.gov/assets/690/685544.pdf (Accessed on January 23, 2019).

[6] *Id.* at p. 24.

[7] U.S. Dep't of Justice, *The Federal Bureau of Prisons' Compassionate Release Program*.

[8] U.S. Dep't of Justice, *Smart on Crime: Reforming the Criminal Justice System for the 21st Century* (August 2013).



A just and proportionate prison sentence may become disproportionately severe considering changed circumstances. Dr. Kaufman's case presents the type of extraordinary and compelling circumstances that merit granting a sentence reduction in light of his deteriorating health.

### 4. <u>Conclusion</u>

Dr. Kaufman is an 83-year old man with significant cardiac, vascular, and other medical conditions that put him at great risk for serious cardiac events, infection, and other injuries. His ability to provide self-care in a correctional facility is substantially diminished. The impending threat of COVID-19 adds additional risks for Dr. Kaufman, including the risk of death considering his age and comprised health status.

Upon consideration of all factors, I respectfully submit that Dr. Kaufman warrants § 3582(c) consideration based upon extraordinary and compelling reasons as discussed herein. He poses zero threat to society due to his debilitating health. Dr. Kaufman should be granted compassionate release.

Please do not hesitate to contact me by email at brandon@brandonsample.com or by telephone at (802) 444-4357 if you have any questions about Dr. Kaufman's request. We look forward to hearing from you soon.

Sincerely,

Brandon Sample

Cc:   Dr. Arlan Kaufman
      File





U.S. Department of Justice

Federal Bureau of Prisons

*Federal Correctional Institution*

Seagoville, TX 75159

April 21, 2020

Brandon Sample, PLC
P.O. Box 250
Rutland, Vermont 05702

RE: KAUFMAN, Arlan Dean
    Reg. No.: 19078-031

Dear Brandon Sample:

This is in response to your correspondence dated March 30, 2020, regarding your client, Arlan Kaufman, Reg. No. 19078-031, an inmate currently confined at the Federal Correctional Institution (FCI) Seagoville, Texas. In your correspondence, you request a compassionate release on behalf of inmate Kaufman noting both extraordinary and compelling reasons as well as increased risk of complications due to COVID-19.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the Bureau of Prisons (BOP) to reduce a term of imprisonment for extraordinary or compelling reasons. Program Statement 5050.50, <u>Compassionate Release /Reduction in Sentence: Procedures for Implementation of 18 U.S.C. § 3582(c)(1)(A) and 4205(g)</u>, provides guidance on the types of circumstances which present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize you, like all of us, have legitimate concerns and fears about the

spread and effects of the virus; however, your concern about inmate Kaufman being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from his sentence. In addition, inmate Kaufman does not meet the criteria for Terminal Medical Conditions or Debilitated Medical Condition. Accordingly, the request for compassionate release on behalf of inmate Kaufman is denied at this time.

I trust this addresses your request for compassionate release on behalf of your client.

Sincerely,

*K Zook*

K. Zook
Warden