United States District Court
District Of Kansas

United States Of America,

  Plaintiff,

v.

Arlan Dean Kaufman

  Defendant.

Case No. 5:04-cr-40141-001

## Reply In Support Of Motion For Compassionate Release

### I. Introduction

Defendant, Arlan Kaufman ("Kaufman"), by and through undersigned counsel, respectfully submits this reply in support of his Motion for Compassionate Release (ECF No. 643) and in opposition to the Government's Response to Defendant's Motion for Compassionate Release (ECF No. 649).

As explained in Kaufman's moving papers and below, and as conceded by the Government, he presents extraordinary and compelling reasons for compassionate release and he poses no danger to the community under 18 U.S.C. § 3142(g). Ultimately, after a full consideration of the 18 U.S.C. § 3553(a) factors, this Court should conclude that Dr. Kaufman's time served constitutes a sentence sufficient but not greater than necessary to accomplish its goals. Dr. Kaufman respectfully requests that the Court grant his motion for compassionate release.

### II. Argument

In its Response, the Government concedes that Dr. Kaufman "presents a series of medical conditions that qualify as extraordinary and compelling circumstances for

this Court's consideration of a sentence reduction." (ECF No. 649, at 21.) The Government does not address Kaufman's analysis of U.S.S.G. § 1B1.13(2) or 18 U.S.C. § 3142(g) except to state that Kaufman's "age and infirmity rule out any continued dangerousness." (ECF NO. 649, at 23.) Therefore, the only remaining question before the Court is whether a balancing of § 3553(a) factors weigh in favor of compassionate release. While not minimizing the serious nature of Kaufman's crimes, it is clear the circumstances of this case warrant a reduction in sentence.

### A.  Congress Passed The First Step Act To Increase Use Of Compassionate Release.

Many members of the public—as well as public officials—cannot accept the idea of early release for convicted felons. However, a criminal justice system that respects human rights not only ensures accountability for those who commit crimes, it also makes certain that sanctions are proportionate to the crime and further the goals of incarceration. A just and proportionate prison sentence may become disproportionately severe in light of changed circumstances. Keeping a prisoner incarcerated past the point of serving a legitimate purpose begs the question of whether our motives are driven by retribution, deterrence, rehabilitation, or something else.

In February 2016, this Court granted compassionate release to Linda Kaufman, the wife and co-defendant of Dr. Kaufman. (ECF No. 637.) At the time, she was serving a 15-year sentence for her role in the offenses for which Dr. Kaufman was also convicted. Her release preceded the passage of the First Step Act; therefore, the BOP itself had to motion the court for a reduction in sentence. Given the rarity of

BOP-led compassionate release motions at the time of Mrs. Kaufman's release, it is alarming and confusing how the Government can support compassionate release for Mrs. Kaufman but oppose compassionate release for Dr. Kaufman. The Government argues that releasing Kaufman minimizes the severity of the crimes and does not promote respect for the law; however, just years ago the Government was willing to reduce his co-defendant's sentence for her role in those very same crimes.

Courts recognize that Congress intended to expand compassionate release and increase its frequency through the First Step Act. *See, e.g.*, *United States v. Bellamy*, 2019 U.S. Dist. LEXIS 124219, at *3 (D. Minn. July 25, 2019); *United States v. Sotelo*, 2019 U.S. Dist. LEXIS 135051, at *32 (E.D. Pa. Aug. 7, 2019); *United States v. Willis*, 2019 U.S. Dist. LEXIS 95783, at *3 (D.N.M. June 7, 2019); *United States v. Beck*, 2019 U.S. Dist. LEXIS 108542, at *15-16 (M.D.N.C. June 28, 2019); *United States v. Johns*, 2019 U.S. Dist. LEXIS 107850, at *2–3 (D. Ariz. June 27, 2019); *United States v. Cantu*, 2019 U.S. Dist. LEXIS 100923, at *10 (S.D. Tex. June 17, 2019); *United States v. Brown*, 2019 U.S. Dist. LEXIS 175424, at *8 (S.D. Iowa Oct. 8, 2019).

At a time when Congress has demonstrated its intent to expand compassionate release—and given Dr. Kaufman's indisputable extraordinary and compelling reasons and his inability to pose any danger to the public—the only equitable result that upholds the values of our sentencing laws is compassionate release.

**B.    Section 3553(a) Factors Weigh In Favor Of Compassionate Release.**

The Court must impose a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). While a 30-year sentence may have seemed sufficient

but not greater than necessary in 2006, in light of Kaufman's health and the current dangers of the COVID-19 pandemic, a review of the § 3553(a) factors weigh in favor of a reduction in sentence. (ECF No. 643, at 21–26.) In its response, to the extent the Government does not contest the § 3553(a) factors, Kaufman argues the Government has conceded that those factors weigh in favor of a reduction in sentence.

### 1. Kaufman's History And Characteristics Have Changed.

Kaufman's history and characteristics have undoubtedly changed: he is an 83-year old man battling a terminal illness with a "40% predicted one-year survival" rate. (ECF No. 643, at 3–8.) In addition, he is incarcerated during a pandemic that would almost certainly lead to his death, and his status continues to decline even since the filing of his Motion in June 2020. Upon information and belief, after the filing of his Motion (ECF No. 643) Kaufman was transported to Duke Medical Center where he underwent surgery to repair a broken leg caused by cancer that spread to his bones. Subsequently, Kaufman returned to Butner FMC and was quarantined for 14 days. Dr. Merrill opined that Kaufman was at "increased risk for skeletal-related events" and that such events would reduce his quality of life. (ECF No. 643-5.) That prediction is now a reality as Kaufman attempts to recover from surgery while simultaneously battling cancer and avoiding COVID-19 infection. He is physically incapable of posing any danger to the public and the severity of his conditions weighs in favor of release.

### 2. Reducing Kaufman's Sentence Would Not Diminish The Seriousness Of The Offense, Undermine His Original Sentence, Or Minimize Its Deterrent Effect.

The punitive effects of serving almost 15 years in federal prison should not be overlooked. Kaufman's age, terminal illness, shortened life expectancy, status as a first-time offender, and having to endure significant illness while incarcerated make his imprisonment "significantly more laborious than that served by most inmates." *United States v. Conner*, No. CR07-4095-LTS, 2020 U.S. Dist. LEXIS 99939, *28 (N.D. Iowa June 8, 2020) (citations omitted). Kaufman's sentence will continue to send a message regardless if he receives compassionate release; incarceration for 15 years leading up to near-death is a significant punishment. Moreover, should Kaufman be granted compassionate release, his freedoms will continue to be restricted not only because of the natural consequences of his illnesses but also because of supervised release.

Contrary to the Government's argument, reducing Kaufman's sentence will not diminish the severity of his offense since he would still be serving an effective life sentence. If Congress wanted to make an exception for people with life sentences or effective life sentences, it could have—it was foreseeable that persons serving life sentences could be granted compassionate release.

Notably, people with life sentences (or effective life sentences) have received compassionate release under the First Step Act. *See United States v. Wong Chi Fai*, No. 93-cr-1340 (RJD), 2019 U.S. Dist. LEXIS 126774 (E.D.N.Y July 2019) (granting release to 65-year old man with terminal thyroid cancer after serving 26 years of a life sentence); *United States v, McGraw*, No. 2:02-cr-00018-LJM-CMM-01, 2019 U.S. Dist. LEXIS 78370 (S.D. Ind. May 9, 2019) (agreeing that defendant's past conduct

was "very serious" but granting compassionate release to 72-year old man serving life sentence and finding serving 17 years "is a significant sanction"); *United States v. Cantu-Rivera*, No. H-89-204, 2019 U.S. Dist. LEXIS 105271 (S.D. Tex. June 24, 2019) (granting compassionate release to defendant serving concurrent life sentences); *United States v. Perez*, No, 88-10094-1-JTM, 2020 U.S. Dist. LEXIS 45635 (D. Kan. Mar. 11, 2020).

In *United States v. Ebbers*, the court sentenced the 65-year old defendant to a 25-year term, realizing that Ebbers may effectively serve a life sentence for the securities fraud that resulted in the loss of millions (and potentially billions) of dollars to investors and lost jobs and savings of thousands of WorldCom employees. *United States v. Ebbers*, No. 02-cr-1144-3, 2020 U.S. Dist. LEXIS 3746, at *1, 4 (S.D.N.Y. Jan. 8, 2020) ("this sentence is likely to be a life sentence . . . anything less would not sufficiently reflect the seriousness of the crime"). While Ebbers's offenses are different from Kaufman's, the sheer magnitude of Ebbers's crimes and the devastating impact on his victims provides insight when considering whether compassionate release can be granted. Despite the egregious nature of Ebbers's crimes, the court considered his age and illnesses and granted him compassionate release, concluding that a reduction did not "discount the seriousness of his offense." *Id.* at *25. The court noted, that "[t]hirteen years of incarceration—up to the point of approaching death—is not a slap on the wrist . . . Ebbers has essentially served the life sentence that the sentencing court predicted it had imposed." *Id.* at *25.

The Government asserts that reducing Kaufman's sentence "would prove to be a significant and unjustified windfall," but that statement defies reason. Releasing Dr. Kaufman home on supervised release, at the age of 83, during a pandemic, after serving 15 years in prison, and while battling multiple serious medical conditions with less than one year to live . . . that is not a windfall, that is the intended goal of the First Step Act and § 3582. Further, reducing his sentence based on a terminal illness does not change the deterrent effect given the nature of his medical conditions and the unique circumstances surrounding the COVID-19 pandemic. Kaufman's offenses were serious, but he has served a term sufficient to satisfy the goals of sentencing under these circumstances.

### 3. Threat Of COVID-19 And Need For Effective Medical Care Necessitate Compassionate Release.

As COVID-19 continues to spread throughout the BOP system, it is more critical than ever that vulnerable inmates have protections available to minimize the threats imposed by the virus. Unfortunately, inmates have no control over their personal safety or available resources such as sanitation supplies, personal protective equipment, or access to health care. Consider the following BOP statistics on COVID-19 cases in its facilities:

| Date | Inmates Positive | Staff Positive | Inmate Deaths | Staff Deaths | Inmates Recovered | Staff Recovered |
|---|---|---|---|---|---|---|
| 07/02/20[1] | 1563 | 164 | 90 | 1 | 5135 | 579 |
| 07/14/20[2] | 3366 | 257 | 95 | 1 | 5181 | 629 |

---

[1] ECF No. 649, reporting statistics as of the date of the pleading.
[2] *Covid-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed July 15, 2020, 12:37 PM).

**Reply In Support Of Motion For Compassionate Release**                    Page **7** of **10**

The Government argues that the BOP "must marshal its resources to care for inmates in the most efficient and beneficial manner possible," and we agree. (ECF No. 649, at 12.) Butner FMC currently has five active inmate cases and two active staff cases.[3] Even more alarming is the presence of the virus at other facilities in the Butner Federal Correctional Complex—Butner Low FCI has the second-highest number of inmate cases in the BOP with 547 active cases and 16 inmate deaths, and it is only a matter of time before Butner FMC follows suit.[4] Indeed, the most efficient and effective manner of treatment for Dr. Kaufman—which preserves resources for other non-terminal inmates—is to reduce his sentence, which would allow him to shelter at home safely.

We also agree that as part of assessing inmates during this time, consideration must be given to ensure "a defendant has a safe place to live and access to health care in these difficult times." (ECF No. 649.) Dr. Kaufman has demonstrated that he has a strong reentry plan, with overwhelming family and community support and access to health care in the community where he will reside. (ECF No. 643-3.)

Despite the BOP's attempts, it has been unable to effectively slow the spread of COVID-19 throughout its facilities, which is not surprising given the characteristics of correctional facilities; close living quarters, shared common areas, and limited resources make prison a breeding ground for disease. However, inmates

---

[3] *Id.*
[4] *Id.*

**Reply In Support Of Motion For Compassionate Release**               Page **8** of **10**

are entitled to "the most effective manner of treatment" under § 3553(a)(2)(D), and for Dr. Kaufman that means treatment outside of a correctional environment. The need to provide effective medical treatment weighs in favor of compassionate release.

## VI.     Conclusion

The Government states that Dr. Kaufman's crimes are beyond forgiveness; however, that mentality is inconsistent with the text and spirit of § 3582 and the First Step Act. Dr. Kaufman is not categorically excluded from compassionate release based upon his crimes. Instead, the First Step Act entitles him to consideration for a reduction in sentence based upon multiple elements, some of which the Government concedes. After full consideration of the relevant § 3553(a) factors, Dr. Kaufman has demonstrated that compassionate release would not diminish the goals of sentencing. Kaufman's age, time served, terminal illness, and limited life expectancy weigh heavily in favor of release.

For the foregoing reasons, Dr. Kaufman respectfully requests that the Court grant a reduction in sentence.

Remainder of Page Left Intentionally Blank

Respectfully submitted,

/s/ Zachary L. Newland
Zachary L. Newland
Senior Litigation Counsel
**Brandon Sample PLC**
P.O. Box 250
Rutland, Vermont 05702
Phone: (802) 444-4357
Fax:     (802) 779-9590
Email: zach@brandonsample.com
Texas Bar: 24088967
https://brandonsample.com

*Counsel for Arlan Dean Kaufman*

/s/ James Pratt
James R. Pratt #17716
Attorney for Defendant
445 N. Waco
Wichita, Kansas 67202
Ph: (316) 262-2600
Fax: (316) 262-2602
Jim@PrattLawLLC.com

*Local counsel for Arlan Dean Kaufman*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 16th day of July, 2020, via CM/ECF on all counsel of record.

/s/ James R. Pratt
JAMES R. PRATT